UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 22-80173-CR-CANNON

**UNITED STATES OF AMERICA**,

    Plaintiff,
v.

**WILLIAM MICHAEL SPEARMAN**,

    Defendant.
_____/

**SEALED ORDER DENYING DEFENDANT'S
SEALED MOTION TO SUPPRESS [ECF No. 74]**

**THIS CAUSE** comes before the Court upon the Sealed Motion to Suppress Evidence filed by Defendant William Michael Spearman [ECF No. 74]. Defendant seeks suppression of all evidence seized from his home and his person pursuant to two signed search warrants executed on November 2, 2022 [ECF No. 74]. The factual premise of Defendant's argument is that the Federal Bureau of Investigation (FBI) sought and obtained the above-described warrants using two related tips received on August 17, 2022, from a foreign law enforcement agency—"FLA-1" or "United Kingdom (UK) National Crime Agency"—about a "Tor-protected IP address" involved in the dissemination of child pornography on target "Website A" [ECF No. 74 pp. 1, 6]. According to Defendant, "FLA-1 acted as an agent of the FBI" for purposes of the so-called "joint venture" exception to the Fourth Amendment, which is a narrow exception to the general rule that the Fourth Amendment does not apply to foreign searches made by foreign authorities [ECF No. 74 p. 7]. Defendant also requests an evidentiary hearing on the Motion to address various matters, including "whether there was a relationship between the FBI and FLA-1 [foreign law enforcement agency] that implicates the Fourth Amendment for actions taken by FLA-1" [ECF No. 74 p. 9; ECF No. 107 p. 5 (requesting a hearing to make the government "prove" that FLA-1 "did not

invade Mr. Spearman's privacy without a warrant")]. The Government opposes the Motion [ECF No. 104]. Defendant filed a Reply [ECF No. 107]. The Court has reviewed the Motion, the Government's Opposition, Defendant's Reply, and is otherwise advised in the premises. For the reasons that follow, Defendant's Motion [ECF No. 74] is **DENIED**.

## BACKGROUND AND FACTS RELEVANT TO MOTION

Defendant is charged in a three-count Second Superseding Indictment with the following offenses: (1) conspiracy to advertise child pornography, in violation of 18 U.S.C. § 2251(d) and (e); (2) conspiracy to distribute child pornography, in violation of 18 U.S.C. § 2252A(a)(2) and (b)(1); and (3) engaging in a child exploitation enterprise, in violation of 18 U.S.C. § 2252A(g) [ECF No. 38]. The charges stem from Defendant's alleged role as head administrator of an internet chat website, referred to as "Website A" or "The Annex," that allegedly facilitated the exploitation of children through the advertisement and distribution of child pornography on the "Tor" network [ECF No. 38].

For purposes of Defendant's Motion, both parties rely on the affidavit in support of the search warrant of Defendant's home in Alabama, attached as Exhibit 1 to the Government's Opposition [ECF No. 104-1 (dated November 1, 2022)], as well the materially identical affidavit in support of a search of Defendant's person following execution of the search of his home [ECF No. 107-4]. Those affidavits describe the subject tips from FLA-1, dated August 17, 2022, advising that, according to information "lawfully acquired in the UK," a specified IP address was involved in the management of a chat website sharing images of child exploitation with different rooms/forums/groups on August 14, 2022 [ECF No. 104-2 (UK Intelligence Report); ECF No. 104-1 ¶ 38].[1] The Government also attaches a separate affidavit in support of another

---

[1] The UK tips contain the IP address number, without other identifying information or association to Defendant.

warrant to search, via remote access, specified target computers that hosted or facilitated access to various target child pornography websites associated with Website A [ECF No. 104-3; *see* ECF No. 104-3 (duplicate version filed by Defendant)]. Finally, Defendant attaches to his Reply two FBI reports exchanged in discovery, dated September 7 and 9, 2022, respectively, referencing the FBI's "offensive technical operations which eventually led to the identification of [Defendant's] . . . IP address" [ECF No. 107-1; ECF No. 107-2], and a previous search warrant application issued in June 2022 for authority to use remote access to search certain computers using information seized during a search of an earlier target of the FBI's investigation of Website A [ECF No. 107-3].

The Court credits these materials, as to which Defendant raises no claim of material misstatement, and incorporates them into this Order.

## LEGAL STANDARDS

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Generally, "evidence obtained from searches carried out by foreign officials in their own countries is admissible in United States courts, even if the search would not otherwise comply with United States law or the law of the foreign country." *United States v. Emmanuel*, 565 F.3d 1324, 1330 (11th Cir. 2009) (footnote and citations omitted); *United States v. Behety*, 32 F.3d 503, 510 (11th Cir. 1994) ("The Fourth Amendment is generally inapplicable to actions carried out by foreign officials in their own countries enforcing their own laws, even if American officials are present and cooperate in some degree. Evidence obtained by foreign police officials from searches conducted in their country is generally admissible in federal court regardless of whether

the search complied with the Fourth Amendment." (citations omitted)).

There are two exceptions to the U.S. territorial limitation on the Fourth Amendment's application, both of which have been described as "narrow" by the Eleventh Circuit. *Emmanuel*, 565 F.3d at 1330. The first arises where the "conduct of the foreign officials during the foreign search shocks the judicial conscience," *Behety*, 32 F.3d at 510 (internal quotation marks and brackets omitted), which is a standard "meant to protect against conduct that violates fundamental international norms of decency," *Emmanuel*, 565 F.3d at 1331. The second exception, known as the "joint venture" exception, is based on a defendant's Fourth Amendment rights and makes evidence from foreign searches subject to the exclusionary rule "if American law enforcement officials substantially participated in the search or if the foreign officials conducting the search were actually acting as agents for their American counterparts." *Id*. at 1330. General information-sharing and cooperation between U.S. and foreign law enforcement agencies is not sufficient to render the foreign law enforcement agency an "agent" of the United States or to otherwise trigger application of the joint venture exception. *See Behety*, 32 F.3d at 511 (finding no joint venture where American agents provided information for a search, were present at the search, and videotaped part of it); *United Sates v. Gecas*, 120 F.3d 1419, 1434 (11th Cir. 1997) (citations omitted) ("[I]ntergovernmental cooperation . . . does not render the [foreign government] an agent of the United States."); *United States v. Morrow*, 537 F.2d 120, 140 (5th Cir. 1976) ("Normal lines of communication between the law enforcement agencies of different countries are beneficial without question and are to be encouraged."); *United States v. Cote*, No. 12-CR-0053, 2015 WL 51303, at *4 (N.D. Ga. Jan. 2, 2015) ("The fact that the LKA and the FBI were sharing information with one another about their investigations is insufficient to trigger application of the joint venture exception."); [ECF No. 104 pp. 8–9 (citing *United States v. Frank*, 599 F.3d 1221, 1228–29 (11th Cir. 2010), *United States v. Rosenthal*, 793 F.2d 1214, 1231 (11th Cir. 1986), *United States v.*

*Heller*, 625 F.2d 594, 599–600 (5th Cir. 1980))].

Although in the Motion Defendant appears to attempt to preserve reliance on the "shocks the conscience" exception by stating that he does not disclaim it [ECF No. 74 p. 7 n.8], the Motion concerns only the "joint venture" exception, making no effort to establish any such conscience-shocking behavior in violation of "fundamental international norms of decency." *Emmanuel*, 565 F.3d at 1331. The Court therefore limits its analysis to the joint venture doctrine as raised by the Motion.

Defendant bears the burden of establishing that the foreign search falls within the narrow ambit of the "joint venture" exception. *Cf. Emmanuel*, 565 F.3d at 1330-32 (affirming denial of joint venture claim where defendant could not "show that he is entitled to the protections of the Fourth Amendment"); *Morrow*, 537 F.2d at 140 (rejecting notion that "it is incumbent upon the Government to demonstrate that a challenged search is legal under the law of the country where it takes place"); *Cote*, 2015 WL 51303, at *6 ("Cote has not met her burden to show that German authorities acted as agents of the FBI when conducting the search of her residence in Germany."); *United States v. Frank*, No. 04-20778, 2006 WL 8434878, at *1 (S.D. Fla. June 21, 2006), *report and recommendation adopted*, No. 04-20778-CR, 2006 WL 8434879 (S.D. Fla. July 26, 2006) (same); *United States v. Angulo-Hurtado*, 165 F. Supp. 2d 1363, 1371 (N.D. Ga. 2001), *report and recommendation adopted* (Aug. 20, 2001); *United States v. Getto*, No. 09 CR 667, 2010 WL 3467860, at *3 (S.D.N.Y. Aug. 25, 2010), *aff'd*, 729 F.3d 221 (2d Cir. 2013).

**ARGUMENTS**

Defendant moves to suppress all evidence seized from his residence and his person following a search warrant executed on his home on November 2, 2022, pursuant to two warrants signed by a Magistrate Judge on November 1, 2022 [ECF No. 104-1 (Search Warrant Application and Affidavit for Defendant's Home); ECF No. 107-4 (Search Warrant Application and Affidavit

for Defendant's Person)]. The evidence is described in broad terms in the Motion, but it includes various electronic devices containing child pornography found in Defendant's home as well as a recorded statement made by Defendant to law enforcement during and/or following the search [ECF No. 74 p. 1].

In Defendant's view, suppression of all of this evidence is warranted because the search warrants that yielded the evidence were based on two communications from the UK National Crime Agency (UK NCA) to the FBI, dated August 17, 2022, in which the UK NCA advised that a specified IP address "lawfully acquired in the UK" (and subsequently determined by the FBI to be Defendant's IP address) was disseminating child pornography on a child exploitation chat website a few days earlier on August 14, 2022 [ECF No. 104-2; ECF No. 104-1 ¶ 38]. The FBI deemed the tips credible based on its long history of sharing information with FLA-1 [ECF No. 104-1 ¶ 39], and used the IP address, in conjunction with numerous additional investigative techniques, to obtain the subject warrants authorizing a search of Defendant's home and person on November 2, 2022.[2][3] According to Defendant's theory, FLA-1 was operating as an "agent" of the FBI when it submitted those tips, citing a handful of references in the affidavit

---

[2] [ECF No. 104-1 ¶ 4 (describing multiple investigative steps/sources supporting statements in affidavit); ECF No. 104-1 ¶¶ 27, 30, 32–36 (describing additional search warrants in 2020, 2021, and 2022 in residences across the United States along with interviews of active website users and members, including June 2022 search of website servers that yielded numerous communications by Defendant); ECF No. 104-1 ¶ 31 (describing FBI covert investigation of Website A); ECF No. 104-1 ¶¶ 40–53 (describing administrative subpoenas for information regarding IP address, a pen register/trap and trace device, review of publicly available records linked to Defendant, physical surveillance on Defendant's home, a communication from a second law enforcement agency on August 26, 2022, containing pictures of Defendant, and undercover communications with Defendant on Website A)].

[3] The tips were directed to the FBI only and identified an IP address that was involved in a chat website named "Annex" "created explicitly to share Indecent Images of Children (IIOC) and to discuss child abuse and exploitation" [ECF No. 104-2; ECF No. 104-1 ¶ 38]. The tips state that the "information was lawfully acquired in the UK," and that the source of the information "must be protected" [ECF No. 104-2]. There is nothing in the tips that reflects FBI participation in the acquisition of the IP address in the UK.

and additional materials describing the "partnership" between the two agencies.[4] As a result, Defendant continues, the Court should conclude that FLA-1 obtained the IP address "illegally" [ECF No. 74 p. 8] and suppress all of the seized evidence in this case (including his statements to the FBI during the search), because such evidence was based on the search warrants of Defendant's home/person that were was based on the IP address acquired in the UK [ECF No. 74 p. 9].

The Government opposes the Motion, reiterating the general rule that evidence obtained abroad by a foreign government like FLA-1 that is subsequently shared with U.S. law enforcement is not governed by the Fourth Amendment [ECF No. 104 pp. 4–8 (citing *Emmanuel* and other authorities)]. With respect to Defendant's attempted invocation of the "joint venture" exception, the Government argues that Defendant's generalized references to cooperation between FLA-1 and the FBI in the Affidavit and related materials show nothing more than commonplace information-sharing between sovereign countries and therefore fall considerably short of meeting Defendant's burden to show that FLA-1 operated as an actual agent of the FBI [ECF No. 104 pp. 7–11]. Alternatively, the Government invokes the *Leon* good-faith exception to the warrant requirement, noting that FBI agents reasonably relied on the authorized search warrants and on FLA-1's statement that FLA-1 relied on its own laws in obtaining the subject IP address

---

[4] Defendant pulls the following phrases from the affidavit in support of the search warrants of Defendant's home and person: (1) "[I]t is common practice for that [domestic] law enforcement agency to share information with a law enforcement agency in the country where the website is located or the offender appears to residence" [ECF No. 104-1 ¶ 37; ECF No. 107-4 ¶ 37]; and (2) "There is a long history of U.S. law enforcement sharing criminal investigative information with FLA-1 and FLA-1 sharing criminal investigative information with U.S. law enforcement, across disciplines and including the investigation of crimes against children" [ECF No. 104-1 ¶ 39; ECF No. 107-4 ¶ 39]. Defendant also refers to the phrase "foreign partners" used twice by the FBI in another search warrant obtained during the investigation for remote access of certain computers [ECF No. 107-7 ¶¶ 49–50], plus two FBI reports, dated September 2022, in which the FBI's Child Exploitation Operational Unit (CEOU), "along with the Miami Division[,] executed an operation that allowed CEOU to conduct offensive technical operations which eventually led to the identification of an IP address for who CEOU believes is "None111" [ECF No. 107-1; ECF No. 107-2; ECF No. 74 p. 3].

[ECF No. 104 p. 15; *see* ECF No. 104-2 ("This information was lawfully acquired in the UK.")].

## DISCUSSION

Upon review of the Motion and the related filings [ECF Nos. 74, 104 (attachments), 107 (attachments)], the Court concludes that Defendant has failed to meet his burden to show that the narrow joint-venture exception applies sufficient to trigger Fourth Amendment protection over FLA-1's foreign search of Defendant's IP address. Nor are Defendant's general statements about cooperation between FLA-1 and the FBI sufficient to warrant an evidentiary hearing to explore "whether there was a relationship between the FBI and FLA-1 that implicates the Fourth Amendment for actions taken by FLA-1" [ECF No. 74 p. 9]. Rather, accepting as true the materials in the record (the Affidavits, the FLA-1 tip, and the FBI reports), Defendant has not pointed to any contested issues of fact going to the validity of the search, making an evidentiary hearing unnecessary under the circumstances. And finally, although it is the Government's burden under Eleventh Circuit precedent to demonstrate the applicability of the *Leon* good-faith exception, *see United States v. Robinson*, 336 F.3d 1293, 1297 (11th Cir. 2003), the Government has met its burden to support a finding of good faith by reference to facts stated within the affidavits and the additional record materials. The Court addresses these issues in turn.

First, Defendant's attempt to insinuate a "joint venture" between the FBI and FLA-1 is based merely on generalized references to commonplace cooperation and information-sharing that are insufficient to show that the FBI "substantially participated" in the UK's acquisition of Defendant's IP address or that the UK's National Crime Agency "actually act[ed]" as an "agent" for the FBI. *Emmanuel*, 565 F.3d at 1330. As noted *supra*, Defendant extracts a few phrases from the affidavits in support of the search warrants referencing, for example, the "common practice" and "long history" of information sharing between U.S. law enforcement and foreign agencies [ECF No. 104-1 ¶¶ 37, 39; ECF No. 107-4 ¶¶ 37, 39]. Additionally, Defendant refers to the

phrase "foreign partners" used in another search warrant obtained during the investigation [ECF No. 107-7 ¶¶ 49–50], and then cites two FBI reports in which the FBI stated that it "executed an operation that allowed [the FBI's] CEOU [Child Exploitation Operational Unit] to conduct *offensive technical operations* which eventually led to the identification of an IP address for who CEOU believes is "None111" [ECF No. 107-1 (emphasis added); ECF No. 107-2; ECF No. 74 p. 3].

From these snippets, Defendant asserts that the UK's National Crime Agency was acting as an "agent" of the FBI when it submitted the tips containing the IP address on August 17, 2022. The Court disagrees. Taking all of these phrases as true, and viewing them together as Defendant requests, shows at most the type of standard information sharing that courts have deemed insufficient to reach "joint venture" status for purposes of that narrow exception. *See supra* p. 4 (citing cases). Defendant supplies no contrary legal authority applying the exclusionary rule under similar circumstances. Nor does he offer declarations, affidavits, or other evidentiary materials from witnesses or persons with knowledge from which the Court could conclude that a joint venture occurred. *See Getto*, 2010 WL 3467860, at *3, *aff'd*, 729 F.3d 221 (2d Cir. 2013). Because Defendant has not met his burden to show applicability of the exception, the general Fourth Amendment territoriality rule applies: "evidence obtained from searches carried out by foreign officials in their own countries is admissible in United States courts, even if the search would not otherwise comply with United States law or the law of the foreign country." *Emmanuel*, 565 F.3d at 1330.

Second, even if there were an extrapolated and speculative case to be made that FLA-1 actually acted as an agent of the FBI within the meaning of the narrow joint-venture exception, the Court agrees with the Government on this record that the *Leon* good-faith exception to the exclusionary rule applies. *United States v. Leon*, 468 U.S. 897, 922 (1984). As the Eleventh

9

Circuit has explained, "[t]he Supreme Court's decision in *Leon* "stands for the principle that courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause." *Robinson*, 336 F.3d at 1295–96.  The good-faith exception does not apply, however,

> where the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing magistrate wholly abandoned his judicial role; (3) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where, depending upon the circumstances of the particular case, a warrant is so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.

*Id.* (internal quotation marks omitted).

Here, although it is the Government's burden to demonstrate the applicability of the *Leon* exception, the Government has met that burden by reference to the facts in the affidavit, none of which Defendant claims to be materially false.  Importantly, there is nothing in that affidavit or in the additional attached materials approximating any of the four *Leon* enumerated exceptions— either knowing or reckless falsities known by the FBI affiants, abandonment of the judicial role, blatant absence of probable cause, or other fatal deficiencies.  To the contrary, the lengthy affidavits detail a careful investigation based on layers of investigation by experienced agents investigating a child-exploitation website on the Tor network.  *See supra* p. 6 n.2.  In the end, although Defendant boldly characterizes this case as one of clear illegal entry into a home [ECF No. 107 p. 4 (citing unlawful physical entry into U.S. apartment in *United States v. McGough*, 412 F.3d 1232, 1239–40 (11th Cir. 2005))], the facts are not consistent with that unsupported and sweeping assertion. The Court discerns no basis in the affidavit to believe that application of the exclusionary rule based on the UK's acquisition of an IP address in the UK and subsequent sharing of such IP address with the FBI would yield any meaningful deterrence of

unlawful or reckless police misconduct in the United States.

Finally, on the discretionary issue of whether to hold an evidentiary hearing on Defendant's Motion, Defendant's argument is misplaced. He asserts that a hearing is necessary to require the Government to "prove" that FLA-1 "did not invade his privacy without a warrant" [ECF No. 107 p. 5]. But it is Defendant's burden to show application of the joint-venture exception, which is the only basis on which Defendant attempts to seek Fourth Amendment protection.[5] Defendant also asserts, in similar terms, that an evidentiary hearing is warranted to "address" various matters, including "whether there was a relationship between the FBI and FLA-1 that implicates the Fourth Amendment" [ECF No. 74 p. 9]. Tellingly, that request reinforces the conclusory nature of Defendant's showing and his need merely to explore the possible existence of a joint venture. Such assertions, accepted as true, are insufficient to produce any contested issues of fact warranting an evidentiary hearing or to permit a finding of a joint venture.

## CONCLUSION

Being fully advised, it is **ORDERED AND ADJUDGED** that Defendant's Sealed Motion to Suppress [ECF No. 74] is **DENIED**. This Order shall be filed under seal.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 12th day of June 2023.

AILEEN M. CANNON
UNITED STATES DISTRICT JUDGE

cc: counsel of record (sealed)

---

[5] As noted, Defendant attempts to preserve a theory about "conscience-shocking" behavior by saying that he does not disclaim that exception, but he offers nothing to support the suggestion that FLA-1's acquisition of the IP address in the UK violated fundamental international norms [ECF No. 74 p. 7 n.8].