```
 1                IN THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF FLORIDA
 2                   CASE NO. 22-80173-CR-CANNON

 3

     UNITED STATES OF AMERICA,
 4
                    Plaintiff,              JUNE 12, 2023
 5
          vs.
 6                                       FORT PIERCE, FLORIDA
     WILLIAM MICHAEL SPEARMAN,
 7
                    Defendant.              PAGES 1 - 185
 8    _____/

 9

10        TRANSCRIPT OF JURY TRIAL/CHANGE OF PLEA PROCEEDINGS
                 BEFORE THE HONORABLE AILEEN CANNON
11                 UNITED STATES DISTRICT JUDGE

12

13   APPEARANCES:

14   FOR THE PLAINTIFF:     GREG SCHILLER, AUSA
                            KYLE REYNOLDS, AUSA
15                          WILLIAM CLAYMAN, AUSA
                            Office of U.S. Attorney
16                          101 South US Highway One
                            Suite 3100
17                          Fort Pierce, Florida  34950

18

19   FOR THE DEFENDANT:     SCOTT BERRY, AFPD
                            CAROLINE McCRAE
20                          Office of U.S. Public Defender
                            109 North 2nd Street
21                          Fort Pierce, Florida  34950

22

23

24   REPORTED BY:          DIANE MILLER, RMR, CRR
                           Official Court Reporter
25                         (772)467-2337
                           diane_miller@flsd.uscourts.gov
```

Monday, June 12, 2023.

I-N-D-E-X

                                                                    PAGE

VOIR DIRE

  General Examination by the Court                    12

  Individual Examination by the Court                 71

VENIRE PANEL SWORN                                     123

Defendant's Plea Colloquay/Change of Plea              127

Monday, June 12, 2023.

1                    P-R-O-C-E-E-D-I-N-G-S

2          THE COURT:  Thank you.

3          Good morning.  Please call the case and be seated.

4          THE COURTROOM DEPUTY:  United States v. William

5     Michael Spearman, case number 22-Criminal-80173.

6          Will the parties please state your appearance

7     starting with the government?

8          MR. REYNOLDS:  Good morning, Your Honor; Kyle

9     Reynolds, William Clayman, and Gregory Schiller, all present

10    and ready on behalf of United States.

11         Your Honor, we also have FBI Special Agent David

12    Backlund and DOJ Investigative Analyst Chancey Davis at

13    counsel's table, if they may remain.

14         THE COURT:  All right.  And in terms of who will be

15    taking the lead during jury selection, has that been decided

16    among the government attorneys?

17         MR. REYNOLDS:  Yes, Your Honor; Mr. Schiller will be

18    taking the lead during jury selection.

19         THE COURT:  All right.

20         Good morning, Mr. Berry.

21         MR. BERRY:  Good morning, Your Honor; Scott Berry on

22    behalf of Bill Spearman, who is seated to my right.  Also,

23    along with me today is Caroline McCrae.  She will be co-trying

24    the case with me.  My investigator Sara Shannon will be here.

25         I think Your Honor probably heard, we had an issue

Monday, June 12, 2023.

```
 1    with clothing this morning.  She is out trying to buy some
 2    additional pants or bring additional pants for him for later
 3    today.
 4              THE COURT:  Mr. Berry, for our court reporter's
 5    benefit, I'm going to ask that you please move that whole
 6    device -- yes -- closer to you.
 7              Do you know at this point, does the Defense feel
 8    comfortable moving forward given the pants issue or is an
 9    additional delay warranted to rectify that?
10              MR. BERRY:  Judge, so our preference would be to wait
11    a little bit this morning.  My investigator had a slightly
12    larger pair of pants for Bill, and she is on her way back to
13    the courthouse now.
14              THE COURT:  Okay.
15              MR. BERRY:  We would like to try -- I don't know if
16    they are going to fit him either.  He apparently put on some
17    weight since his incarceration began, but we would at least
18    like to try that, so if it is possible to delay --
19              THE COURT:  Well, there will be some time built in
20    this morning for party review of the questionnaires, so
21    hopefully that will coincide with the arrival of the
22    investigator, but please update me and the courtroom deputy on
23    her arrival.
24              All right.  This case obviously is set for trial.  Do
25    the parties still estimate a three- to four-day trial,
```

```
 1   Mr. Reynolds?

 2             MR. REYNOLDS:  Yes, Your Honor.

 3             THE COURT:  Okay.

 4             Mr. Berry, any adjustments to that expected timeline?

 5             MR. BERRY:  No, ma'am.

 6             THE COURT:  Okay.

 7             I don't believe we discussed during calendar call the

 8   requested time for opening statements; if we did, my apologies,

 9   but what are the parties requesting in the form of opening

10   statement?

11             MR. REYNOLDS:  Your Honor, if we could have 10 to 15

12   minutes for opening statement, that should be sufficient.

13             THE COURT:  Mr. Berry or Ms. McCrae?

14             MS. McCRAE:  I think that's more than sufficient for

15   the Defense, Your Honor.

16             THE COURT:  Then we will do 15 minutes per side for

17   opening statements, and I'll give you a five minute warning.

18             I have incorporated many of the questions submitted

19   by the parties in my voir dire plan so I trust that will permit

20   each side to use their ten minutes wisely.  Are there any

21   questions with respect to the Court's voir dire process,

22   Mr. Reynolds or Mr. Schiller?

23             MR. SCHILLER:  No, Judge.  I just -- I assume -- I

24   think the Court told us previously, but there is no back

25   striking, things of that nature.
```

Monday, June 12, 2023.

```
 1          THE COURT:  Yes, correct.  No back striking under any

 2   circumstances.  We will have the standard number of

 3   peremptories allotted to each side under the federal rules.

 4   You cannot save unused peremptories for use in the

 5   determination of alternate jurors, and each side will be given

 6   one additional strike for alternates.

 7          We have summoned 50 jurors this morning which I think

 8   is adequate for this case, and we are in the process now of

 9   collating those questionnaires, so you will have enough time to

10   review them before we get started.

11          One small scheduling issue, and that is for

12   Wednesday.  Instead of beginning at 9:00 A.M. with trial, we

13   will be starting at 10:00 A.M. to accommodate a calendar call I

14   have in another case set for trial which Will be handled in the

15   morning.  So please plan for a 10:00 A.M. start this Wednesday,

16   instead of the standard 9:00 o'clock.

17          Mr. Berry?

18          MR. BERRY:  Your Honor, two things:  First, I don't

19   think I heard you say this, but are we going to get some sort

20   of a seating chart.  Do we know how the jurors are going to be

21   situated in the courtroom?

22          THE COURT:  They will all have numbered paddles, and

23   they raise those when they're speaking.  I find that to be a

24   very useful system.  But in general, we start with the box.  We

25   use that left gallery, and then we shift over to the right
```

```
 1   gallery.  Hopefully, that answers your question, but you won't
 2   be given a formal seating chart; although like I said, each
 3   juror will have a physical paddle in their hand with numbers in
 4   big black bold font.
 5            MR. BERRY:  The other issue, Judge, is at the -- I
 6   believe it was at the status hearing, when Your Honor was
 7   discussing the questions that you would ask and which ones you
 8   would not, you had indicated that you would not be willing to
 9   ask question number 5 on my proposed questions in regards to
10   hearing recorded statements and how the jurors must consider
11   those statements.  And you had asked me if I had any suggestion
12   about a more pointed question.  At the time, I had indicated I
13   would think with it.  I did not have an answer for you at that
14   time.
15            I do have a more pointed question I would ask the
16   Court to consider, and the question is whether anyone thinks
17   that no one ever falsely confesses to a crime, if anyone has
18   that belief that no one would ever falsely confess to a crime.
19            THE COURT:  All right.  Any thoughts by the
20   government on that proposed question?
21            MR. SCHILLER:  Thank you, Your Honor.
22            I think the question kind of falls in the same lines
23   as the previous one.  It is a very generalized question, and so
24   we think that it's still inappropriate at this point.
25            THE COURT:  All right.  I think what I'm going to do
```

```
 1    is just read to the jurors at least portions of the standard

 2    instruction governing statements by defendant which contains

 3    that caution and great care language and then, as with the

 4    other questions, invite them to answer whether they feel

 5    comfortable and would be capable of fully applying that law.

 6              So that is the Court's ruling with respect to defense

 7    proposed question 5, as adjusted by Mr. Berry.

 8              Any other voir dire questions?

 9              MR. BERRY:  I don't believe so, Judge.

10              THE COURT:  Let me just make a note of that.

11              I don't anticipate the charge conference taking a lot

12    of time, but it is scheduled to take place this Wednesday at

13    5:15 approximately.

14              All right.  Any changes, Mr. Schiller or

15    Mr. Reynolds, to the Government's exhibit list which currently,

16    I believe, contains eight individuals -- I mean nine, excuse

17    me?

18              MR. REYNOLDS:  No, Your Honor, not to document; but

19    the latest is docket entry 143 which we filed on the 8th which

20    contains nine witnesses.

21              THE COURT:  Now, I would like to ascertain whether

22    any party wishes to invoke the rule to exclude witnesses

23    scheduled to testify in this case.

24              MR. BERRY:  Defense would invoke the rule.

25              THE COURT:  All right.  The rule is so invoked, and I
```

```
 1   ask the parties to monitor that issue so I can be apprised of

 2   any folks in the courtroom that shouldn't be here.

 3            Today, of course, is dedicated to jury selection and

 4   opening statements only, and then we will get started with

 5   witness presentation tomorrow.  I don't know exactly what time

 6   we will be done today; but hopefully, it will be earlier than

 7   the standard 5:30.

 8            As far as the motion to suppress, you should have

 9   received via e-mail a copy of the Court's sealed order denying

10   that motion.  Has everybody received that?

11            MR. SCHILLER:  The government has, Your Honor.

12            MR. BERRY:  The Defense has received the order,

13   Judge.

14            THE COURT:  Okay.  All right.  Any other matters to

15   address before I step off to distribute the questionnaires to

16   each side?

17            Mr. Berry.

18            MR. BERRY:  Two things, Judge.  First, I do want to

19   formally object to the Court's denial of the motion to

20   suppress, as well as the Court's denial of our request for a

21   hearing on that issue.

22            And then also, my investigator has returned, and she

23   does have slightly larger pair of pants for Mr. Spearman.

24            THE COURT:  So please make arrangements during the

25   break to outfit Mr. Spearman with the appropriate pants.  I
```

 1    take your objection to the order denying the motion to suppress
 2    as well as the in limine motion which I will sort of reiterate
 3    orally on the record when that evidence is -- is submitted.
 4          So, for the government, when you are at the point of
 5    introducing that evidence, please give the Court a heads-up so
 6    I can determine whether a cautionary instruction is warranted
 7    contemporaneously and make any other findings on the record,
 8    relevant to the Defendant's motion.
 9          That is all I have at the moment, so please stand by
10    for the questionnaires, and we will resume in approximately 15
11    minutes.
12       (Recess was had at 9:16 A.M.; and the proceedings
13       Resumed at 9:36 P.M.)
14          THE COURT:  Thank you.  You may be seated.
15          All right.  The questionnaires have been distributed.
16    The jurors are outside and ready to enter.  Any final matters
17    to address before we call in the jury pool?
18          Mr. Berry.
19          MR. BERRY:  Yes, Your Honor.
20          Judge, I have a concern, so my client's mother and
21    sister are here.  They are seated in the back of the courtroom.
22    I want to make sure they are going to be able to remain present
23    for this trial and throughout the jury selection process as
24    well, and I'm concerned about seating in terms of jurors and
25    things of that nature.  So I wanted to just --

1          THE COURT:  There is no room for members of the

2    public right now, during jury selection.  So, unfortunately,

3    that's not something I can accommodate; but any family members

4    are welcome to come, once jury selection is over, and we have

5    room to accommodate members of the public assuming of course,

6    Mr. Spearman's mother is not intending to testify.

7          Anything further on that issue?

8          MR. BERRY:  Yes, Judge.

9          First, Mr. Spearman's mother is not going to be

10   testifying, neither is his sister, and we would object to them

11   not being permitted in the courtroom during the jury selection

12   process.  It is a violation of Mr. Spearman's Sixth Amendment

13   right to a public trial.

14         THE COURT:  All right.  Thank you.  Your objection is

15   overruled.

16         Let's call in the jurors, and let's please direct

17   Ms. Spearman outside.

18         Ms. Spearman, we will welcome you back in, once jury

19   selection is over.  Thank you.

20         All rise for the jurors.

21     (Venire panel enters courtroom at 9:38 A.M.)

22         THE COURT:  All right.  Thank you.

23         Please be seated.  I'll call the case.

24         This is United States of America versus William

25   Michael Spearman, case number 22-80173-Criminal.

 1            Good morning, ladies and gentlemen.

 2            My name is Aileen Cannon, and I'm a United States

 3   District Judge.  I will be overseeing this case on behalf of

 4   the entire district and the parties.  I want to thank you all

 5   for being here and express my gratitude to you all for your

 6   service in this matter.

 7            This process is known as voir dire jury selection, so

 8   I will make a number of observations and statements and then we

 9   will proceed to questioning both by the Court as well as some

10   limited questioning by the attorneys.

11            The right to trial by jury is a cherished right in

12   our constitutional democracy.  It is recognized, preserved, and

13   protected by our constitution; and it is one of the most

14   important duties that a citizen is called upon to perform.  Our

15   framework permits litigants to select members of their

16   community to decide the outcome of a case that ends up in

17   court, and your role is truly indispensable to that system.  So

18   although I can understand that perhaps some of you were not

19   thrilled upon receipt of your juror summons, I want to stress

20   just how important juror service is to our system of laws and

21   thank you again for our service.

22            I assume also that at least for some of you, this

23   process may seem totally unfamiliar.  I want to make you feel

24   comfortable, not to feel apprehensive or inadequate in any way

25   as we go along.  The Court and the parties will give you

1    appropriate instructions about your role and what your duties

2    will be if chosen to serve on this jury.

3          Let's get started with some introductions.  The

4    courtroom deputy for our trial, whom you have met, I believe,

5    is Ms. Tina Casissi.  She is standing to my right, and she is

6    here to assist us in coordinating the day-to-day operations of

7    the Court.

8          Directly in front of me, we have Ms. Diane Miller.

9    She is our court reporter, and she will be transcribing and

10   taking down everything that is said in this courtroom including

11   everything that I am saying right now.  So to make her job

12   easier, I ask that all of you please speak as clearly and as

13   audibly as you can and that when you do so, you also raise your

14   paddles with the appropriate juror number that we have given to

15   you so that everybody knows who is speaking when.

16         We also today have our court security officer,

17   Officer Blanford.  His job is to enforce the Court's orders and

18   take charge of the jury.  If you need information concerning

19   your personal welfare, please ask the courtroom deputy or the

20   court security officer, and they will try to assist you, but

21   please do not question them about any substantive matters

22   concerning the case that is being presented.

23         Now that we have that out of the way, I'm going to

24   give you some more information about what this process entails.

25   As I mentioned earlier, it is called voir dire or jury

1   selection, and that really essentially just means to speak the

2   truth.  It's a Latin phrase for that, but really it is the

3   process of selecting a jury that is fair and impartial, that

4   will follow the law, that will evaluate the issues in this case

5   based solely upon the evidence presented without being

6   influenced by any other factors.

7           And so in service of that goal, we have to determine

8   if your decision in this case would be influenced by opinions

9   that you now hold or by some other personal experience or

10  special knowledge that you may have concerning the case to be

11  tried.

12          In many ways, this process of jury selection is the

13  most important part of the trial, as we are about to pick the

14  judges of the facts of this case.  I may bear the title of

15  judge, but I will not decide the outcome.  My role is to see to

16  it that the rules of the courtroom are followed, but it is the

17  jurors who serve as judges of the facts.

18          Now, as I alluded to earlier, this questioning does

19  take a considerable amount of time, so we thank you for your

20  patience in advance.  Please also understand that this

21  questioning is not intended to pry into your personal affairs

22  but instead is intended only for the purpose of obtaining a

23  fair and impartial jury.

24          Now if for any reason any line of questioning makes

25  you feel uncomfortable or you wish to speak to the Court and

```
 1    the parties in private, please don't hesitate to let me know,

 2    and we will arrange for that.

 3            Ultimately, the only right answer is the truth so we

 4    ask that you please be as candid and as complete as you can

 5    with your answers.

 6            Finally, if at the conclusion of this jury selection

 7    process, you are not selected to serve on this jury, please

 8    don't feel offended or feel that your integrity has been

 9    questioned in any way.  It hasn't.  Either side can strike a

10    juror or excuse a juror without giving a reason and some

11    persons are simply better suited for one case rather than

12    another.  That is all.

13            All right.  Now why are we here?

14            We are here because an indictment has been filed

15    informing the defendant, Mr. William Michael Spearman, that he

16    is accused of certain federal crimes; but as I will explain to

17    you in more detail in a few moments, the indictment is not

18    evidence.  It is simply an accusation, and the defendant has

19    responded to the indictment by saying that he is not guilty.

20    So it is the Government's entire burden to prove beyond a

21    reasonable doubt that the defendant is guilty, and that is what

22    you are here determine.

23            I'm going to go over these concepts in a bit more

24    detail as we proceed, but to give you a very brief description

25    of what the allegations in this case entail, the indictment
```

```
 1   alleges that the defendant committed three federal offenses:
 2   Conspiracy to advertise child pornography by means of an
 3   internet website; conspiracy to distribute child pornography by
 4   means of an internet website; and engaging in a child
 5   exploitation enterprise as that term is defined under law.
 6           First of all, let me ask if any of the jurors, at
 7   this point, have heard or read anything about this case?  If
 8   you have, please raise your hand and your paddle.
 9           I see no hands.
10           Now I'm going to ask the attorneys for both parties
11   to introduce themselves starting with the government.
12           MR. REYNOLDS:  Ladies and gentlemen, good morning.
13   Thank you very much for your service today.  My name is Kyle
14   Reynolds, next to me is Bill Clayman, and next to him is
15   Gregory Schiller.  Mr. Clayman, Mr. Schiller, and I are federal
16   prosecutors and we have the privilege of representing the
17   United States of America in this criminal case.
18           The rest of our trial team is also at counsel table
19   today.  Right next to Mr. Schiller is Special Agent David
20   Backlund from the FBI; and at the end of the table is
21   Department of Justice Investigative Analyst Chancy Davis who
22   will be assisting us with trial presentation.
23           Thank you very much for your service today.
24           THE COURT:  Thank you, Mr. Reynolds.
25           Before I turn to Mr. Berry, let me just ask:  Does
```

```
 1    anybody in the courtroom know any of the individuals who were

 2    just introduced from the government?

 3            I see no hands.

 4            All right.  Mr. Berry.

 5            MR. BERRY:  Thank you, Judge.

 6            Good morning.  My name is Scott Berry; along with me

 7    at counsel table is Caroline McCrae, we are going to co-try

 8    this case together.  And Sara Shannon is our investigator, she

 9    is also seated at counsel table.  We all have the privilege of

10    representing Bill Spearman who is here before you today, so

11    thank you.

12            THE COURT:  Thank you, Mr. Berry.

13            Does anybody know any of the individuals just

14    introduced?

15            I see no hands.

16            Now does anybody know the defendant, Mr. William or

17    Bill Spearman?

18            Okay.  I see no hands.

19            Now, I'm going to ask the government to read out loud

20    the names of any potential witnesses, that is persons who may

21    be coming into the courtroom to provide testimony during the

22    course of this case.  I ask you all to please listen carefully,

23    so you can tell me if you recognize somebody.

24            Is there an issue, sir?

25        (Brief pause in proceedings)
```

 1             THE COURT:  There was a question about the juror

 2   paddles, but everything is straightened out, and we will go one

 3   by one to ensure that the numbers are correct.

 4             All right.  Mr. Reynolds, if you could please state

 5   out loud the names of potential government witnesses in this

 6   case.

 7             MR. REYNOLDS:  Yes, Your Honor.

 8             At trial in this case, the United States may call one

 9   or more of the following witnesses to testify:  FBI Special

10   Agent Drew Steinmetz; Department of Justice High Technology

11   Investigative Unit Director James Patrell; FBI Special Agent

12   Scott Schoenhart;  FBI Special Agent Blake Downing; FBI Data

13   Scientist John Robert Marsh; FBI Special Agent Donald Fisher;

14   FBI Special Agent Sean Mueller; Homeland Security

15   Investigations Special Agent Daniel Venmier; and FBI Special

16   Agent David Backlund.

17             THE COURT:  Thank you.

18             Now does anybody in the courtroom recognize or know

19   any of the individuals just identified by Mr. Reynolds?

20             I see no hands.

21             All right.  Now this case is expected to last

22   approximately five days beginning today.  The Court's schedule

23   generally runs from approximately 9:00 in the morning to 5:30

24   in the evening.  Is there anybody here who has a unique

25   scheduling problem with this anticipated schedule that would

```
 1   make it uniquely difficult to serve on this jury?  And what I'm

 2   referring to are things such as nonrefundable airline tickets,

 3   or scheduled surgery.

 4            All right.  I see a number of paddles in the back.

 5            Let's start first with -- please show me your paddle.

 6            Thank you.  Juror Number 33, are you Ms. Barbara

 7   Galloway?

 8            PROSPECTIVE JUROR:  Yes.

 9            THE COURT:  All right, Ms. Galloway, please tell us

10   what your unique scheduling concern is.

11            PROSPECTIVE JUROR:  It's airplane, I leave tomorrow

12   and come back Wednesday.

13            THE COURT:  And what is this trip for?

14            PROSPECTIVE JUROR:  It is business, I'm going to

15   Texas.

16            THE COURT:  Is this a trip that can be rescheduled?

17            PROSPECTIVE JUROR:  No, ma'am.

18            THE COURT:  Why not?

19            PROSPECTIVE JUROR:  It's a business trip.  I've

20   tried.  I knew that I was on jury selection for these two

21   weeks, and it cannot be postponed.

22            THE COURT:  And what do you do for work, ma'am?

23            PROSPECTIVE JUROR:  I work for the Public Defender's

24   Office.

25            THE COURT:  Which jurisdiction is that?
```

```
 1                    PROSPECTIVE JUROR:  Nineteenth Circuit.
 2                    THE COURT:  All right.  And you said you return when?
 3                    PROSPECTIVE JUROR:  Wednesday night -- afternoon.
 4                    THE COURT:  All right.  Thank you, Ms. Galloway.
 5               Juror Number 30, are you Ms. Carol Schroeder?
 6                    PROSPECTIVE JUROR:  Yes.
 7                    THE COURT:  Thank you.
 8               All right.  What are is your scheduling issue?
 9                    PROSPECTIVE JUROR:  I'm leaving tomorrow morning for
10      two weeks to go to California.  I do have a nonrefundable
11      ticket, but that's not the issue.  The issue is that I have
12      four grandchildren who are getting out of school tomorrow and
13      one working parent, and I need to be there, granny nanny.
14                    THE COURT:  Now I think you said there was one
15      working parent.  Does that mean there is another parent home
16      with the children?
17                    PROSPECTIVE JUROR:  No.  That means the other parent
18      is out of town.
19                    THE COURT:  So you would be, from what I understand,
20      the sole caregiver of the four children; is that correct?
21                    PROSPECTIVE JUROR:  Correct, including a baby.
22                    THE COURT:  All right, thank you, ma'am.  You may be
23      seated.
24               All right.  Juror 42 in the back, if you can stand,
25      please.
```

1              PROSPECTIVE JUROR:  I have child care issues as well.

2      I'm a teacher so I'm home for the summer, so my seven-year-old

3      son is home, so it would be very difficult for me to be here.

4              THE COURT:  What arrangements have you made for

5      today?

6              PROSPECTIVE JUROR:  My husband is missing training

7      today.  He is a police officer so that might also be --

8              THE COURT:  Do you have any other assistance in the

9      form of family or friends who could help you with your

10     childcare issues this week?

11             PROSPECTIVE JUROR:  My parents occasionally can, but

12     for -- I'm an hour away.  I live in Jupiter, so it's very

13     difficult.

14             THE COURT:  All right.  Thank you, Juror 42.  And let

15     me confirm, are you Ms. Goetz?

16             PROSPECTIVE JUROR:  Yes.

17             THE COURT:  Okay.

18             Good afternoon, sir, please show me your paddle

19     number.

20             All right, Juror 40.  Are you Mr. Guidry?

21             PROSPECTIVE JUROR:  Yes, ma'am.  I have a Mohs

22     procedure appointment at 9:30 on Friday.  I tried to get it

23     earlier before this two-week period, but kind of a perfect

24     storm, my doctor is on vacation.  He gets back this week, so if

25     I don't take this 16th appointment, they tell me it will be at

1   least another three weeks before they can get me in because he

2   has all the backup patients.

3          THE COURT:  I'm sorry.  Did you say Mohs procedure?

4          PROSPECTIVE JUROR:  Yes, ma'am.  It's where they

5   cut -- it's precancerous cells that they found on my back.

6   They cut some out, put it under a microscope.

7          THE COURT:  All right.

8          PROSPECTIVE JUROR:  If they get the cells -- if there

9   is no cells present, they stitch you back up.  If there are

10   cells present, they take another layer off, and they keep going

11   until they get a clean sample.

12          THE COURT:  All right.  Thank you, sir.

13          Okay.  You may be seated, Mr. Guidry.

14          Any other jurors?  I think I see Juror Number 4 here,

15   in the jury box.

16          PROSPECTIVE JUROR:  My name is Marta Moroldo.

17          THE COURT:  Good morning.

18          PROSPECTIVE JUROR:  I'm a pediatrician.  I cover at

19   Tradition Cleveland Clinic Hospital.  We are three hospitalists

20   covering the floor; and one of my coworkers, her brother passed

21   away Saturday night, so she had to fly out.  That means that my

22   other coworker would have to cover for the whole week for me

23   and it's 24 hours in.

24          THE COURT:  All right.  And are there any other

25   coworkers who on occasion fill in, in these scenarios?

 1              PROSPECTIVE JUROR:  Well, but the ones that fill have

 2    another full-time job, so last minute things are kind of

 3    difficult.  I kind of arranged my schedule for last week, and I

 4    was able to come all the week, but it is hard to schedule for

 5    two weeks in a row with such a short number of people covering.

 6              THE COURT:  All right.  Understanding that this trial

 7    is expected to last no more than five days, does that change

 8    the scheduling concern at all?

 9              PROSPECTIVE JUROR:  My coworker will have to work 24

10    hours nonstop for five days.

11              THE COURT:  All right.

12              PROSPECTIVE JUROR:  Because we lost that one, if you

13    need, I can ask for, you know, the proof of the death of her --

14              THE COURT:  No, that's okay, ma'am.  Thank you, you

15    may be seated.

16              All right.  Any other jurors who have a unique

17    scheduling concern should express that right now?

18              All right, I see no additional hands.

19              Now, I'm going to turn it over to the attorneys

20    briefly for any limited follow-up as relates to the jurors who

21    have identified scheduling issues, anything from the

22    government.

23              MR. SCHILLER:  No, Your Honor, thank you.

24              THE COURT:  Anything from Mr. Berry?

25              MR. BERRY:  No, thank you, Judge.

```
 1                THE COURT:  All right.

 2                Now, does anybody here have any difficulty reading or

 3   speaking the English language?

 4                All right, I see a juror in the front.  Let's start

 5   with Juror Number 6.

 6                Please tell us your name, sir.

 7                PROSPECTIVE JUROR:  My name is Randy Zambrano.

 8                THE COURT:  All right.  What is your language

 9   situation?

10                PROSPECTIVE JUROR:  I speak Spanish, but I don't

11   understand too much English.

12                THE COURT:  Have you heard -- excuse me.  Have you

13   understood everything that I have said to this point so far?

14                PROSPECTIVE JUROR:  No.  I don't understand too much,

15   that's why.  I feel like, you know --

16                THE COURT:  Okay.  All right.

17                So did I hear correctly that you haven't fully

18   understood everything I have said thus far?

19                PROSPECTIVE JUROR:  Uh-huh.

20                THE COURT:  All right.  Thank you, sir.  You may be

21   seated.

22                Any other prospective jurors with difficulty reading

23   or speaking the English language?

24                All right.  I see no additional hands.

25                Now, does anybody here have any physical disabilities
```

1    or impairments -- hearing, sight or otherwise -- that would

2    render you incapable of performing your duty as a juror, if

3    chosen?

4           All right.  I see no hands.

5           Now, as I said earlier, we are here because an

6    indictment has been returned informing the defendant that he is

7    accused of certain crimes, and the defendant is called upon to

8    respond to that indictment.  But again, the indictment is not

9    evidence.  The indictment in this case was returned and the

10   defendant, in response to that indictment, said, "I am not

11   guilty."  Those words carry a great deal of weight because we

12   are now beginning a jury trial where the government is required

13   to prove beyond a reasonable doubt that the defendant is guilty

14   before he may be found guilty.  And so the fact that an

15   indictment exists does not mean that what it alleges actually

16   happened.  That is what you are here to determine, as I have

17   indicated, and that is what the government must prove beyond a

18   reasonable doubt.

19          Now, there are several important concepts that I want

20   to discuss with you.  These principles really lie at the heart

21   of our criminal justice system, and they start off with the

22   presumption of innocence, the government's burden of proof, and

23   the defendant's right to remain silent.

24          How many in this room, just by a show of hands, have

25   heard of a defendant's presumption of innocence?

1              All right.  I see a lot of hands going up.

2              Indeed, the indictment in a criminal case is merely,

3    as I have indicated, the accusatory paper which states the

4    charges to be determined at the trial, but it isn't evidence

5    against the defendant or anybody else.

6              As I have indicated, the defendant has entered a plea

7    of not guilty and he is presumed, by the law, to be innocent.

8    Every person charged with a crime in this country is presumed

9    innocent and that right is guaranteed by our constitution.

10             In fact, if I were to send all of you back to the

11   jury deliberation room right now, the only verdict you could

12   enter is not guilty.

13             Does anybody here have any difficulty accepting that

14   proposition as the law?

15             I see no hands.

16             Now again, to reiterate, the burden of proving the

17   defendant's guilt rests with his accuser which, in this case,

18   is the United States Government, and the burden is to prove the

19   charges beyond a reasonable doubt.

20             Now, I'm going to read to you the instruction that I

21   would give to you at the conclusion of a trial, if chosen to

22   serve on this jury, and it pertains to the definition of

23   "reasonable doubt," so please listen carefully.

24             The Government's burden of proof is heavy, but it

25   doesn't have to prove a defendant's guilt beyond all possible

1    doubt.  The Government's proof only has to exclude any

2    reasonable doubt concerning the defendant's guilt.  A

3    reasonable doubt is a real doubt based on your reason and

4    common sense after you have carefully and impartially

5    considered all of the evidence in the case.  Proof beyond a

6    reasonable doubt is proof so convincing that you would be

7    willing to rely and act on it without hesitation in the most

8    important of your own affairs.

9           Does anybody here have any difficulty accepting what

10   I have just read to you as the law?

11          I see no hands.

12          Now, along the same lines, the government has the

13   entire burden of proof.  That means there is nothing left over

14   for the Defense.  There is nothing for the defendant to prove

15   to you or to disprove to you.

16          Does anybody have any difficulty accepting that as

17   the law?

18          No hands.

19          Now, how many of you in this room have heard of a

20   defendant's right to remain silent?

21          Again, I see a number of hands scattered throughout.

22          As I have said before, the law does not require the

23   defendant to prove his innocence or to provide any evidence at

24   all.

25          And if the defendant elects not to testify, you

1    cannot consider that in any way during your deliberations.

2            Again, the government has the burden to prove a

3    defendant's guilt beyond a reasonable doubt and if the

4    government fails to meet that burden, you must find the

5    defendant not guilty.

6            Does anybody have any hesitation accepting those

7    principles as the law?

8            I see no hands.

9            And so to expound upon this principle, if the

10   defendant does not testify, again, you cannot hold that against

11   him.  Let me illustrate with an example.

12           Let's say the case is over, you go back in the jury

13   room, and you don't believe that the government has proven its

14   case beyond a reasonable doubt and to the exclusion of a

15   reasonable doubt.  At that point, you cannot say to yourself or

16   to your fellow jurors, well, I don't believe the government has

17   proven its case, but I'm going to find the defendant guilty

18   anyway because he didn't testify, you cannot do that.  You

19   cannot hold that against him.

20           Does anybody here have any trouble accepting that as

21   the law?

22           Again, no hands.

23           Nows, jurors, you will by required to judge the

24   testimony of witnesses; and to do so, you are going to use

25   certain common sense guidelines related to evaluating witness

```
 1   credibility.
 2           Now, we all communicate with people every day; and
 3   each time we communicate with someone, presumably you make a
 4   determination about whether the person with whom you are
 5   speaking is being sincere and accurate about what he or she is
 6   saying.  Those same common sense guidelines are the guidelines
 7   you are going to be required to use in this case to evaluate
 8   the credibility, sincerity, and accuracy of the witnesses that
 9   are going to be brought before you, and this is regardless of
10   the witness's profession.
11           Now, when you are considering a witness's
12   credibility, you may consider various factors like the
13   witness's opportunity and ability to see, hear, or know the
14   things the witness is testifying about, the witness's memory,
15   the witness's manner while testifying, any interest the witness
16   has in the outcome of the case, any other evidence that
17   contradicts the witness's testimony and the reasonableness of
18   the witness's testimony in light of all of the evidence along
19   with any other factors affecting believability.
20           Does anybody here in this room feel that they would
21   be unable to evaluate the credibility of witnesses as you are
22   hearing evidence in this case?
23           I see no hands.
24           Now, you may be hearing, and you will be hearing from
25   government agents and law enforcement officers in this case.
```

```
 1   Those common sense guidelines that I just went over with you in
 2   terms of judging a witness's credibility are the ones you need
 3   to apply to every witness regardless of his or her profession.
 4         Now, you have indicated that you don't know any of
 5   the anticipated witnesses that were identified by the
 6   government, and I would like to discuss sort of this issue of
 7   weighing credibility a little bit more specifically in the
 8   context of law enforcement witnesses.
 9         Does anybody here have any particularly negative or
10   positive feelings toward law enforcement that you simply would
11   not be able to put aside if selected to serve on this jury?
12         I see a juror in the back, Juror Number 42.  Hold on,
13   we need to get you the microphone.
14         One moment, I just want to -- Ms. Goetz; is that
15   correct?
16         PROSPECTIVE JUROR:  Yes.
17         THE COURT:  All right.  I didn't mean to interrupt
18   you.  What were you about to say, ma'am?
19         PROSPECTIVE JUROR:  I just have extremely positive --
20   my entire family is law enforcement, so I don't know that's
21   what you mean by that.
22         THE COURT:  Thank you.  I appreciate your answering;
23   you may be seated.
24         Any other members of the prospective juror pool who
25   have particularly positive or negative feelings toward law
```

 1    enforcement that they simply would not be able to put aside, if

 2    selected to serve on a jury?

 3            I see no hands.

 4            Now, this is a related question.  Do any of you think

 5    that you will find law enforcement officers more or less

 6    credible just because of their employment?  In other words,

 7    regardless of the various factors I described earlier regarding

 8    how to consider a witness's testimony?

 9            Juror Number 3 in the front.

10            PROSPECTIVE JUROR:  My stepson is -- sorry.

11            THE COURT:  Excuse me, I'm going to ask that you wait

12    for the microphone, please.

13            PROSPECTIVE JUROR:  Marvin Hurst.

14            My stepson is a sheriff down in Palm Beach County,

15    and I believe that they should be held to a higher standard,

16    and they do hold themselves to a higher standard.

17            THE COURT:  All right.

18            Mr. Hurst, now let me just clarify.  Given your

19    relationship with your stepson who is in law enforcement, do

20    you think anything about your stepson's employment would affect

21    or interfere with your ability to weigh the evidence in this

22    case based solely on the law as it is given to you as well as

23    the evidence as it is presented?

24            PROSPECTIVE JUROR:  I believe that they probably did

25    their job or we wouldn't be sitting here.

```
 1              THE COURT:  All right.  Thank you, Mr. Hurst, you may
 2    be seated.
 3              I see Juror 29 in the back.
 4              Good morning.  Ma'am, please tell me your name.
 5              PROSPECTIVE JUROR:  Lamour McKoy-Josephs.
 6              THE COURT:  Good morning.
 7              My question, to reiterate, is whether you would find
 8    a law enforcement officer more or less credible just because of
 9    his or her employment.  So that's the question; and what are
10    your thoughts, ma'am?
11              PROSPECTIVE JUROR:  From my past experience, my son
12    was pulled over by a cop and whatever that -- was written in
13    the report was incorrect.  Fast-forward, apparently the cops
14    did -- he made a false statement not only him but several
15    inmates; and the cop was charged and my son had to testify
16    against the cop and he was given prison time for that.
17              THE COURT:  The law enforcement officer was given
18    prison time?
19              PROSPECTIVE JUROR:  Yes, yes, in Martin County.
20              THE COURT:  Okay.  Now, as a result of that
21    experience that your son had and that you had indirectly
22    through your son, do you think it would be difficult for you to
23    set aside any views you might have about law enforcement given
24    how that proceeding ended up?
25              PROSPECTIVE JUROR:  Yes.
```

Monday, June 12, 2023.

```
 1              THE COURT:  And why?

 2              PROSPECTIVE JUROR:  Because I grew up knowing that

 3    cops -- you're always safe with them; and at this point, when

 4    you see a cop, I'm not anymore.

 5              THE COURT:  All right.  Thank you, ma'am; you may be

 6    seated.

 7              All right.  Let's see, any other jurors on this

 8    issue?

 9              Okay, I see no additional hands.

10              Now, I briefly earlier described in general terms the

11    allegations, the charges in this case against the defendant

12    which, as I noted, are conspiracy to advertise and distribute

13    child pornography along with engaging in what is termed a

14    "child exploitation enterprise."  Having heard the general

15    nature of those offenses as alleged, is there anything about

16    the nature of those allegations themselves that you think would

17    prevent any of you from serving as a fair and impartial juror

18    in this case?

19              All right, I see jurors in the back.

20              Starting with Juror 26, please tell me your name.

21              PROSPECTIVE JUROR:  Ashlee Register.

22              THE COURT:  Thank you, Ms. Register.

23              What would you like to share with us?

24              PROSPECTIVE JUROR:  Well, I would try and be fair and

25    impartial.  I'm a mother of three young children and just
```

 1    hearing the nature of the case makes me feel very emotional.

 2            THE COURT:  Now, the Court would instruct the jury if

 3    you were chosen that you would be unable to have sympathy or

 4    prejudice for either side, and you would be required to follow

 5    the law based only on the evidence in the case and the law as

 6    it is instructed.

 7            Do you think you would be able to do that, ma'am,

 8    despite what you have expressed just a minute ago?

 9            PROSPECTIVE JUROR:  No.

10            THE COURT:  All right.  Thank you.  You may be

11    seated.

12            All right.  Any other jurors?

13            I see Juror 45 and 42 in the back.

14            MR. REYNOLDS:  Your Honor, may we have just a brief

15    sidebar?

16            THE COURT:  Okay.

17      (Following proceedings were had in bench conference)

18            MR. REYNOLDS:  Your Honor, in our experience, this

19    question tends to elicit disclosures from jurors of a highly

20    personal nature, and we wanted to suggest to the Court that

21    perhaps the jurors could be given the opportunity to give their

22    answers at sidebar.

23            THE COURT:  Any thoughts from the Defense?

24            MR. BERRY:  I think the Court can simply remind the

25    jurors that if they would like to speak sidebar about

 1    something, that's okay.

 2             THE COURT:  All right.  Thank you, all.  I'll remind

 3    them of that again.

 4             That is all.

 5       (Proceedings in open court)

 6             THE COURT:  All right, thank you for your patience.

 7    It's not unusual to meet with the attorneys at sidebar, as we

 8    call it, which just means next to the bench.  So we will move

 9    on from that, but I do want to remind everybody that, of

10    course, given the sensitive nature of the allegations in this

11    case, if anybody wishes to speak to the Court in private along

12    with the attorneys, then you are always welcome to do that,

13    just let me know.

14             All right.  We left off discussing the nature of the

15    allegations, and I believe there were two jurors in the back

16    who had raised their paddles.  Please let me see the number --

17    Juror Number 45; good morning, ma'am.

18             PROSPECTIVE JUROR:  Good morning.  My name is

19    Nickeisha Mitchell.  I'm standing here because I'm a parent of

20    two children.  I would consider this not a fair trial for me to

21    be in.  I wouldn't be fair given my thoughts.  And I have a

22    16-year-old that was actually touched by an adult, so I

23    wouldn't think this would be a fair trial for me.

24             THE COURT:  All right.  Ms. Mitchell, we will meet

25    with you privately a bit later on for further questioning on

```
 1   that.
 2               Thank you very much for your candor.  You may be
 3   seated.
 4               And I see one more paddle in the back, Juror 42.  I
 5   think we have discussed your scheduling concerns and your other
 6   remarks; so for now, you may be seated.  If there is a need for
 7   further questioning, Ms. Goetz, I will return back to you.
 8               I see Juror Number 2.
 9               Good morning.  Please tell me your name.
10               PROSPECTIVE JUROR:  My name is Ken Harris.
11               THE COURT:  Good morning.
12               PROSPECTIVE JUROR:  I have seven children, three of
13   them are mine, four stepchildren that I am raising.  I'm
14   raising a grandchild right now.  I feel I can be -- dealing
15   with kids, I can usually pick up on a lot of things, but this
16   type of crime really infuriates me which I still think I can be
17   fair.  I'm just know that, you know, given all of my children,
18   both boys and girls, that every time I read something about it,
19   it is like whoo.  So I'm just -- you should know that.
20               THE COURT:  Thank you, and I appreciate that.
21               I think you indicated that you still think you can be
22   fair.  Now, of course, that's essential, and you would be given
23   instructions on the law and it would be your duty, if chosen,
24   to be a fair and impartial juror, sir.  Do you think you could
25   do that?
```

```
 1              PROSPECTIVE JUROR:  I believe so, yes.

 2              THE COURT:  Thank you.  You may be seated.

 3              All right.  I see no additional paddles up at this

 4   time so we will move on.

 5              Oh, Juror Number 9.

 6              PROSPECTIVE JUROR:  Took me a while to figure it out.

 7              THE COURT:  That's okay.  Please tell me your name.

 8              PROSPECTIVE JUROR:  Linda Marciano.

 9              THE COURT:  Good morning, ma'am.

10              PROSPECTIVE JUROR:  Good morning.

11              At 13, I was molested by an army soldier.

12              THE COURT:  I'm very sorry to hear that, ma'am.

13              PROSPECTIVE JUROR:  I don't know if I -- it's not the

14   same, but kind of, I don't know.

15              THE COURT:  And I can understand why you would want

16   to share that.  And it's difficult, I'm sure, to do so.  What I

17   do want to stress, though, is that each case has to be judged

18   by the facts pertinent to that case only, and so whatever may

19   have happened in your personal life has no bearing on whether

20   the government can meet its burden to prove the Defendant's

21   guilt beyond a reasonable doubt in this case.

22              So having said what I just said, do you have any

23   hesitation, ma'am, as to whether you could be a fair and

24   impartial juror in this case?

25              PROSPECTIVE JUROR:  I don't know.
```

1            THE COURT:  All right.  You may be seated, thank you.

2            All right.  Scanning the room, I see no additional

3    jurors.

4            All right.  Now I'm going to address the concepts of

5    sympathy and prejudice.  Sometimes we might feel sorry for

6    people in difficult situations; and unfortunately, sometimes we

7    may also feel prejudice.  Neither sympathy nor prejudice can

8    factor into your deliberations.  You are the judges of the

9    facts; and if you allow emotions to cloud your decision-making,

10   you will not be fulfilling your obligations as a juror.

11           Is there anybody here who cannot put feelings aside

12   or who cannot sit in judgment of others?

13           All right, I see no hands.

14           Now, relatedly, is there anybody here who feels they

15   could not be fair to both sides and hear the evidence

16   objectively?

17           I see no hands.

18           Now, you will be asked and instructed to disregard

19   the consequences of any verdict rendered.  Do not be concerned

20   with the imposition of any sentence as that is the sole

21   province of the judge not the jury.

22           Does anybody here have any difficulty accepting that

23   as the law?

24           All right, I see no hands.

25           Now, as jurors, you may disagree about what the

1    evidence has shown.  One juror may believe one witness and not

2    another, or you may believe part of what a witness says and not

3    another part.  That is perfectly acceptable.

4           After you retire to the jury room, you must discuss

5    all the evidence and see if you can reach a unanimous verdict.

6    There is no room, however, for doubt concerning the law.  The

7    law is what the Court instructs you it is, and you must be

8    willing to accept the law as it is instructed.

9           Is there anybody here who has any difficulty

10   accepting that proposition as the law?

11          Now, relatedly, is there anybody here -- and I see no

12   hands.  Who would not follow the law even if you disagreed with

13   it?

14          I see no hands.

15          All right.  Now I'm going to shift gears and talk

16   about a different topic which is computers and the internet a

17   bit more broadly.  This case will involve evidence about the

18   internet and computers.  Is there anybody here who doesn't use

19   any type of computer or electronic device to connect to the

20   internet either at home or at work?

21          I see no hands.

22          Now, on the flip side, is there anybody here who

23   considers themselves to have specialized knowledge or

24   experience in the realm of computers, for example, experience

25   writing code or conducting computer forensic examinations?

```
 1              All right.  Juror Number 9, Ms. Marciano.

 2              Be careful, Officer.

 3              Good morning, again.  Tell me focusing here on the

 4    issue of computer specific knowledge.

 5              PROSPECTIVE JUROR:  Well, I had my own business of

 6    doing IT work for a small town and also doing -- creating

 7    websites and setting up networking and doing anything that was

 8    needed.  I have two associate's degrees, one in advanced web

 9    design and networking.

10              THE COURT:  And are you still engaged in that

11    business?

12              PROSPECTIVE JUROR:  No.

13              THE COURT:  Are you retired, ma'am?

14              PROSPECTIVE JUROR:  Yes.

15              THE COURT:  Okay.  How long ago were you running that

16    operation, if you remember?

17              PROSPECTIVE JUROR:  I think about ten years ago.

18              THE COURT:  Okay.  All right.  Thank you, ma'am.  You

19    may be seated.

20              I see Juror Number 50, right here in one of the extra

21    chairs.

22              PROSPECTIVE JUROR:  I teach computer coding, basic

23    coding, basic to middle school kids.

24              THE COURT:  One moment, before you hand off the mic.

25              Is your name Ms. Sleeper?
```

1           PROSPECTIVE JUROR:  Yes, Juror 50.

2           THE COURT:  You said you teach computer code to

3      middle schoolers; is that right?

4           PROSPECTIVE JUROR:  Uh-huh.

5           Robotics club.

6           THE COURT:  And how advanced would you say the

7      curriculum is in your capacity with those students?

8           PROSPECTIVE JUROR:  Code data work, it is not very

9      advanced.

10          THE COURT:  Thank you very much, Ms. Sleeper.  You

11     may be seated.

12          Any other hands related to the specialized computer

13     knowledge or experience question?

14          Okay.  I see no hands, or no additional hands.

15          Now, I'm going to shift gears again to another topic,

16     and it concerns statements made by a defendant.  If the

17     government offers evidence that a defendant made a statement or

18     admission to someone after being arrested or detained, you must

19     consider that evidence with caution and great care.  You must

20     decide for yourself, number one, whether the defendant actually

21     made the statement and, number two, how much weight to give to

22     that statement.  To make these decisions, you must consider all

23     of the evidence about the statement including the circumstances

24     under which it was made.

25          Now, having read that instruction to you, is there

1    anybody here who has any hesitation accepting that instruction

2    on the law as relates to statements of a defendant?

3              All right, I see no hands.

4              All right, let's check the time.  It's 10:30, don't

5    worry, there will be an opportunity for a restroom break

6    shortly.

7              All right.  So what I'm going to do now is ask a

8    question.  If any juror wishes to offer an answer to this

9    question, then I'm going to ask that you stay in the courtroom.

10   You don't have to answer or speak now, we will go one by one

11   through this process because of the sensitive nature of the

12   questioning.

13             So the question is this:  If you are selected as a

14   juror in this case, it is anticipated that evidence will

15   consist, in part, of graphic descriptions of sexually explicit

16   conduct involving a minor child including images -- a limited

17   number of images depicting such conduct.

18             Many people may find this material difficult to look

19   at.  Nevertheless, the charges in this case relate to the

20   alleged distribution and advertisement of child pornography,

21   and it is imperative that jurors remain fair and impartial and

22   follow the Court's instructions on the law.

23             Does anybody here feel that they would be unable to

24   perform their duties fairly and impartially as a juror in this

25   case?  Now that's the question.  If the answer to that question

```
 1    is yes or something approximating yes, please remain in the

 2    courtroom.

 3              Everybody else you may stand and go for a restroom

 4    break, 15 minutes in length.

 5              So at this point, we will proceed in that fashion.

 6              All rise for the jurors.

 7              And again, any folks who wish to remain in the

 8    courtroom to discuss privately, please do so.

 9      (Some members of venire panel exists the courtroom)

10              THE COURT:  All right, you may be seated.

11              We will start with Juror Number 4.  If you can make

12    your way to sidebar, ma'am, which is just right here.

13      (Following proceedings were had in bench conference)

14              THE COURT:  All right.  This is Juror Number 4,

15    Ms. Moroldo.

16              I know you also have a scheduling concern that we

17    have addressed, so before we dive into this topic, let me just

18    ask the parties if they have any particular questioning for

19    Ms. Moroldo.

20              MR. BERRY:  No, ma'am; no questions from the Defense.

21              MR. SCHILLER:  And no questions from the government.

22              THE COURT:  Diane, are you hearing us okay?

23              THE COURT REPORTER:  Yes.

24              THE COURT:  All right.

25              Thank you very much, Ms. Moraldo; you may go outside
```

Monday, June 12, 2023.

1    for your break, and we will call you back in with the full

2    group.

3        (Proceedings in open court)

4            The court:  All right.  The next juror in numerical

5    order is --

6            Tell me your number, sir.

7            PROSPECTIVE JUROR:  Juror 11.

8            THE COURT:  Okay, let's talk to you, sir.  Are you

9    Mr. Shoudt?

10           PROSPECTIVE JUROR:  Yes, ma'am.

11           MR. BERRY:  Your Honor, before the juror approaches,

12   can we address something private, please?

13           THE COURT:  Excuse me, sir, one moment.

14       (Following proceedings were had in bench conference)

15           THE COURT:  All right.  This is going to get

16   cumbersome, so I'm not going to be doing these one-off sidebars

17   this entire time.

18           MR. BERRY:  I understand.

19           The issue is that with the additional questioning

20   that the Court -- I think the Court is going to be doing of

21   these jurors, the concern is that my client, who is not at

22   sidebar, is not able to hear any of the responses.  Ultimately,

23   this is his jury and he should be able to hear what is

24   happening.

25           My suggestion would be rather than do these sidebar,

```
 1    to have the jurors step out and we call them into the courtroom
 2    one by one so that Mr. Spearman can actually hear what is going
 3    on.
 4              THE COURT:  Any objection from the government?
 5              MR. SCHILLER:  No objection.
 6              THE COURT:  Then I'll accommodate your request.
 7              MR. BERRY:  Thank you, Judge.
 8         (Proceedings in open court)
 9              THE COURT:  All right.  There has been a
10    recommendation by the parties to make it easier for everybody
11    here, in terms of avoiding the logistical gathering here at
12    sidebar, that we do this one by one rather than at sidebar; and
13    so at this time -- and please excuse the change of plans, but
14    other than Juror Number 11, I'm going to ask that the remaining
15    jurors just stand right outside.  Do not leave this area,
16    please, and we will call you in one by one.
17              Also, please, of course, do not misplace your
18    paddles.
19         (The remaining venire panel exited the courtroom)
20              THE COURT:  All right.  I think we are ready to go
21    now.  Let's equip Mr. Shoudt with the microphone.
22              The floor is yours, sir.
23              PROSPECTIVE JUROR:  I'm a victim of violent crime.  I
24    was robbed at gunpoint, kidnapped, got my ribs broke, my leg
25    broke, and my wrist broke.  I trust no one and I believe no
```

```
 1   one.  I will never be able to be impartial.
 2             THE COURT:  All right.
 3             Any questions from the parties?
 4             Mr. Reynolds or Mr. Schiller?
 5             MR. SCHILLER:  No questions, Your Honor; thank you.
 6             THE COURT:  Anything from Mr. Berry?
 7             MR. BERRY:  No, Your Honor; thank you.
 8             THE COURT:  All right.  Thank you, Mr. Shoudt, you
 9   may be excused.  Please do not leave the courthouse though,
10   remain outside and you are now free to use the restroom and
11   come back later.
12             (Prospective Juror 11 exits courtroom)
13             THE COURT:  Ms. Casissi, can you get the next juror,
14   please.
15             (Prospective Juror 12 enters courtroom)
16             THE COURT:  Thank you, ma'am.  If you can just walk
17   up, you can either be seated or standing by the jury box,
18   whatever makes you more comfortable.
19             And let's start off with your juror number, which is
20   Juror 12.  Are you Ms. Corie Biandis?
21             PROSPECTIVE JUROR:  Yes.
22             THE COURT:  All right.  What would you like to share
23   with us, given the Court's question?
24             PROSPECTIVE JUROR:  It is nothing I needed to share
25   in private, I just didn't realize until your last question that
```

```
 1   we would need to look at imagery; and morally, I don't think I
 2   could do that.  I'm not a mother, but I have three nieces and
 3   nephews I'm very close to and, morally, I don't think I could
 4   look at those images.
 5              THE COURT:  Any questions from the attorneys,
 6   Mr. Schiller?
 7              MR. SCHILLER:  Yes, ma'am, quick follow-up.
 8              Good morning, ma'am.
 9              PROSPECTIVE JUROR:  Good morning.
10                            EXAMINATION
11   BY MR. SCHILLER:
12   Q   When you say morally you can't, can you just give us a
13   little more information what you mean by that?
14   A   I just don't think I could bring myself to look at them.
15   Q   Do you think by looking at them, you will automatically
16   find either that a person would be guilty or not guilty?
17              Just looking at them, would that affect your
18   decision-making process?
19   A   No, I don't think so, but I think I would be biased to --
20   just to know that the person is associated with that imagery.
21   Q   Biased in which way?
22   A   Against them.
23   Q   Okay.  And do you think that's a definite feeling you would
24   have, or you think that might happen?
25   A   That might happen.
```

1           MR. SCHILLER:  Okay, thank you, Judge.

2           THE COURT:  All right, thank you.

3           Anything from Mr. Berry?

4           MR. BERRY:  Just one moment, Judge.

5                           EXAMINATION

6    BY MR. BERRY:

7    Q    Good morning, ma'am.

8    A    Good morning.

9    Q    I just want to kind of clarify.  When you talk about how

10   you morally couldn't look at the images, so if images were

11   presented in a courtroom and you were on the jury, you wouldn't

12   look at them at all, is that what you are saying?

13   A    I don't think I would be able to bring myself to look at

14   them.

15   Q    So that would be evidence.  If we had a trial and you were

16   on the jury, there would be -- and such evidence was presented,

17   you would not be able to consider that evidence in any way?

18   A    It would be extremely difficult.  I don't think so.  I

19   mean, I won't know for sure until I'm in that circumstance; but

20   I don't think the context of in a courtroom or otherwise, I

21   would ever bring myself to look at that imagery.

22   Q    Do you think perhaps you wouldn't be able to ultimately be

23   fair in doing your duty as a juror in this particular case

24   because of that situation?

25   A    Yes, that is my concern and that's why I brought that up.

```
 1              MR. BERRY:  Thank you, appreciate it.

 2              THE WITNESS:  Yes.

 3              MR. BERRY:  Nothing further, Judge.

 4              THE COURT:  Thank you, Juror 12; you may be excused

 5    to use the restroom.  And, of course, please don't discuss

 6    these matters with any of your fellow jurors or the case at

 7    all, thank you.

 8        (Prospective Juror 12 exits the courtroom)

 9              THE COURT:  Ms. Casissi, next juror, please.

10        (Prospective Juror 14 enters courtroom)

11              THE COURT:  Good morning, sir.

12              PROSPECTIVE JUROR:  Good morning.

13              THE COURT:  If you could stand over here by the jury

14    box, or you may be seated if you prefer.

15              Please tell me first your juror number and then your

16    name.

17              PROSPECTIVE JUROR:  Juror 14.

18              THE COURT:  Good afternoon.  Is your name David Hall?

19              PROSPECTIVE JUROR:  Yes.

20              THE COURT:  Okay.  What would you like to express?

21              PROSPECTIVE JUROR:  I would like to express that I

22    worked many years up north in an emergency room as an advocate,

23    advocating for child abuse, domestic violence; and I just

24    really have a hard time with that because, you know, I

25    advocated for those poor children that really had no choice, so
```

```
 1    I just I feel that that would sway my decisions as being a
 2    juror.
 3            THE COURT:  All right.  I'm going to turn it over now
 4    to the attorneys and they might have additional questions for
 5    you.
 6            Mr. Schiller?
 7            MR. SCHILLER:  Judge, thank you very much.
 8                            EXAMINATION
 9    BY MR. SCHILLER:
10    Q    Good morning, Mr. Hall.
11    A    Good morning.
12    Q    In the course of this trial, if you have to view images or
13    hear about a description of images that involve children and
14    sexual exploitation, do you think seeing it and hearing it, you
15    will automatically find that the defendant.
16     is either guilty or not guilty?
17    A    I guess, it just depends on what the evidence is I think
18    so...
19    Q    So I guess that's where my questioning leads.  If you have
20    to see those images, are you going to automatically find one
21    way or the other, or are you going to consider all the
22    evidence?
23    A    I could, I could.
24    Q    You could what?
25    A    I could go one way or another, you know, that they were
```

```
 1    guilty based on the pictures.
 2    Q    So if all we did was show pictures of a graphic nature
 3    involving children, based on that and nothing else, you could
 4    find somebody guilty?
 5    A    Yes, I could.
 6    Q    Even if we have no evidence even linking those pictures to
 7    somebody?
 8    A    Right, and I was just so exposed to it --
 9    Q    I understand.
10    A    -- and represented the poor children so...
11    Q    I'm not challenging you in the least, but I'm just trying
12    to see to what level we get.
13              Okay, sir, thank you very much.
14              THE COURT:  Any questions from Mr. Berry?
15              MR. BERRY:  No, thank you, Judge.
16              THE COURT:  Thank you, Mr. Hall.
17              Please don't misplace your paddle or discuss these
18    matters with any of the prospective jurors and we will see you
19    in a few minutes.
20         (Prospective Juror 14 exits courtroom; prospective Juror
21          23 enters courtroom)
22              THE COURT:  Good morning, sir.
23              PROSPECTIVE JUROR:  Good morning.
24              THE COURT:  You can stand there, if you wish, or be
25    seated, whatever you prefer.  I do want to see your juror
```

1   number, if you don't mind.

2          Are you Juror 23?

3          PROSPECTIVE JUROR:  Yes.

4          THE COURT:  What is your name?

5          PROSPECTIVE JUROR:  James Sopher.

6          THE COURT:  What would you like to share with us

7   given the Court's question?

8          PROSPECTIVE JUROR:  Mr. Matthews there is as good

9   friend and neighbor.  I just wanted to -- there is no related

10  question you had earlier, so I just wanted to make sure --

11         THE COURT:  Oh, okay, all right.

12         PROSPECTIVE JUROR:  -- that was clear.

13         THE COURT:  So what I heard is that you are a friend

14  of one of the deputy marshals in the courtroom; is that

15  correct?

16         PROSPECTIVE JUROR:  Yes.

17         THE COURT:  Would your friendship with the deputy

18  marshal, who isn't an attorney of record in this case and will

19  not be participating as a substantive matter, would that have

20  any impact at all, sir, in your consideration of the evidence

21  in this case?

22         PROSPECTIVE JUROR:  No.

23         THE COURT:  Do you believe you could be a fair and

24  impartial juror weighing the evidence objectively?

25         PROSPECTIVE JUROR:  I do.  I have one other item as

```
 1   well.

 2            THE COURT:  What is that?

 3            PROSPECTIVE JUROR:  My brother was convicted of the

 4   same crime and served time for it.

 5            THE COURT:  And what crime is that?

 6            THE WITNESS:  Child pornography.

 7            THE COURT:  Now, in light of your brother's prior

 8   conviction, do you think that would impact or make it difficult

 9   for you to be a fair and impartial juror in this case weighing

10   the evidence introduced in this proceeding only?

11            PROSPECTIVE JUROR:  I think I could be fair.  It's

12   tough to say depending on what comes up how that affects you,

13   you know.  It was very personal.  It was hard for the family.

14   He served time for what he deserved, like what he did, and he

15   even owns up to it.  So I believe in our justice system, I just

16   felt that was important to mention.

17            THE COURT:  And I thank you for that.

18            All right.  Let me turn it over to Mr. Schiller.

19            MR. SCHILLER:  Thank you, Judge.

20            Good morning, Mr. Sopher.

21            PROSPECTIVE JUROR:  Good morning.

22                              EXAMINATION

23   BY MR. SCHILLER:

24   Q   Your brother's case, where did it occur?

25   A   It was federal, he was in Maryland.
```

```
 1  Q    Okay.  Did you participate in the case at all?
 2  A    No, I didn't go up there.  I just couldn't stomach the
 3  whole situation at the time.  I had a lot going on with work,
 4  and I didn't, you know.
 5  Q    Had you had a close relationship with your brother prior to
 6  his arrest?
 7  A    We talk; we are not best friends, but we certainly talk and
 8  I felt for him.  I went to see him, you know.  It was -- I
 9  didn't -- I certainly didn't agree with what he did, but I was
10  there for him as a brother, so he -- you know, he wanted to end
11  his life during that period of time, so I was there to support
12  him.
13  Q    All right, thank you.
14        He was prosecuted in the District of Maryland, to
15  your knowledge?
16  A    I don't -- like I said -- well, it was federal so
17  whatever -- you know, whatever that means.  He was --
18  Q    But to your knowledge, everything kind of stayed in
19  Maryland?
20  A    I think so.  I mean, he did his time in New Jersey.
21  Q    Okay, fair enough.
22        And how long ago did this happen?
23  A    In '09, '10, something like that.  I think he has been out
24  a few years.  He was in for like nine.
25  Q    So in 2009, he went to prison or he was released from
```

```
 1   prison?

 2   A    I think that's when he got -- when this whole thing came

 3   up, and then it took maybe a year to run the court system.

 4   Q    And are you aware of how much prison time he served?

 5   A    I think nine years.

 6   Q    Nine years, okay.  So he was released pretty recently?

 7   A    Yeah, two, three years ago, I guess, maybe two.

 8   Q    Did you -- I know you said you went to visit him.  Did you

 9   attend any court hearings at all?

10   A    No.

11   Q    Were you interviewed by any law enforcement officers?

12   A    No.

13   Q    Was there any search conducted at your premises or anything

14   to do with you at all?

15   A    No.

16   Q    Do you know which agency investigated him, whether it was

17   FBI or Homeland Security?

18   A    FBI.

19   Q    FBI, okay.

20           Do you know why he was investigated for child

21   pornography, like what the basis of the investigation was, in

22   other words how they found him?

23   A    Yeah.

24   Q    Can you just tell us a little about that?

25   A    He was involved in group sharing pictures, and they shared
```

1    pictures over state lines and that's how it became federal.

2              THE COURT:  One more minute, Mr. Schiller.

3              MR. SCHILLER:  Thank you.

4    BY MR. SCHILLER:

5    Q    I assume using the internet then.

6    A    Yes.

7    Q    And do you know what they were using to communicate,

8    whether it was e-mail or an application or something of that

9    nature?

10   A    I'm not entirely clear.  I think it was some sort of share

11   filing thing, but I really not exactly sure.

12   Q    Lastly, is there any reason why, if you were a juror on

13   this case, based on your experiences, that you would

14   automatically find the defendant guilty or automatically find

15   him not guilty, or would you consider the evidence in this case

16   to judge your determination?

17   A    Knowing what he went through and all that, it's hard not to

18   have a feeling that there is a reason he is behind the table

19   here in this room.

20   Q    Okay, understood.  Can you put that aside and be fair and

21   impartial, though?

22   A    Yeah, I think so.

23             MR. SCHILLER:  Thank you, nothing further, Judge.

24             THE COURT:  Mr. Berry.

25             MR. BERRY:  Yes, Judge, just one moment.

1                          EXAMINATION

2   BY MR. BERRY:

3   Q    So obviously, Mr. Spearman is sitting here accused of child

4   pornography-related offenses; you know, we have concerns based

5   on what you have told us about whether this is the right case

6   for you.  Can you understand why we might have those concerns?

7   A    I do.

8   Q    Do you think we should be concerned about having you sit on

9   a jury where Mr. Spearman's -- you know, the rest of his life

10  is at issue?  Do you think we should be concerned about you

11  specifically based on what you have told us?

12  A    I could see why you would feel that way.  I'm fair to

13  hearing both sides of an argument.

14  Q    One of the things that you just mentioned as Mr. Schiller

15  was asking you questions, I think what you said was that based

16  on what your brother went through, you believe there must be a

17  reason why he is here today.  I'm assuming you were referring

18  to Mr. Spearman.

19  A    Yes.

20  Q    What do you mean by that?  Why do you say that?

21  A    I guess I'm putting myself just related to the history of

22  my brother.  There is a certain amount of evidence that was

23  most likely seen and connected to that gentleman to find him in

24  this room.

25  Q    So one of the things that Judge Cannon had mentioned

1   earlier to the entire panel of jurors was that, you know, if

2   you were to go back to deliberate right now, at this very

3   moment, under the law, your verdict would have to be not

4   guilty; do you remember her talking about that?

5   A    I do, yeah.

6   Q    So we want jurors who can really -- in their heart, can

7   start with that premise that, right now as we sit here, he is

8   innocent.

9           THE COURT:  One minute.

10  BY MR. BERRY:

11  Q    Based on your feeling that there must be a reason why he is

12  here, do you really think you can do that in this case?

13  A    I'm responsible for following the law, so I guess I would

14  have to follow the law.  It just, again, given the -- given

15  my -- what's gone on in my life, it is certainly in the back of

16  my head.

17  Q    Do you have a reasonable doubt about whether you can follow

18  the law in this particular case because of the things you have

19  mentioned today?

20  A    What does that mean exactly?  You are saying -- do I doubt

21  that I could do that you are saying?

22  Q    Yeah, you have doubt and with some reason.

23  A    I think -- I think following the law is more -- you know,

24  it -- like the Judge said, like it's got to override any other

25  feeling it is supposed to, so I have to follow the law.

1          THE COURT:  Thank you.

2          All right.  Thank you very much, Mr. Sopher.  You may

3   go use the restroom.  Please don't lose your paddle.  We will

4   call you back in with the full group; and also, don't discuss

5   these matters.

6          (Prospective Juror 23 exits courtroom; Prospective.

7      Juror 26 enters courtroom)

8          THE COURT:  All right.

9          Hello, ma'am.  Juror Number 26, can you tell us your

10  name again, please?

11         PROSPECTIVE JUROR:  Ashlee Register.

12         THE COURT:  Thank you, I think we had an opportunity

13  earlier to discuss your ability to be fair and impartial.  I

14  think you indicated that given the nature of the case, you

15  would not be able to.  Is that still your belief, ma'am?

16         PROSPECTIVE JUROR:  It would be difficult.

17         THE COURT:  And sometimes things are difficult; but

18  nevertheless, we are called upon to administer and to execute

19  our oaths, so my question to you is:  Would you be able to be

20  fair and impartial in this case evaluating the evidence

21  presented in the courtroom only and the law as it is given to

22  you?

23         PROSPECTIVE JUROR:  I don't know if I could focus on

24  the law given the nature of the case and the potential evidence

25  being presented.  I'm afraid my emotions may overtake

1   everything else.

2           THE COURT:  All right.

3           Brief questioning, Mr. Schiller, if any?

4           MR. SCHILLER:  No, Your Honor; thank you.

5           THE COURT:  All right.

6           Any from Mr. Berry?

7           MR. BERRY:  No, Your Honor.  Thank you.

8           THE COURT:  Thank you, Ms. Register; you may be

9   excused and please hold onto your paddle and don't discuss

10  these matters.

11          (Prospective Juror 24 leaves courtroom; Prospective.

12      Juror 28 enters courtroom)

13          THE COURT:  Good morning, still.

14          Please tell me your juror number and your name.

15          PROSPECTIVE JUROR:  Twenty-eight, Terri Dalman.

16          THE COURT:  Good morning.

17          PROSPECTIVE JUROR:  Good morning.

18          THE COURT:  What would you like to share with the

19  Court, ma'am?

20          PROSPECTIVE JUROR:  Well, I was okay with everything

21  I was hearing until I had to see images.  I don't feel I can do

22  that with child pornography.

23          THE COURT:  And that's very understandable, ma'am.  I

24  understand the difficulty associated with that task.  Now, what

25  I will say is that what is anticipated in this case is, so you

```
 1   are aware, a very limited number of child pornography.  There

 2   will be additional references we anticipate of a graphic sexual

 3   nature.  And it is important for both sides that the evidence

 4   can be presented and that arguments could be made appropriately

 5   from that evidence.  Of course, this case is important for both

 6   the government and the defendant.

 7            Having heard all of that, is it your belief that you

 8   could be fair and impartial if chosen to serve as a juror in

 9   this case?

10            PROSPECTIVE JUROR:  I think I could, but this is a

11   tough one.  I hope so.

12            THE COURT:  All right.  And thank you, I'm going to

13   turn it over now for some brief questioning by the government.

14            Mr. Schiller, anything for Ms. Dalman?

15            MR. SCHILLER:  Just one follow-up, Judge, if I may.

16                              EXAMINATION

17   BY MR. SCHILLER:

18   Q   Good morning, ma'am.

19   A   Hi.

20   Q   Hi.  So obviously, nobody wants to look at those kinds of

21   images ever.

22   A   Not at all.

23   Q   We understand that.  Sometimes, though, in a criminal jury

24   trial, we have to look at things because it is evidence and we

25   have to make determinations about things.  In a murder trial,
```

1    there might be pictures of dead bodies; if a gun trial, there

2    might be pictures of a gun or an actual gun.  So are you able

3    to sit here and listen to the evidence even though it includes

4    these images or descriptions of the images and fairly determine

5    whether the defendant is guilty or not guilty and not let just

6    those images make your mind up for you?

7    A    Right.  I hope -- if it was a murder trial, I would be on

8    it, you know, I love watching that stuff.  This is something

9    that as soon as she said "images," I don't want to see them.  I

10   have a hard time with that.

11   Q    Do you think it would cloud your judgment or do you think

12   it is just hard to do it and you don't want to?

13   A    It is hard to deal with seeing that.  I don't think it

14   would cloud my judgment, but I don't like the fact of -- you

15   know, I don't know how many you are going to show or what they

16   are.

17   Q    Fair enough.

18   A    If it was murder -- there are things I can handle; but a

19   child and porn and that kind of thing, that's probably the

20   worst thing to see and I don't want to see it.  I don't want it

21   in my head.

22   Q    No, and I understand; and we thank you for your candor.

23   A    You know, I was good until that.

24   Q    Do you think, though, that it's going to prevent you from

25   being fair in this trial?  That's really the ultimate

1    question --

2    A   No, I think I could be fair.  Yeah, I would hope I could

3    be.

4    Q   Do you think just seeing those images or hearing a

5    description of them will make you automatically find the

6    defendant guilty or not guilty, or you will listen to all the

7    evidence before you render a verdict?

8    A   I would listen to the evidence.

9           MR. SCHILLER:  Nothing further.

10          THE COURT:  Mr. Berry --

11          Excuse me, ma'am; Mr. Berry has as chance to speak

12   with you as well.

13          MR. BERRY:  Good morning, ma'am.

14          Good morning.

15                      <u>EXAMINATION</u>

16   BY MR. BERRY:

17   Q   So, you know, if you sit on the jury in this case, if you

18   are a juror, you are going to have to look at that stuff.

19   A   I know, that's why I'm here right now.

20   Q   No, I get it.  I guess my question is:  If that happens,

21   what are you going to do?

22   A   I don't know how I would react.  You know, I'm a little

23   bit -- it bothers me now.  I'm telling you, I don't know if I

24   would be a good one.

25          THE COURT:  I understand.

1    BY MR. BERRY:

2    Q    Are you willing to actually look at those images if they

3    are presented to you?

4    A    I turn away from things, you know, that -- so to be forced,

5    I don't know.  I mean, I may glance and look away.  I don't

6    know what I would do, I have never experienced this.

7    Q    Do you think there is a possibility that if that was some

8    of the evidence in this case and you were on the jury that you

9    might, when you are considering this case, you might actually

10   just not --

11   A    Look away?

12   Q    Might not consider or evaluate that particular piece of

13   evidence?

14   A    Maybe not like I should.  I don't know because I wouldn't

15   want to sit there and study it, you know.  So I was good with

16   everything until I heard that in here and then something come

17   over me.  I don't know that I could -- I don't want to see it.

18              THE COURT:  All right.  Thank you very much, we are

19   all done at the moment.

20              Ms. Dalman, you can exit.  Please don't lose your

21   paddle and don't discuss these matters.

22              Ms. Casissi, how many more do we have for this

23   question?

24              THE COURTROOM DEPUTY:  Four, Your Honor.

25              THE COURT:  All right.

```
 1              (Prospective Juror 28 leaves courtroom; Prospective.
 2       Juror 42 enters courtroom)
 3              THE COURT:  Please tell me your name and juror
 4       number.
 5              PROSPECTIVE JUROR:  Kelly Goetz, 42.  I am sorry, I
 6       know I already said like a hundred things.
 7              THE COURT:  You don't have to apologize.  This is a
 8       thorough and comprehensive process, so we just ask you to
 9       participate in a candid way.
10              I know you have indicated previously you have some
11       scheduling concerns, and you have also indicated your
12       perspective about law enforcement.
13              At this point, I'm going to just ask the attorneys
14       whether they have any additional questioning for Ms. Goetz.
15              MR. SCHILLER:  None from the government, Your Honor.
16              THE COURT:  Mr. Berry?
17              MR. BERRY:  No; thank you, Judge.
18              THE COURT:  Thank you, Ms. Goetz.  Please don't loose
19       your paddle or discuss these matters.  We will see you
20       momentarily.
21              (Prospective Juror 42 leaves courtroom; Prospective.
22       Juror 43 enters courtroom)
23              THE COURT:  Hello, ma'am.
24              Please equip her with the microphone.
25              Good morning.  If you prefer to be seated, that's
```

```
 1    fine as well.

 2              Your name, please.

 3              THE WITNESS:  Sherry Thompson.

 4              THE COURT:  Your juror number?

 5              PROSPECTIVE JUROR:  Forty-three.

 6              THE COURT:  Thank you.

 7              All right.  What would you like to share with the

 8    Court and the attorneys and parties in the case?

 9              PROSPECTIVE JUROR:  I am a victim of child

10    molestation and pornography many, many years ago, so this would

11    be hard for me.

12              THE COURT:  Thank you for your candor.  I know these

13    matters are very difficult to discuss.

14              Mr. Schiller.

15              MR. SCHILLER:  No questions, Your Honor.

16              THE COURT:  Mr. Berry?

17              MR. BERRY:  No questions, Judge.

18              THE COURT:  All right.  Thank you, Ms. Thompson.

19              Please hold on to your paddle and don't discuss these

20    matters with the other jurors, we will call you back in a few

21    moments.

22              (Prospective Juror 43 leaves courtroom; Prospective.

23       Juror 50 enters courtroom)

24              THE COURT:  Hello, Ms. Sleeper.  Please remind me of

25    your juror number.
```

```
 1              PROSPECTIVE JUROR:  Fifty.

 2              THE COURT:  All right.  What would you like to share

 3    with the Court?

 4              PROSPECTIVE JUROR:  My daughter was sexually molested

 5    when she was seven years old, and it has ripped my family

 6    apart.  She is 40 now and still in therapy, so I'm not sure I

 7    could be impartial.

 8              THE COURT:  Mr. Schiller?

 9              MR. SCHILLER:  Nothing, Your Honor.  Thank you.

10              THE COURT:  Mr. Berry?

11              MR. BERRY:  No, thank you, Judge.

12              THE COURT:  Thank you, Ms. Sleeper.  Please hold on

13    to your paddle and we will see you momentarily, don't discuss

14    these matters.

15              (Prospective Juror 50 leaves courtroom)

16              THE COURTROOM DEPUTY:  That's it, Your Honor.

17              THE COURT:  I'm hearing from the courtroom deputy

18    there are no additional jurors seated in the courtroom in

19    response to the Court's question, so what we are going to do

20    for purposes of attorneys and the court reporter and the

21    parties is to take a ten-minute break until 11:17.  So please

22    return promptly to the courtroom at that time.

23         (Recess was had at 11:06 A.M.; and the proceedings

24         Resumed at 11:18 A.M.)

25              THE COURT:  We are waiting for the defendant, we will
```

```
 1   stand by and hold on.

 2            You may all be seated.

 3            MS. McCRAE:  Your Honor, we actually got a larger

 4   pair of pants for him.  These pants buckle, but they are pretty

 5   tight.

 6            THE COURT:  All right.  He can change later, but we

 7   can't delay this right now.

 8            As of right now, he is wearing civilian clothes,

 9   that's enough for now; but certainly later, you should change.

10            MR. SCHILLER:  Judge, I am sorry.

11            If I may, before we bring in the jurors, I know

12   earlier the Court had, because of the amount of room in the

13   courtroom, not allowed the defendant's family to be present;

14   but at this point, since some jurors may be eliminated, but we

15   really feel like the court should be open and made sure that

16   they have the ability to be here, even for jury selection and,

17   frankly, anyone else who wants to be here.  We want to, you

18   know, make sure that -- we do see that now there are a few open

19   chairs and so that they would be allowed in the courtroom.

20            THE COURT:  All right.  Your request is overruled.

21   This is going to be too difficult in terms of spacing.  We have

22   50 jurors which is much more than we normally order.  There is

23   no additional room in the gallery, and they are all essentially

24   very close together.  So thank you for your concerns.

25            Let's call in the jurors.
```

Monday, June 12, 2023.

 1            Mr. Schiller, if you want to point the Court to any
 2    binding authority --
 3            Sorry, Ms. Casissi, one more.
 4            -- that would require the Court to permit the
 5    defendant's mother in the courtroom at this time, given the
 6    space constraints that are unavoidable in the courtroom, I'm
 7    happy to listen.
 8            MR. SCHILLER:  Thank you, Judge.
 9            I would point the Court to a United States Supreme
10    Court case, *Presley versus Georgia* at 130 Supreme Court 721,
11    it's a 2010 case; and it does -- having just read it, it does
12    provide that there are some requirements that the Court should
13    find before it does that.  Spacing might be an issue, but the
14    Court looked at other possibilities that the trial court could
15    have considered.
16            I haven't had a chance to digest the case and read it
17    in full.  I could send it to the Court, if Your Honor wants to
18    read it, as well; but I think we should consider it perhaps.
19            THE COURT:  All right.  I have considered it; and as
20    I said, because of the spacing concerns, because of the need to
21    request a significantly higher number of jurors in this case
22    given the subject matter, and because the gallery is full at
23    this point along with the juror box, the Court's ruling will
24    remain, and Mr. Spearman's mother is free to join us once the
25    jury selection process has concluded and/or there is truly

```
 1   enough room in the courtroom to make that possible.  But at
 2   this point, no juror has been excused.
 3           So thank you all, let's call in the jurors.
 4           MR. BERRY:  Judge, if I can just put on the record --
 5           THE COURT:  Quickly.
 6           MR. BERRY:  There are some open chairs in the
 7   courtroom.  We are talking -- we think it should be open to the
 8   public at large but --
 9           THE COURT:  All right.  The open chairs that you are
10   referring to are additional chairs that are outside of the
11   gallery.  They are chairs that are designed for law enforcement
12   purposes.  They are not public chairs, and so that is the
13   ruling.
14           Thank you for your objection, let's call in the
15   jurors.
16           All rise for the jurors.
17      (Venire panel entered the courtroom at 11:25 A.M.)
18           THE COURT:  All right.  Thank you, you may all be
19   seated.
20           Thank you, ladies and gentlemen for your continued
21   patience, as we go through this process.
22           What is going to happen now is I know all of you
23   filled out questionnaires this morning, when you arrived.  I'm
24   going to go through those questionnaires one by one as quickly
25   as possible, starting with Juror Number 1.
```

```
 1              Please stand, when you are asked to speak, and let's
 2    get started.
 3                              EXAMINATION
 4    BY THE COURT:
 5    Q   Good morning, sir, please tell me your juror number and
 6    name.
 7    A   Juror Number 1, Theodore Klember.
 8    Q   What do you do for work, sir?
 9    A   I work for Frito-Lay.
10    Q   And what do you do for Frito-Lay?
11    A   I'm a route sales representative.
12    Q   I'm sorry, you are trailing off a little bit with the
13    audio.
14    A   Route sales representative.
15    Q   Okay.
16    A   I sell chips to stores.
17    Q   Have you held any other jobs throughout your career?
18    A   Yes.
19    Q   What are those?
20    A   I worked at Publix Supermarkets and I have owned my own
21    pool business.
22    Q   Have you ever worked in law enforcement?
23    A   No.
24    Q   Do you have any close friends or family members who work in
25    law enforcement?
```

1   A    No.

2   Q    Have you ever served on a jury before?

3   A    No.

4   Q    Do you have any minor children?

5   A    No.

6   Q    All right.  Do you have any adult children, and if so, what

7   do they do for work?

8   A    I have a 21-year-old son and he goes to college.

9   Q    Okay.  Have you ever been involved in any court in a

10  criminal matter that concerned yourself, any member of your

11  family or a close friend, either as a defendant, a witness, or

12  a victim?

13  A    No.

14  Q    All right.  Is there anything in your background or

15  experiences, sir, that would impair or impede your ability to

16  be a fair and impartial juror in this case?

17  A    No.

18          THE COURT:  All right, thank you, you may be seated.

19                      EXAMINATION

20  BY THE COURT:

21  Q    Juror Number 2, I know we spoke previously.  Briefly, what

22  do you do for work, sir?

23  A    I spent the last 43 years as a marble and tile contractor

24  in the business; and I currently still have that business, but

25  I'm also a project manager for a builder up in Vero on the

```
 1   beach.
 2   Q    Have you ever worked in law enforcement, sir?
 3   A    No.
 4   Q    Do you have any close friends or family members who work in
 5   law enforcement?
 6   A    No.  I have friends, but you know.
 7   Q    And do any of those friendships -- would they impact your
 8   ability to weigh the evidence in this case objectively and
 9   fairly?
10   A    No.
11            THE COURT:  All right, that's all I have for now,
12   sir; thank you.
13            Actually, I'm sorry, if we could hand the microphone
14   back to Juror Number 2, I should ask --
15   BY THE COURT:
16   Q    -- have you ever served on a jury before?
17   A    No.
18   Q    Have you ever been involved in a criminal matter of any
19   kind either as a victim, witness, or defendant?
20   A    Other than traffic violations and, you know, having a car
21   stolen from me, no.
22   Q    Is there anything in your background or experience, sir,
23   that would impair or impede or make it difficult to be a fair
24   and impartial juror, if chosen to serve on this jury?
25   A    No.
```

```
 1              THE COURT:  All right, thank you, you may be seated.

 2                              EXAMINATION

 3   BY THE COURT:

 4   Q    Good morning, please tell me your name?

 5   A    Marvin Hurst.

 6   Q    Juror Number 3?

 7   A    Three.

 8   Q    What do you do for work, sir?

 9   A    I work for Palm Beach County, Department of Airport.

10   Q    Did you say Department of Airport?

11   A    Yes, ma'am.

12   Q    What do you do for that department?

13   A    Construction coordinator for the airports.

14   Q    Are you married?

15   A    Yes.

16   Q    What does your spouse do for work?

17   A    She works at an orthopedic office.

18   Q    Have you ever worked in law enforcement?

19   A    No.

20   Q    Have any close relatives or friends of yours ever worked in

21   law enforcement?

22   A    Yeah.  My stepson is a lieutenant in Palm Beach, and I have

23   a lot of friends who are sheriffs.

24   Q    We did discuss your stepson's employment previously.  Is

25   there anything about his employment or your various friends'
```

```
 1   employment in law enforcement that would affect your ability to

 2   be fair and impartial in this case, if chosen?

 3   A   No.

 4         THE COURT:  All right, you may be seated, sir.

 5                          EXAMINATION

 6   BY THE COURT:

 7   Q   Good morning, Juror Number 4, Ms. Moroldo.

 8         I understand from our earlier discussion that you are

 9   a pediatrician; is that correct?

10   A   Yes.  I work in inpatient pediatrics, Tradition.

11   Q   Are you married?

12   A   Yes.

13   Q   What does your spouse do for work?

14   A   He is an audio and visual engineer.

15         THE COURT:  All right, thank you, you may be seated.

16                          EXAMINATION

17   BY THE COURT:

18   Q   Good morning, please tell me your name and juror number.

19   A   Brenda Nolin, Number 5.

20   Q   What do you do for work, ma'am?

21   A   I'm retired, but I'm the treasurer and the transfer

22   director of our community.

23   Q   How long have you been doing that work?

24   A   As treasurer, about six years.

25   Q   And what did you do before that job?
```

```
 1  A    We lived in Vermont, and I was the distribution manager for

 2  Suburban Propane, a propane company.

 3  Q    Are you married?

 4  A    Yes.

 5  Q    What does your spouse do for work?

 6  A    He is the maintenance and groundskeeper where we live.

 7  Q    Have either of you ever worked in law enforcement?

 8  A    No.

 9  Q    Do you have any close friends or family members who work in

10  law enforcement?

11  A    A son-in-law is a U.S. Marshal.

12  Q    Is there anything about your son-in-law's employment with

13  the marshal service that would impact your ability to be fair

14  and impartial if chosen to serve on this jury?

15  A    I don't think so, no.

16  Q    And of course, I'm sure you can understand that the goal of

17  this process is to select a jury that can be fair and

18  impartial.  I think you said you didn't think you would have a

19  problem being fair and impartial.  Do you have any hesitation

20  in that regard, ma'am?

21  A    My son-in-law was on the sex offender squad, as you call

22  it, so that kind of gives me a little bit of hesitation.

23  Q    I think I indicated this previously; but of course, this

24  case must be judged solely on the evidence presented in this

25  courtroom related to this case only and no other case.  So
```

```
 1    knowing that, do you think you could uphold that oath, if
 2    chosen to serve as a juror?
 3    A    Yes.
 4              THE COURT:  All right, thank you, ma'am.  You may be
 5    seated.
 6                              EXAMINATION
 7    BY THE COURT:
 8    Q    Good morning, sir.
 9              I know you indicated earlier, Juror Number 6, that
10    you have some language difficulties.  Can you tell me a little
11    bit more about what you do for work?
12    A    Yeah.  I'm a welder.
13    Q    Can you describe at all any steps you have taken to study
14    the English language and anything else you wish to offer with
15    respect to your English knowledge?
16    A    I don't understand what you say.
17    Q    Okay.  Are you married, sir?
18    A    Yes.
19    Q    What does your spouse do for work?
20    A    She is a dental assistant.
21    Q    Have you had any trouble understanding what I have said
22    throughout these -- this morning?
23    A    No.
24    Q    So have you understood everything I have said?
25    A    A little bit.  I don't understand too much.  It's, you
```

```
 1   know, too hard for me.
 2           THE COURT:  Okay.  All right.  Thank you, sir; you
 3   may be seated.
 4                         EXAMINATION
 5   BY THE COURT:
 6   Q   Good morning, Juror Number 7.  Please tell me your name.
 7   A   Good morning.  My name is Ana Parano.
 8   Q   What do you do for work?
 9           This is Juror 7?
10   A   Yes, I'm a registered nurse.
11   Q   Did you say a research nurse?
12   A   Registered nurse.
13   Q   Oh, registered nurse, okay.
14           And how long have you been an RN?
15   A   For about three years.
16   Q   What did you do before that time?
17   A   I was a PCT, patient care technician.
18   Q   Have you held any other jobs outside of the medical field?
19   A   A long time ago, office, like customer service, accounts
20   payable.
21   Q   Are you married?
22   A   I am.
23   Q   What does your spouse do for work?
24   A   He is an RN as well.
25   Q   Have either you or your husband ever worked in law
```

1  enforcement?

2  A    No.

3  Q    Do you have any close friends or relatives who work in law

4  enforcement?

5  A    No.

6  Q    Have you ever served on a jury before?

7  A    No.

8  Q    Have you ever been involved in any criminal case either as

9  a victim, witness, or defendant?

10  A    Well, I was -- I had an adjudication withheld which is

11  sealed.

12  Q    If you would prefer to discuss this in private, that's

13  fine; but otherwise, my question is:  Can you briefly describe

14  the nature of that withheld adjudication?

15  A    Like what happened?

16  Q    Yes.  But again, if you prefer to speak in private, that's

17  perfectly acceptable.

18  A    Yeah, I will do it privately.

19  Q    Okay.  All right.  We will come back to you later then.

20  Thank you.

21                        <u>EXAMINATION</u>

22  BY THE COURT:

23  Q    Juror number -- we got mixed up with the seating a little

24  bit.  We will skip over 16, who is seated in the jury box, and

25  go to the back row for Juror Number 8.

```
 1              Good morning, sir.  Please tell me your name and
 2    juror number.
 3    A   Yes, ma'am.  Tyler Simpson is the name, number 8; and yes.
 4    Q   Great, thank you.
 5              What do you do for work, sir?
 6    A   I own a men's clothing store.
 7    Q   Have you held any other jobs outside of fashion and retail?
 8    A   Yes, ma'am.  I was a golf professional.
 9    Q   Have you ever worked in law enforcement?
10    A   No, ma'am?
11    Q   Are you married?
12    A   Yes, ma'am.
13    Q   What does your spouse do for work?
14    A   She is a paralegal.
15    Q   Has she ever worked in law enforcement?
16    A   No, ma'am.
17    Q   Do you have any close friends or relatives who work in law
18    enforcement?
19    A   I have a brother-in-law who is a sergeant in the sheriff's
20    office in Vero Beach, and some friends in the sheriff's office
21    as well.
22    Q   Is there anything about your friendships with those
23    individuals or your relationship with your I think you said
24    brother --
25    A   In-law.
```

```
1   Q    -- in-law, okay, that would affect your ability to be fair

2   and impartial, if chosen to serve on this jury?

3   A    No, ma'am.

4   Q    Okay.  Have you ever served on a jury before?

5   A    No, ma'am.

6   Q    Have you ever been involved in any criminal proceeding,

7   either as a victim, witness, or defendant?

8   A    No, ma'am.

9   Q    Is there anything in your background or experience, sir,

10  that would affect your ability to be fair and impartial, if

11  chosen to serve on this jury?

12  A    No, ma'am.

13            THE COURT:  All right.  Thank you, you may be seated.

14            PROSPECTIVE JUROR:  Number 9, Linda Marciano.

15                          EXAMINATION

16  BY THE COURT:

17  Q    Good morning, again, Ms. Marciano.

18            I think we spoke previously and you mentioned you had

19  done some IT work.  Are you currently employed?

20  A    No.

21  Q    All right.  Have you ever worked in law enforcement?

22  A    No.

23            THE COURT:  We may have a private sidebar, if

24  necessary, but for now, that's all of the questioning that I

25  have.  Thank you, Juror Number 9.
```

Monday, June 12, 2023.

<u>EXAMINATION</u>

BY THE COURT:

Q    Let's turn to Juror 10.

A    Good morning, ma'am; Edward Leonor.

Q    Thank you.

      What do you do for work, sir?

A    I do construction.

Q    How long have you been doing construction?

A    Been doing that for -- I have been in the kitchen and bathroom remodels for like 23 years.

Q    Have you held any other jobs outside of the construction field?

A    No, same thing.

Q    Are you married?

A    Yes.

Q    What does your spouse do for work?

A    Stay home.

Q    Have you ever worked in law enforcement?

A    No, ma'am.

Q    Has your wife ever worked in law enforcement?

A    No.

Q    What about any friends or family members?

A    Lots of friends, yes.

Q    Is there anything about your friendships with those individuals -- I know you mentioned there are numerous -- that

1    would affect your ability to be fair and impartial if chosen to

2    serve on this jury?

3    A    No, ma'am.

4    Q    Is there anything else in your background or experiences,

5    sir, that would impact or make it difficult for you to be fair

6    and impartial?

7    A    No, ma'am.

8              THE COURT:  Thank you, you may be seated, Mr. Leonor.

9                            EXAMINATION

10   BY THE COURT:

11   Q    Good morning, Mr. Shoudt, you are Juror Number 11; is that

12   correct?

13   A    Correct.

14   Q    All right.  Thank you.

15             What do you do for work, sir?

16   A    I'm a truck driver.

17   Q    How long have you been a truck driver?

18   A    Two-and-a-half decades.

19   Q    Wow, okay.

20             Have you ever served on a jury before?

21   A    Yes, I have.

22   Q    And when was that?

23   A    1992.

24   Q    Do you know if that was a federal or a state case?

25   A    It was a state case.

1  Q   Do you know if it was a civil or criminal matter?

2  A   Criminal.

3  Q   And do you know if you were the foreperson of that jury?

4  A   No, I was not.

5           THE COURT:  Okay.  All right.  We may turn back to

6  you later, if necessary, Mr. Shoudt.  Thank you; you may be

7  seated.

8           Let's turn to Juror Number 12.

9                        EXAMINATION

10 BY THE COURT:

11 Q   Good morning, Ms. Biandis; is that correct?

12 A   Korie Biandis.

13 Q   Biandis, excuse me.

14          What do you do for work, ma'am?

15 A   I work for L3 Harris, a defense contractor in aerospace and

16 airborne.

17 Q   How do you spell that?

18 A   L, the number, three H-A-R-R-I-S.

19 Q   Great, thank you.

20          All right.  What do you do for that contractor?

21 A   I'm a graphic designer.

22 Q   Are you married?

23 A   No.

24 Q   Have you ever served on a jury before?

25 A   No.

```
 1    Q    Have you ever been involved in any criminal cases or

 2    proceedings involving yourself, any member of your family, or a

 3    close friend?

 4    A    No, ma'am.

 5              THE COURT:  All right.  Thank you very much.  We may

 6    come back to you later, if necessary.

 7              Let's turn to Juror 13.

 8                            EXAMINATION

 9    BY THE COURT:

10    Q    Good morning, sir.

11    A    Good morning.

12    Q    Please tell me your name and your profession.

13    A    Daniel Gonzalez-Quevedo, business owner, attorney, and real

14    estate developer.

15    Q    Are you practicing law at the moment, sir?

16    A    I do every once in a while.

17    Q    What type of law?

18    A    I do a lot of different things.  I have done civil cases, I

19    have done some criminal cases.

20    Q    Do you practice in the State of Florida or elsewhere?

21    A    State of Florida.

22    Q    Okay.  When you say you're a business owner, what kind of

23    business do you own?

24    A    Electrical wholesale business.  It is a family business

25    down in Miami.
```

```
1    Q    Have you held any other jobs outside of those fields you

2    have indicated, the electrical business, the attorney, and the

3    real estate development?

4    A    No, I have not, Your Honor.

5    Q    Okay.  Are you married?

6    A    On paper, yes.

7    Q    What does your on-paper spouse do for work?

8    A    Model.

9    Q    Okay.  Have you ever served on a jury before?

10   A    No, I have not, Your Honor.

11   Q    Have you ever been involved, outside of your work as an

12   attorney, in a criminal case either as a defendant, a victim,

13   or a witness?

14   A    No, I have not personally.

15   Q    Is there anything in your background or experiences, sir,

16   that would impact your ability to be fair and impartial if

17   chosen to serve as a juror in this case?

18   A    No, Your Honor.

19         THE COURT:  All right, thank you very much, Juror 13;

20   you may be seated.

21                        EXAMINATION

22   BY THE COURT:

23   Q    Good morning, sir.  Please remind me of your name.

24   A    David Hall.

25   Q    Okay.  What do you do for work at the moment?
```

```
 1  A   I work for Treasure Coast Hospice as the director of
 2  operations.
 3  Q   Have you ever worked in law enforcement?
 4  A   No.
 5  Q   Do you have any friends or close --
 6  A   I have an uncle who is retired from the Boston Police
 7  Department, my uncle.
 8  Q   Sometimes, it is tricky when we talk over one another, so
 9  let's try to help out our court reporter.
10          You said you have an uncle, I think, in law
11  enforcement?
12  A   He is retired.
13  Q   Okay.  Is there anything about your uncle's former
14  employment that would affect your ability to be fair and
15  impartial?
16  A   No.
17  Q   Do you have any other friends or relatives in law
18  enforcement?
19  A   No.
20  Q   Are you married?
21  A   No.
22          THE COURT:  Okay.  That's all for now.  Thank you,
23  sir.
24          PROSPECTIVE JUROR:  Juror Number 15, Jason Holden,
25  I'm a high school physical education teacher.
```

```
 1              THE COURT:  Thank you, Mr. Holden.

 2                        EXAMINATION

 3  BY THE COURT:

 4  Q    Have you held any other jobs outside of the PE teaching

 5  field?

 6  A    No, ma'am, just high school/college, you know, bag boy,

 7  that type of thing.

 8  Q    Have you ever worked in law enforcement?

 9  A    No.

10  Q    Are you married?

11  A    Yes.

12  Q    What does your spouse do for work?

13  A    My wife is an elementary teacher.

14  Q    Has she ever worked in law enforcement?

15  A    No.

16  Q    Do you have any other close friends or relatives who work

17  in law enforcement?

18  A    I have one close friend who is a sheriff's deputy.

19  Q    Is there anything about your friendship with that person

20  that would impact your ability to be fair and impartial?

21  A    No, Your Honor.

22  Q    Now have you ever served on a jury before?

23  A    Never.

24  Q    Have you ever been involved in any criminal cases either as

25  a defendant, victim, or witness?
```

Monday, June 12, 2023.

```
 1    A    Never.

 2    Q    What about any members of your family?

 3    A    No.

 4    Q    Is there anything in your background or experiences, sir,

 5    that would impact or affect your ability to be fair and

 6    impartial, if chosen to serve?

 7    A    No.

 8              THE COURT:  All right, thank you, Mr. Holden; you may

 9    be seated.  Just a reminder, you said Juror 15; is that

10    correct?

11              PROSPECTIVE JUROR:  Yes.

12              THE COURT:  Okay.  All right, we are now at Juror 16.

13                            EXAMINATION

14    BY THE COURT:

15    Q    Good morning, sir.

16    A    Good morning.

17    Q    Please tell me your name.

18    A    Bobby Byrd, B-Y-R-D.

19    Q    Thank you.

20              What do you do for work?

21    A    Currently, I work for the City of Port St. Lucie,

22    construction inspector.

23    Q    How long have you been doing that work, sir?

24    A    Six years.

25    Q    What did you do before that job?
```

1  A   I retired from the Martin County Engineering Department as

2  a project manager.

3  Q   Have you ever worked in law enforcement?

4  A   No.

5  Q   Are you married?

6  A   Yes.

7  Q   What does your spouse do for work?

8  A   She works for the Department of Motor Vehicles.

9  Q   What does she do for the Department of Motor Vehicles?

10  A   I think she is a clerk.

11  Q   Has she ever worked in law enforcement, to your knowledge?

12  A   No.

13  Q   Do you have any other close friends or relatives who work

14  in law enforcement?

15  A   I have a daughter who is an FBI agent and son-in-law who is

16  a U.S. Marshal, and plenty of friends that are in law

17  enforcement.

18  Q   You said "plenty of friends in law enforcement," okay.  Is

19  there anything, sir, about your daughter or your son-in-law's

20  work in law enforcement or any of the other friends you have

21  mentioned who work in law enforcement that would impact your

22  ability to weigh the evidence in this case objectively, based

23  on the law as it is instructed?

24  A   No.

25  Q   Have you ever served on a jury before?

```
 1   A    No.
 2   Q    Have you ever been involved as a victim, witness, or
 3   defendant in a criminal case?
 4   A    No.
 5   Q    And finally, anything else in your background or
 6   experiences, sir, that would affect your ability to be fair and
 7   impartial?
 8   A    No.
 9            THE COURT:  Thank you, Mr. Byrd; you may be seated.
10            We are now at Juror 17.
11            PROSPECTIVE JUROR:  My name is William S. Curren.
12                           EXAMINATION
13   BY THE COURT:
14   Q    Thank you, sir.
15   A    I'm an electrical contractor, beef ranch, dairy operator in
16   Okeechobee.
17   Q    I didn't catch all of what you said.  I think you said
18   electrical contractor and then I missed the rest.  Can you tell
19   me --
20   A    Dairy farmer, beef producer, pilot, golfer, I'll admit it
21   so...
22   Q    Sounds like you do a lot of things that are interesting,
23   thank you, sir.
24            All right.  Have you ever worked in law enforcement?
25   A    No, ma'am.
```

```
 1   Q   Okay.  Are you married?

 2   A   No, ma'am.

 3   Q   Have you ever served on a jury before?

 4   A   No, ma'am.

 5   Q   Have you ever been involved in a criminal case --

 6   A   No, ma'am.

 7   Q   -- as a victim, witness, or defendant?

 8   A   No, ma'am.

 9   Q   Okay.  Let's see here.

10          All right.  Is there anything in your background or

11   experiences, sir, that would affect your ability to be fair or

12   impartial, if chosen to serve?

13   A   No, Your Honor.

14          THE COURT:  Thank you very much, Mr. Curren; you may

15   be seated.

16                            EXAMINATION

17   BY THE COURT:

18   Q   Good morning.

19   A   Good morning.

20   Q   Please tell me your name and your juror number.

21   A   Donna Carrillo, number 18.

22   Q   What do you do for work?

23   A   I'm retired.

24   Q   And what did you do before you retired?

25   A   I was a medical secretary for Kaiser Permanente, OR
```

```
 1   secretary, unit secretary.
 2   Q   Okay.  Have you ever worked in law enforcement?
 3   A   No.
 4   Q   Are you married?
 5   A   Yes.
 6   Q   What does your spouse do for work?
 7   A   He is retired plumber.
 8   Q   Okay.  Has he ever worked in law enforcement?
 9   A   No.
10   Q   Do you have any other close friends or relatives who work
11   in law enforcement?
12   A   Not currently.  My son-in-law was CHP in California over 20
13   years ago.
14   Q   Is there anything about your son-in-law's prior employment
15   for the highway patrol many years ago that would affect your
16   ability to be fair and impartial, ma'am?
17   A   No.
18   Q   Have you ever served on a jury?
19   A   Yes.
20   Q   And when was that, if you remember?
21   A   Between 20, 25 years ago, a murder case.
22   Q   Do you remember if you were the foreperson?
23   A   No, I was not.
24   Q   Okay.  And do you remember if the jury reached a verdict
25   without telling me what it was?
```

```
1    A    We did.

2    Q    Okay.  Anything in your backgrounder or experiences, ma'am,

3    that would affect your ability to be fair and impartial?

4    A    No.

5             THE COURT:  All right, thank you.  You may be seated.

6             Let's turn now to Juror 19.

7                            EXAMINATION

8    BY THE COURT:

9    Q    Mr. Lawrence Tatum.

10   A    Hi, good morning; my name is Lawrence Tatum, Juror

11   Number 19.

12   Q    What do you do for work, sir?

13   A    I'm a heavy equipment operator.

14   Q    How long have you been doing that?

15   A    About 20 years.

16   Q    What did you do professionally before that job, if

17   anything?

18   A    Construction.

19   Q    Okay.  Have you ever worked in law enforcement?

20   A    No, ma'am.

21   Q    Are you married?

22   A    Yes, ma'am.

23   Q    What does your spouse do for work?

24   A    She owns a cleaning business.

25   Q    Okay.  Has she ever worked in law enforcement?
```

```
 1   A    No, ma'am.
 2   Q    Do you have any close friends or relatives who work in law
 3   enforcement?
 4   A    Yes, ma'am.
 5   Q    Can you describe a little bit about those relationships?
 6   A    Son-in-law, for the Martin County Sheriff's Office
 7   Department.
 8   Q    Any others?
 9   A    Good friends with the sheriff's department.
10   Q    Is there anything about your experience or your friendships
11   or relationships with those folks that would impact your
12   ability to be fair and impartial, sir?
13   A    No, ma'am.
14   Q    Have you ever served on a jury before?
15   A    No, ma'am.
16   Q    Have you ever been involved in a criminal case as a victim,
17   witness, or defendant?
18   A    Yes, ma'am.
19   Q    And if you prefer to speak in private, that's fine.
20   A    I would.
21             THE COURT:  Okay, then we will make that happen.
22             Thank you, Mr. Tatum.  I'll jot that down.
23             You may be seated.
24             PROSPECTIVE JUROR:  Thank you.
25             THE COURT:  All right, we are at Juror 20.
```

Monday, June 12, 2023.

<u>EXAMINATION</u>

BY THE COURT:

1

2

3    Q    Good morning.

4    A    My name is Maribel Debinion.  I'm Juror Number 20.

5    Q    Good morning, Ms. Debinion.  What do you do for work?

6    A    I'm an import specialist for U.S. Customs and Border

7    Protection, duty station Miami.

8    Q    How long have you worked for CBP?

9    A    It's going to go on ten years next year, so nine currently.

10   Q    What did you do before joining that agency?

11   A    I was with Social Security Administration for five years.

12   Q    And what were you doing for the Social Security

13   Administration?

14   A    I worked in the hearings office as a technician.  I forgot

15   the name, the title.

16   Q    That's okay.

17   A    I worked for judges, like I was a judge's assistant.

18   Q    Got you.

19        Are you married?

20   A    I am.

21   Q    And what does your spouse do for work?

22   A    He is a district distribution manager for Ipex Company.  It

23   has to do with PVC piping in Fort Pierce.

24   Q    Has he ever worked in law enforcement?

25   A    He is a veteran.  He was in the army for 12 years.

1  Q   Now, is there anything about your current employment for

2  CBP or your prior work for the Social Security Administration

3  that would in any way impact your ability to be fair and

4  impartial, if chosen to serve as a juror?

5  A   No.

6  Q   Is there anything about your husband's status as a veteran

7  or his prior work in the military that would impact your

8  ability to be fair or impartial?

9  A   No.

10  Q   Have you ever served on a jury before?

11  A   I have.

12  Q   And when was that, if you remember?

13  A   I want to say early '90s.  It was a state civil.  It was an

14  accident -- car accident, and I was not the foreperson.

15  Q   Do you know if the jury reached a verdict?

16  A   We did.

17  Q   Okay.  Have you ever been involved in a criminal case as a

18  victim, witness, or defendant?

19  A   No, ma'am.

20  Q   And then I should specify, have you ever had to testify in

21  your capacity as a CBP officer?

22  A   I have not.  I am not uniformed.

23  Q   Okay.  Is there anything in your background or experiences,

24  ma'am, that would affect your ability to be fair and impartial?

25  A   No, ma'am.

```
 1                THE COURT:  Thank you, you may be seated.
 2                          EXAMINATION
 3  BY THE COURT:
 4  Q    Good morning.  We are at Juror 21, Mr. Winter.
 5  A    Vincent Winter, Juror 21.
 6  Q    Thank you, sir.
 7                What do you do for work?
 8  A    Retired.
 9  Q    And prior to retirement, what did you do?
10  A    Design and sales for kitchen cabinetry, retail and
11  wholesale.
12  Q    Have you held any other jobs besides that kitchen retail/
13  wholesale work?
14  A    Yes.  I have been involved in commercial construction as a
15  project manager and business development manager.  And prior to
16  that, I was involved in residential construction as a home
17  builder.
18  Q    Have you ever worked in law enforcement?
19  A    No, ma'am.
20  Q    Are you married?
21  A    Yes.
22  Q    What does your spouse do?
23  A    Retired.  She was a partner in the kitchen cabinetry
24  business; and prior to that, she was a grant writer and a fund
25  raiser for nonprofits.
```

1   Q    Do you have any close friends or relatives who work in law

2   enforcement?

3   A    I do not.

4   Q    Have you ever served on a jury before?

5   A    No.

6   Q    Have you ever been involved in a criminal case as a

7   defendant, victim, or witness?

8   A    No, I haven't.

9   Q    All right.  Is there anything in your background or

10  experiences, sir, that would impact your ability to be fair and

11  impartial weighing the evidence in this case objectively and

12  fairly to both sides?

13  A    No.

14          THE COURT:  All right.  Thank you very much,

15  Mr. Winter; you may be seated.

16          PROSPECTIVE JUROR:  You're welcome.

17                          EXAMINATION

18  BY THE COURT:

19  Q    Juror 22, hello.

20  A    Hi, I'm Sharon Ardito, number 22.

21  Q    Thank you, Sharon or Ms. Ardito.

22          What do you do for work?

23  A    I'm a retired business owner of 25 years, and I'm also an

24  election worker in Martin County.  So whenever there is an

25  election, I work.

```
 1  Q   And I think you said you are a retired business owner.  If
 2  you could just speak a little bit slowly for the benefit of our
 3  court reporter, we would appreciate it.
 4            What sort of business was that?
 5  A   My husband and I owned an internet business where we sold
 6  goodies bags and novelties for children's parties.
 7  Q   And how long ago did you work in that business?
 8  A   We retired last July, so less than a year ago, we retired.
 9  Q   Have you ever worked in law enforcement?
10  A   No.
11  Q   What about your husband?
12  A   No.
13  Q   Do you have any close friends or relatives who work in law
14  enforcement?
15  A   No.
16  Q   Have you ever served on a jury before?
17  A   About 35 years ago, I was on a civil state case.  I don't
18  even remember what it was, but it settled before deliberations.
19  Q   All right.  Have you ever been involved in a criminal case
20  as a victim --
21  A   No.
22  Q   -- witness or defendant?
23  A   No.
24  Q   Anything in your background or experiences, ma'am, that
25  would impede or affect your ability to be fair and impartial?
```

```
 1   A    No.

 2            THE COURT:  All right.  Thank you, you may be seated,

 3   Ms. Ardito.

 4                          EXAMINATION

 5   BY THE COURT:

 6   Q    All right.  Good morning.  Please tell me your juror number

 7   and name.

 8   A    James Sopher, Juror 23.

 9   Q    Thank you.

10            What do you do for work, sir?

11   A    Construction manager for a real estate developer.

12   Q    How long have you been engaged in that work?

13   A    With this company, about almost ten years.  Prior to that,

14   about 16 as a general contractor, project manager.

15   Q    Have you ever worked outside of the construction field?

16   A    Prior to college.

17   Q    Doing what sort of work?

18   A    Various things related to construction, and then other just

19   side jobs, painting, handyman, surveyor, all sorts of

20   restaurants.

21   Q    Understood.

22            Are you married, sir?

23   A    Yes.

24   Q    What does your spouse do for work?

25   A    Aesthetician.
```

1    Q    All right.  Has she ever worked in law enforcement?

2    A    No.

3    Q    Do you have any close friends or relatives who work in law

4    enforcement?

5    A    I do.

6    Q    And is there anything about your friendships or association

7    with those individuals that would impact your ability to be

8    fair and impartial in this case?

9    A    No.

10   Q    Anything else, sir, that we haven't already discussed that

11   would impact your ability to be fair and impartial, if chosen

12   to serve as a juror?

13   A    No.

14            THE COURT:  All right, thank you; you may be seated.

15            All right.  We are now at Juror 24.

16                         EXAMINATION

17   Q    Sir, please tell me your name and what you do for work.

18   A    I'm Conrad Stegner, Juror 24, and I'm retired.

19   Q    And prior to retirement, what did you do?

20   A    I worked with mainframe computers for a bank.

21   Q    Can you describe a little bit more what you mean by working

22   with mainframe computers?

23   A    I wrote COBOL code and assembly language code.

24   Q    Did you go to school for any specialized computer training?

25   A    I majored in computer science, but we are talking about

1    decades ago.

2    Q    Would you consider yourself an expert or something close to

3    that in the field of computers?

4    A    Mainframe computers.  I know nothing about web development

5    which is why I didn't speak up when you were talking about web

6    development.

7    Q    Okay.  Have you ever worked in law enforcement?

8    A    No.

9    Q    Are you married?

10   A    Yes.

11   Q    What does your spouse do for work?

12   A    She is also retired.  She worked in customer service for a

13   large bank also.

14   Q    Have either of you ever worked in law enforcement?

15   A    No.

16   Q    Any friends or family that has worked in law enforcement?

17   A    My brother-in-law is retired from the Detroit Police

18   Department.

19   Q    Anything about his prior work that would impact your

20   ability to be fair and impartial, sir?

21   A    No, ma'am.

22   Q    Have you ever served on a jury before?

23   A    Yes, I have, around 2007.  It was a civil case, a state

24   case, in Virginia; and yes, I was the foreperson.

25   Q    Okay.  Without telling me what the verdict was, do you know

```
 1   if the jury reached a verdict?

 2   A   Yes, we did.

 3   Q   Anything in your background or experiences, sir, that would

 4   affect your ability to be fair and impartial, if chosen to

 5   serve as a juror in this case?

 6   A   Not that I can think of.

 7             THE COURT:  Thank you, sir; you may be seated.

 8                          EXAMINATION

 9   BY THE COURT:

10   Q   Please tell me your juror and name.

11   A   Number 25, Sam Crawford.

12   Q   What do you do for work, Mr. Crawford?

13   A   I work in the conservation field, primarily herbicide

14   application.

15   Q   Can you tell me a little bit more in practical terms what

16   you do day-to-day?

17   A   I work in natural areas, and I control invasive plants.

18   Q   Okay.  Have you held any other jobs outside of that field?

19   A   Many:  Retail sales, wildlife rehabilitation, construction,

20   tree trimming, probably restaurants, probably quite a few

21   others I'm missing out there.

22   Q   Okay.  Any work in law enforcement?

23   A   No.

24   Q   Are you married?

25   A   No.
```

1    Q    Do you have any close friends or relatives who work in law

2    enforcement?

3    A    Yes.  My grandfather was a police officer and my dad is a

4    retired police officer and I have an uncle that is retired.

5    Q    Anything about those family members working in law

6    enforcement, either presently or in the past, that would impact

7    your ability, sir, to be fair and impartial?

8    A    No.

9    Q    All right.  Have you served on a jury before?

10   A    No.

11   Q    Have you ever been involved in a criminal case as a victim,

12   witness, or defendant?

13   A    Yes.

14   Q    And again, the offer stands for everybody.  If you wish to

15   discuss in private, please let me know; otherwise, briefly

16   state the nature of that case and your role.

17   A    I have three cases where I was a defendant, two were drug

18   possession cases and one was a like a disorderly conduct or

19   something of the like.

20   Q    Are those cases resolved or are they still pending?

21   A    Oh, resolved years and years ago.

22   Q    How long ago, if you recall?

23   A    Mid '90s for the drug cases, and probably 2010 or so for

24   the disorderly.

25   Q    Okay.  All right.  Anything, sir, about your experience

```
 1    interacting with the criminal justice system that would impact
 2    your ability to be fair and impartial if chosen to serve as a
 3    juror in this case?
 4    A    Nope.
 5    Q    Anything else in your background or experiences that would
 6    impact your ability to be fair and impartial?
 7    A    Nothing.
 8              THE COURT:  Okay.  Thank you, Mr. Crawford, you may
 9    be seated.
10                            EXAMINATION
11    BY THE COURT:
12    Q    Good morning.  Are you Ms. Register, Juror 26?
13    A    Yes, Ashlee Register.
14    Q    All right, excellent.  What do you do for work, if
15    anything?
16    A    I'm a registered nurse.
17    Q    Are you currently employed as a registered nurse?
18    A    Yes.
19    Q    Have you ever worked in law enforcement?
20    A    No.
21    Q    And are you married?
22    A    Yes.
23    Q    What does your spouse do for work?
24    A    He is an owner broker of a mortgage company.
25              THE COURT:  Got it.  All right.  That's all I have,
```

1    thank you, ma'am.

2                           EXAMINATION

3    BY THE COURT:

4    Q    Good morning, Juror 27.  Please tell me your name.

5    A    Owen A. Dennis.

6    Q    What do you do for work, sir?

7    A    I'm semiretired, project administrator.

8    Q    And what sort of projects do you work or did you work on?

9    A    Water distribution.

10   Q    Was that for a municipality or for a private company?

11   A    Municipality.

12   Q    Which one is that?

13   A    Fort Pierce Utilities.

14   Q    Have you held any other jobs, sir?

15   A    Quite a few, carpentry and currently part-time stocking

16   clerk.

17   Q    Is that at a supermarket?

18   A    Yes.

19   Q    Okay.  Are you married?

20   A    Yes, ma'am.

21   Q    What does your spouse do for work?

22   A    CNA.

23   Q    Has she ever worked in law enforcement?

24   A    No, ma'am.

25   Q    Have you ever worked in law enforcement?

```
 1    A    No, ma'am.

 2    Q    What about any members of your family or close friends?

 3    A    None.

 4    Q    Have you ever been involved in a criminal case as a victim,

 5    witness or defendant?

 6    A    No, ma'am.

 7    Q    Have you ever served on a jury?

 8    A    No, ma'am.

 9    Q    Anything in your background or experiences, sir, that would

10    impact your ability to be fair and impartial, if chosen to

11    serve as a juror?

12    A    No, ma'am.

13            THE COURT:  Thank you.  You may be seated,

14    Mr. Dennis.

15            PROSPECTIVE JUROR:  Juror 28, Terri Dalman.

16                        EXAMINATION

17    BY THE COURT:

18    Q    Good morning, Ms. Dalman.  Briefly, what do you do for

19    work?

20    A    I'm an assistant manager for PPG Paints in Stuart.  It's a

21    paint store.

22    Q    Have you ever worked in law enforcement?

23    A    No.

24    Q    All right.

25    A    I have done paint 23 years.
```

```
 1   Q   It must come handy when you are doing home projects, I bet.

 2   A   It does.

 3           THE COURT:  Thank you very much.  You may be seated,

 4   we will come back to you, if necessary.

 5                          EXAMINATION

 6   BY THE COURT:

 7   Q   Juror Number 29, please tell me your name again, ma'am.

 8   A   My name is Lamour McKoy-Josephs.

 9   Q   Thank you.

10           What do you do for work?

11   A   I work at Cleveland Clinic Hospital.  I'm a patient care

12   technician.

13   Q   How long have you been doing that?

14   A   I have been at Cleveland Clinic for five years.  I have

15   been doing this over 25 years.

16   Q   Okay.  Do you have any friends who work in law enforcement

17   or family members?

18   A   My ex-husband is retired Martin County sheriff.

19   Q   Anything about your ex-husband's former work that would

20   impact your ability to be fair and impartial?

21   A   No, Your Honor.

22           THE COURT:  Okay.  That's all I have at the moment.

23   We may come back to you.  Thank you.

24   ///

25   ///
```

```
 1                             EXAMINATION

 2    BY THE COURT:

 3    Q    I guess it's now afternoon.  Good afternoon, Ms. Schroeder.

 4              I know you mentioned earlier that you take care of

 5    your grandchildren.  Are you currently employed?

 6    A    No, retired.

 7    Q    Okay.  And what did you do before retirement?

 8    A    I was a banker for a large bank.

 9    Q    What sort of work did you do in terms of banking work

10    specifically?

11    A    I was a commercial lender and a private banker.

12    Q    Okay.  Have you ever worked in law enforcement?

13    A    No.

14    Q    What about any members of your family or close friends?

15    A    No.

16              THE COURT:  All right.  That's all I have for now.

17    Thank you.

18              All right.  We are at Juror 31

19                             EXAMINATION

20    BY THE COURT:

21    Q    Good afternoon, sir.  Please tell me your name and what you

22    do for work?

23    A    Yes.  My name is Gregory Rogolino, I'm retired from Publix

24    Supermarket -- store manager -- after 38 years.

25    Q    It's a long career.  So I will ask, nevertheless:  Did you
```

Monday, June 12, 2023.

```
 1    have any other jobs prior to that one?

 2    A    No, ma'am.

 3    Q    Okay.  I assume you worked your way up at Publix?

 4    A    I did.

 5    Q    All right.  Have you ever worked in law enforcement?

 6    A    No, ma'am.

 7    Q    Are you married?

 8    A    Yes.

 9    Q    What does your spouse do for work?

10    A    My wife is retired from St. Lucie County Schools as a

11    substitute teacher.

12    Q    All right.  Has she ever worked in law enforcement?

13    A    No, ma'am.

14    Q    Okay.  All right.  Do you have any other friends or

15    relatives who have worked in law enforcement or who currently

16    do so?

17    A    No, ma'am.

18    Q    Have you ever been involved in a criminal case, either as

19    victim, defendant or witness?

20    A    No, ma'am.

21    Q    All right.  Have you ever served on a jury?

22    A    Yes, ma'am, twice.

23    Q    All right.  So without telling me whether those juries

24    reached verdicts, what I would like to know is roughly, when

25    that jury service took place, whether it was civil or criminal
```

```
 1    and whether you were the foreperson.

 2    A    Okay.  About 25 years ago, I served on a civil case, I was

 3    not the foreperson; about less than ten years ago, I served on

 4    a criminal case and I wasn't the foreperson.

 5    Q    Okay.  All right.  And are you aware whether those juries

 6    reached verdicts?

 7    A    Yes, in both cases.

 8    Q    Okay.  All right.  Anything else in your background or

 9    experiences, sir, that would impact your ability to be fair and

10    impartial, if chosen to serve?

11    A    No, ma'am.

12              THE COURT:  Thank you, Mr. Rogolino.  Please be

13    seated.

14              We are now at Juror 32.

15                           EXAMINATION

16    BY THE COURT:

17    Q    Thank you.  Good afternoon, what do you do for work, sir?

18    A    I am a chief meteorologist at the local NBC and Fox

19    station, Steve Weagle.

20    Q    So can you predict the weather right now?

21    A    I would say partly cloudy, hot.

22    Q    Thank you.

23              How long have you been a meteorologist?

24    A    Thirty years.

25    Q    Any jobs prior to that one?
```

Monday, June 12, 2023.

1   A   No.

2   Q   Okay.  Have you ever worked in law enforcement?

3   A   No.

4   Q   Are you married?

5   A   Yes.

6   Q   And what does your spouse do for work?

7   A   She tells me she is retired.  She has a background in

8   radiology and MRI.

9   Q   Okay.  Is she currently employed?

10  A   No.

11  Q   Has she ever worked in law enforcement?

12  A   No.

13  Q   Do you have any friends or relatives, close friends or

14  relatives who work in law enforcement?

15  A   I have a couple friends, yes.

16  Q   Do they work locally?  Tell me a little about that.

17  A   Martin County sheriff, he just retired, moved to Asheville,

18  probably the closest law enforcement friend I have.

19  Q   Anything about your friendships with those individuals that

20  would impact your ability to be fair and impartial, sir?

21  A   No.

22  Q   Have you ever been involved in a criminal case either as

23  victim, witness, or defendant?

24  A   No.

25  Q   All right.  Have you ever served on a jury before?

1    A    No.

2    Q    Anything in your background or experiences, sir, that would

3    impact your ability to be fair and impartial?

4    A    No.

5              THE COURT:  All right.  Thank you very much.  You may

6    hand the mic over to Juror Number 33, I believe it is.

7                            EXAMINATION

8    BY THE COURT:

9    Q    Please remind me of your name, ma'am.

10   A    Barbara Galloway.

11   Q    And I believe you said you are a public defender for the

12   19th Judicial Circuit; is that correct?

13   A    No, ma'am.  I work for the public defender's office.  I

14   work in client services.

15   Q    Okay.  Thank you for that clarification.

16             How long have you been working for that office?

17   A    About ten years.

18   Q    Okay.  Are you an attorney, ma'am?

19   A    No.

20   Q    Okay.

21             THE COURT:  All right.  That's all I have for now,

22   thank you.  We may come back to you.

23             All right, we are at Juror 34.all right.

24             PROSPECTIVE JUROR:  Paul Logsdon.

25   ///

```
 1                          EXAMINATION

 2   BY THE COURT:

 3   Q    Thank you, Mr. Logsdon.

 4           Please tell me what you do for work?

 5   A    Truck driver, dock worker.  Truck driver, dock worker.

 6           THE COURT:  Sorry, one second.

 7           Ms. Galloway, is there a problem?

 8           PROSPECTIVE JUROR:  Restroom.

 9           THE COURT:  Oh, okay.  All right.

10           Well, then because of that, we will take a ten-minute

11   restroom break for all the jurors.  Please leave your paddles

12   where you have them.  Remember where you are seated and do not

13   discuss the case with any of your fellow jurors, all rise.

14      (Prospective jurors exited courtroom.)

15           THE COURT:  All right.  We are in brief recess until

16   12:25.

17           Ms. Casissi, if you could please try to gather the

18   jurors outside as quickly as we can, so we can get started.

19   Thank you.

20      (Recess was had at 12:15 P.M.; and the proceedings

21      Resumed at 12:29 P.M.)

22           THE COURT:  We are back on the record, please take

23   your seats.

24           All right.  There are two issues to discuss that have

25   come to my attention.  One is that I overlooked swearing in the
```

```
 1   panel before we got started which is obviously an issue so I
 2   want to hear any comments by the parties on that process.  We
 3   could obviously start all over again, I'm happy to do that,
 4   during the afternoon session.  There is also the possibility of
 5   questioning the panel as to whether any of their prior answers
 6   would be any different given the oath.
 7            With that, I'll turn it over to Mr. Schiller.
 8            MR. SCHILLER:  Judge, thank you.
 9            I have never had to deal with that issue, so I'm not
10   prepared to give the Court my legal opinion on that.  Not
11   having been able to do any research, I don't know if the Court
12   was able to find a case that directs us in one way or the
13   other.  It sounds like the Court may have found an appropriate
14   solution.  But I don't know how to answer that right now having
15   not done the research.
16            THE COURT:  No, and I don't have any particular
17   authority on the subject.
18            Anything from Mr. Berry?
19            MR. BERRY:  I'm in the same posture as Mr. Schiller.
20   I haven't dealt with that before, so I don't know.
21            THE COURT:  We can't hear you when you just trail
22   off.
23            MR. BERRY:  Sorry, Judge.
24            I'm the same posture as Mr. Schiller, I have not
25   dealt with that issue before, and we would need some time to
```

 1    research it.

 2              THE COURT:  All right.

 3              Well, then, given the absence of recommendations from

 4    the parties and in service of trying to get this right, we are,

 5    unfortunately, going to have to start at the outset.  Again,

 6    that is on me, so my apologies.

 7              It is now 12:30.  We will call them in; we will let

 8    them know that we are going to be taking a lunch break for one

 9    hour.  And then please plan on starting again, which then leads

10    me to the next issue and that is accommodating Mr. Spearman's

11    mother.

12              Given what I have said previously about the capacity

13    of this small courtroom and the gallery being full with the 50

14    jurors, which is more than I usually order for criminal cases,

15    along with the fact that we have one of the galleries somewhat

16    occupied with an air purifier that takes up at least one or two

17    spots there.  We do have some additional chairs in the front;

18    but those, as I said, are designated for law enforcement.  They

19    are being used now by at least two jurors.  So the placement of

20    the public would require them to be sitting next to the jurors.

21              At this point, given the size of this courtroom and

22    the seating that is available, I don't see a good alternative,

23    but I will again open the floor for any comments.

24              Mr. Schiller.

25              MR. SCHILLER:  Well, Judge, I guess my response to

```
1    the Court, if I could ask a logistical question.  So is the

2    Court proposing we come back after lunch, we start jury

3    selection anew but without the jurors that maybe we agree for

4    cause, at this point, because they are not going to be seated

5    even if we start anew anyway.

6              THE COURT:  I'm open to that, depending on the

7    Defense view.

8              Are there jurors to which both parties agree for

9    scheduling reasons and clear for cause purposes would not be

10   required to return, in which case we would have more room freed

11   up?

12             MR. SCHILLER:  Judge, I can tell you, we have met

13   with Defense, and we do have several that we do agree upon.

14             THE COURT:  Mr. Berry?

15             MR. BERRY:  We agree, Judge.  We agree, Judge --

16   sorry, having trouble with that microphone.

17             THE COURT:  You agree with what?

18             MR. BERRY:  We agree that there are cause challenges

19   that we could dismiss at this time and just bring back the, I

20   guess, the remaining.

21             THE COURT:  Okay.  Well, then, let's go over that

22   list of the folks, and I want to be clear.  These are

23   individuals as to which there is absolutely no disagreement

24   that they should be stricken for cause.

25             Mr. Schiller, why don't you start us off?
```

```
1              MR. SCHILLER:  Thank you, Judge.

2              We are in agreement as to Juror 3.

3              MS. McCRAE:  No objection to striking.

4              THE COURT:  Okay.

5              MR. SCHILLER:  Your Honor, we are in agreement to

6    Juror 4.

7              MS. McCRAE:  No objection.

8              MR. SCHILLER:  Your Honor, we are in agreement to

9    Juror 6.

10             MS. McCRAE:  No objection.

11             MR. SCHILLER:  Okay.

12             Your Honor, we are in agreement to Juror 9.

13             MS. McCRAE:  No objection.

14             THE COURT:  All right.

15             MR. SCHILLER:  Your Honor, we are in agreement for

16   cause to Juror 11.

17             MS. McCRAE:  No objection.

18             THE COURT:  All right.

19             MR. SCHILLER:  Your Honor, we are in agreement to

20   cause for Juror 12.

21             MS. McCRAE:  No objection.

22             MR. SCHILLER:  Your Honor, we are in agreement to

23   cause for Juror 14.

24             MS. McCRAE:  No objection.

25             MR. SCHILLER:  Your Honor, we are in agreement to
```

```
 1    cause for Juror 26.

 2              MS. McCRAE:  No objection.

 3              MR. SCHILLER:  Your Honor, we are in agreement to

 4    cause for Juror 29.

 5              MS. McCRAE:  No objection.

 6              MR. SCHILLER:  And Juror 30?

 7              MS. McCRAE:  No objection.

 8              MR. SCHILLER:  We are in agreement to cause for Juror

 9    33.

10              MS. McCRAE:  No objection.

11              MR. SCHILLER:  We are in agreement to cause for

12    Juror 40.

13              MS. McCRAE:  No objection.

14              MR. SCHILLER:  We are in agreement to cause for

15    Jurors 42 and 43.

16              MS. McCRAE:  No objection to either of those two

17    jurors.

18              MR. SCHILLER:  And we are in agreement to cause to

19    Juror 50.

20              MS. McCRAE:  No objection.

21              THE COURT:  Does that conclude the list as to which

22    the parties agree jurors should be stricken for cause?

23              MR. SCHILLER:  Yes, ma'am.

24              THE COURT:  Ms. McCrae?

25              MS. McCRAE:  I would have further to propose, but I
```

Monday, June 12, 2023.

1    understand the government is not ready to agree.

2           What we will do is let me go over that one final

3    time, the numbers, and tell me if I'm wrong, please; three,

4    four, six, nine, 11, 12, 14, 26, 29, 30, 33, 40, 42, 43, and

5    50; is that correct?

6           MR. SCHILLER:  That is correct, Your Honor.

7           MS. McCRAE:  Yes, Your Honor.

8           THE COURT:  Okay.  All right.  Ms. Casissi, let's

9    call everybody back in, please.

10          MR. SCHILLER:  I'm sorry, Judge, let me answer the

11   Court's now logistics question based on that.

12          THE COURT:  Yes.

13          MR. SCHILLER:  So now, is it the Court's proposal

14   that we basically start jury selection anew as if we have not

15   conducted it yet, obviously having sworn them in and that the

16   courtroom, now, because of the spacing be reopened for anyone,

17   as long as there is space for them?

18          THE COURT:  That is correct.

19          MR. SCHILLER:  Okay, ma'am, thank you.

20          Are the jurors going to retain their current numbers?

21          THE COURT:  Yes, otherwise, it becomes impossible to

22   keep track, so we are going to use the same numbers.  We are

23   just going to be skipping over the ones we have stricken, and

24   we will make room for any members of the public who wish to be

25   present.

1          MR. SCHILLER:  Okay, Judge; thank you very much.

2          THE COURT:  Okay.

3          All rise.

4     (Venire panel entered the courtroom)

5          THE COURT:  All right, please be seated.

6          Do we have everybody, Ms. Casissi?

7          THE COURTROOM DEPUTY:  Yes, Your Honor.

8          THE COURT:  Ladies and gentlemen, thank you for your

9     continued patience.  I know this is a lengthy process, and we

10    are all very grateful for your time and attention.

11         What is going to happen now, I'm going to read out

12    loud the names of certain jurors who will be excused, at this

13    time.  Do not leave right away, until I am done reading out

14    this list.  Those individuals should return to the second floor

15    for further instructions.

16         If your name is not called, then you will be asked to

17    return in one hour after the lunch break, and we have

18    additional jury selection to do which will be lengthy, and it

19    will require the Court to review and go over many of the

20    questions, if not all of the questions we have already gone

21    over.  So this will consume very likely the entire business

22    day; but for now, I will read out loud the names of the jurors

23    who can be excused, at this time.  Please listen carefully.

24         Juror 3, Juror 4, Juror 6, Juror 9, Juror 11, Juror

25    12, Juror 14, Juror 26, Juror 29, Juror 30, Juror 33, Juror 40,

1   Juror 42, Juror 43, and Juror 50.

2            If I have called your name, please stand at the

3   moment, and gather your belongings.  Please leave your paddles

4   where they are and return to the second floor as I indicated

5   for further instructions.  Thank you.

6            (Dismissed venire members exit courtroom)

7            THE COURT:  All right, thank you.

8            At this time, Ms. Casissi, I'm going to ask that you

9   please swear in the panel of jurors.

10           Will all prospective please stand and raise your

11  right hand.

12       (Venire panel sworn)

13           THE COURT:  All right.  Thank you.

14           You may be seated.

15           That oath is for the purposes of jury selection.

16  That does not mean that you have been selected to serve on this

17  jury, it just permits us to initiate the questioning anew which

18  is what we will do after lunch.

19           At this point, it is 12:43; the lunch break is one

20  hour long, so please return to the courthouse promptly at 1:43.

21  Please, again, leave their paddles where they are, and we will

22  see you after lunch.

23           Please, also, it is important that nobody discuss

24  this case or anything related to the case, with anyone.

25  Similarly, it is imperative that no one conduct any research of

1    any kind either on the internet or elsewhere about this case or

2    any of the individuals related to the case.  It is critical

3    that we all maintain an open mind until the conclusion of the

4    case, if chosen to serve was a juror.  Again, please be mindful

5    of those admonitions.  With that, let's rise and we will see

6    you at 1:43.

7                    (Venire panel exits courtroom)

8                    THE COURT:  All right.  Please be seated.

9                    Anything time sensitive to raise before we break for

10   lunch, Mr. Schiller?

11                   MR. SCHILLER:  No, Your Honor.

12                   THE COURT:  Mr. Berry?

13                   MR. BERRY:  No, ma'am.

14                   THE COURT:  Okay.  Well, then have a nice lunch, we

15   will see each other at 1:43 promptly.

16                   THE COURTROOM DEPUTY:  All rise.

17      (Recess was had at 12:44 P.M.; and the proceedings

18      resumed at 2:25 P.M.)

19                   THE COURT:  Thank you.

20                   We are back on the record.  The defendant is present.

21   You may be seated.

22                   I understand there are some plea negotiations

23   underway; but of course, it is now more than 40 minutes past

24   the time we had the jurors return, so I would like to get some

25   more clarity from the parties on respective timing, given the

```
 1   jurors and what has already transpired.

 2          Mr. Berry.

 3          MR. BERRY:  Your Honor, I now have a copy -- a

 4   written copy of both the plea agreement and the proposed

 5   factual proffer.  Mr. Spearman has gone over the factual

 6   proffer.  We were just about to go over the plea agreement.

 7          I don't know if he is going to have any questions, it

 8   typically takes me make 15, 20 minutes to go through all the

 9   details of it; so if he has got questions, maybe half an hour.

10          THE COURT:  But at this point, the actual plea

11   agreement has been delivered to Defense Counsel; is that

12   correct?

13          MR. SCHILLER:  That's correct, Judge.  It is a

14   conditional plea reserving the right to appeal.  I received

15   authorization from the appellate section in my office, that

16   language is included, so a final copy has been sent to the

17   Defense.  They are reviewing it now.

18          THE COURT:  All right.  It's 2:27, I will go back on

19   the record at 3:05, and I encourage the parties to be very

20   efficient with their time because I hesitate to keep the jurors

21   waiting without additional information for much longer.

22          That is all, thank you.

23          MR. SCHILLER:  Thank you, ma'am.

24          THE COURTROOM DEPUTY:  All rise.

25      (Recess was had at 2:27 P.M.; and the proceedings
```

Monday, June 12, 2023.

```
 1        resumed at 2:56 P.M.)

 2             THE COURT:  All right.  Thank you.

 3             Please be seated.  We are back in session.  The

 4   defendant is present.

 5             Mr. Berry, I have been presented with executed

 6   versions of a factual proffer and plea agreement.

 7             All right, I have been given another plea agreement

 8   with typographical corrections that have been annotated and

 9   signed again, although I think this does not have Mr. Berry's

10   or Mr. Spearman's signatures.

11             MR. BERRY:  Oh, I'm sorry, Judge.  Thank you.

12      (Brief pause in the proceedings)

13             THE COURT:  All right.  I have the executed plea

14   agreement along with the executed factual proffer.

15             All right.  I don't think we need appearances again,

16   since we have been engaged in jury selection all morning; but I

17   do want to make, for the record, clear that the defendant is

18   present.

19             Mr. Berry, is it Mr. Spearman's intention to enter

20   into a plea of guilty today, pursuant to a written plea

21   agreement and factual proffer?

22             MR. BERRY:  Yes, Your Honor.

23             THE COURT:  Is that your understanding, Mr. Schiller

24   or Mr. Reynolds?

25             MR. SCHILLER:  From the government, yes, it is, Your
```

1    Honor.

2           THE COURT:  All right.

3           Mr. Spearman, I'm going to ask you several questions.

4    The purpose of these questions is to make sure that you have

5    very carefully considered your decision to plead guilty, that

6    you are competent to make a decision and are aware of the

7    consequences of pleading guilty and that there is, in fact, a

8    factual basis in support of the guilty plea.

9           If at any point, sir, you don't understand any of my

10   questions or you wish to speak with your attorney, please let

11   me know right away and we will arrange that for you.  Do you

12   understand, sir?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  All right.  Let's have the defendant

15   sworn in.

16          WILLIAM MICHAEL SPEARMEN, DEFENDANT, SWORN

17          THE COURT:  Thank you Mr. Spearman.

18                        EXAMINATION

19   BY THE COURT:

20   Q    You are now under oath.  That means that if you answer any

21   of my questions falsely, those statements later could be used

22   against you in a future prosecution for perjury or for making a

23   false statement; do you understand, sir?

24   A    Yes, Your Honor.

25   Q    All right.  Now, what is your full name?

                     Monday, June 12, 2023.

```
 1   A    William Michael Spearman.

 2   Q    Have you ever been known by any other name?

 3   A    Bill, the nickname Bill.

 4   Q    Bill, okay.

 5             Have you used any other nicknames other than Bill?

 6   A    No.

 7   Q    Have you used any aliases on the internet?

 8   A    Yes, Your Honor.

 9   Q    And what are those?

10   A    Nun 111, and King Pedo.

11   Q    Okay.

12   A    And Enforcer.

13   Q    Enforcer?

14   A    Yes, ma'am.

15   Q    Where were you born, sir?

16   A    Libertyville, Illinois.

17   Q    And how old are you?

18   A    Fifty-seven.

19   Q    How far did you go in school?

20   A    Three years of college.

21   Q    Where was that?

22   A    At American Military University.

23   Q    Do you read or write the English language?

24   A    Yes, Your Honor, both.

25   Q    Thank you.
```

```
 1              Are you a citizen of the United States?
 2    A    Yes, Your Honor.
 3    Q    Have you ever been treated for any mental illness?
 4    A    Yes.
 5    Q    Briefly describe that for me including some time
 6    references, as well, for when you were receiving such
 7    treatment.
 8    A    From the mid '90s to present, PTSD and anxiety in the
 9    decade after that.
10    Q    Okay.
11    A    And severe depression after that in the last 15 years.
12    Q    So you mentioned a series of conditions.  Have you received
13    treatment by a medical professional for any of these
14    conditions?
15    A    Yes, I have, Your Honor.
16    Q    All right.  When was the last time you were receiving
17    treatment?
18    A    Last week.
19    Q    Are you currently taking any medication for these
20    conditions, these mental health conditions?
21    A    Yes, Your Honor.
22    Q    What are those medicines, if you know?
23    A    I don't know all of them, I know Cymbalta and Abilify.
24    Q    Now, when was the last time you took those medications?
25    A    I took those two this morning, Your Honor.
```

Monday, June 12, 2023.

```
 1   Q    Okay.  Do those medications interfere at all with your

 2   ability to understand what is going on in this courtroom right

 3   now?

 4   A    No, Your Honor.

 5   Q    Do you feel as if you fully understand everything that is

 6   transpiring here right now?

 7   A    Yes, I do.

 8   Q    Have you ever been treated for an addiction to narcotic

 9   drugs?

10   A    No, Your Honor.

11   Q    Have you ever been treated for an addiction to alcohol?

12   A    No, Your Honor.

13   Q    Are you currently under the influence of any drugs,

14   alcohol, or other intoxicants?

15   A    No, Your Honor.

16   Q    And I'm not referring to the medicines you described just a

17   minute ago.

18   A    No.

19   Q    All right.  Do you believe, sir, that you have any physical

20   or mental condition or illness that would prevent you from

21   understanding what is happening in court today?

22   A    No, I don't.

23        THE COURT:  Mr. Berry, is it your opinion that

24   Mr. Spearman is competent to enter into a guilty plea?

25        MR. BERRY:  Yes, Your Honor.
```

Monday, June 12, 2023.

1          THE COURT:  Mr. Berry, are you aware of any promises

2    or assurances of any kind to get Mr. Spearman to plead guilty,

3    other than what is set forth in the written plea agreement?

4          MR. BERRY:  Your Honor, there is an agreement by the

5    government to not seek forfeiture of his home.  The plea

6    agreement does not specifically indicate that, but they have

7    advised that they will not seek forfeiture of his home, and

8    that is part of the reason that Mr. Spearman has agreed to

9    enter into this plea.

10          THE COURT:  Mr. Schiller, please expound upon that.

11          MR. SCHILLER:  Certainly, Judge.

12          As contemplated in the indictment, one of the items

13   of forfeiture was the defendant's home.  The government is not

14   going to forfeit -- is not -- I'm sorry, the Government is

15   going to forego forfeiting the defendant's home, and we will

16   enter a release of lis pendens following these proceedings

17   today or tomorrow morning.

18          THE COURT:  Okay.  Other than the agreement by the

19   government to forego seeking forfeiture of the defendant's

20   home, are there any other promises or assurances of any kind,

21   Mr. Berry, to get Mr. Spearman to plead guilty other than what

22   is contained in the plea agreement?

23          MR. BERRY:  No, ma'am.

24          THE COURT:  Okay.  All right.

25

```
 1   BY THE COURT:
 2   Q    Mr. Spearman, are you pleading guilty of your own free
 3   will, sir, because you are, in fact, guilty of count 3, which
 4   is the count to which you intend to plead guilty?
 5   A    Yes, Your Honor.
 6   Q    Now, Mr. Spearman, has anybody tried to force you or coerce
 7   you into pleading guilty?
 8   A    No, Your Honor.
 9   Q    All right.  Let's turn to the indictment which is the
10   second superseding indictment.  Have you received a copy of
11   that, sir?
12   A    Yes, I have, Your Honor.
13   Q    Have you fully discussed the charges with your attorney?
14   A    Yes, ma'am.
15   Q    Have you had enough time to discuss the case in general
16   with your attorney?
17   A    Yes.
18   Q    Now have you fully reviewed the discovery in the case with
19   your attorney?
20   A    Yes, Your Honor.
21        THE COURT:  Now there might have been some contraband
22   that potentially was not viewable by the defendant, but,
23   Mr. Berry, I would like for you to chime in here.
24   BY THE COURT:
25   Q    Please explain to the Court the efforts you took in your
```

Monday, June 12, 2023.

1  representation to review the discovery in the case with

2  Mr. Spearman.

3          MR. BERRY:  Well, Your Honor, as the Court is aware,

4  there was a protective order that was entered in this case, so

5  I could not send him the discovery; but what I did do, my

6  investigator, Ms. Shannon is here today, she actually would go

7  out to see him at the facility that he has been at with a

8  computer and has gone through all the documents, allowed him to

9  review everything; and, of course, we discussed those

10  documents, whatever there was, statements, videos, whatever he

11  wanted to see.

12          THE COURT:  Okay.

13  BY THE COURT:

14  Q   Mr. Spearman, do you concur that you have been able to see

15  all the discovery you have requested to see?

16  A   Yes, Your Honor.

17  Q   Are there any materials that you asked Mr. Berry to see

18  that you were not able to see?

19  A   No.

20  Q   Now, have you discussed possible defense strategies with

21  your attorney, without telling me what those strategies are?

22  A   Yes, Your Honor.

23  Q   Are you fully satisfied with your attorney and with the

24  advice and representation that he has given you?

25  A   Absolutely.

1   Q   Is there anything you have asked him to do that he has not

2   done to your satisfaction?

3   A   No.

4   Q   All right.  Now, because this proposed plea agreement

5   contemplates a guilty plea to count 3, I'm going to read out

6   loud what count 3 alleges from the second superseding

7   indictment.  It alleges that the defendant, William Michael

8   Spearman, engaged in a child exploitation enterprise.  It

9   states as follows:  "Beginning in or around March of 2018 and

10  continuing through on or about November 2, 2022, in Palm Beach

11  County, in the Southern District of Florida and elsewhere, the

12  defendant, William Michael Spearman, and other persons known

13  and unknown to the grand jury knowingly, engaged in a child

14  exploitation enterprise in that the defendant violated Chapter

15  110 of Title 18 of the United States Code as part of a series

16  of felony violations constituting three or more separate

17  incidents and involving more than one victim and committed

18  those offenses in concert with three or more other persons, all

19  in violation of Title 18, United States Code, Section

20  2252A(g)."

21           THE COURT:  Did I read that correctly, Mr. Berry?

22           MR. BERRY:  Yes, ma'am.

23           THE COURT:  Okay.

24  BY THE COURT:

25  Q   Now, Mr. Spearman, do you understand that charge?

1    A    Yes, I do, Your Honor.

2                THE COURT:  Mr. Schiller or Mr. Reynolds, please set

3    forth what the essential elements of count 3 are.

4                MR. SCHILLER:  Thank you, Your Honor.

5                The essential elements of count 3, which charges

6    child exploitation enterprise in violation of Title 18, United

7    States Code, Section 2252A(g) are the following:  That the

8    defendant advertised and distributed child pornography on three

9    or more occasions between in or around March 18th --

10   March 2018, and November 2nd, 2022, and that the defendant

11   committed those offenses in concert with three or more other

12   persons and the offenses involved more than one victim.

13               With regard to the defendant's advertisement of child

14   pornography as part of the child exploitation enterprise, the

15   items that the government would have proven would be that he

16   knowingly made, printed, or published or caused to be made,

17   printed or published a notice or advertisement seeking or

18   offering to provide, display, distribute, exchange or reproduce

19   any visual depiction involving the use of a minor engaged in

20   sexually explicit conduct, and the visual depiction is of such

21   conduct and the defendant knew or had reason to know that the

22   notice or advertisement would have been transported using any

23   means or facility of interstate or foreign commerce or in or

24   affecting interstate or foreign commerce by any means,

25   including by computer or mailed, or that such notice or

1    advertisement was transported using any means or facility of

2    interstate or foreign commerce, or in or affecting interstate

3    or foreign commerce by any means including by computer or

4    mailed; and with regard to the defendant's distribution of

5    child pornography, as part of the child exploitation

6    enterprise, the government would have proven the following

7    elements:  That the defendant knowingly distributed an item or

8    items of child pornography, that the defendant distributed the

9    item or items of child pornography using any means or facility

10   of interstate or foreign commerce and when he distributed those

11   items, he believed the items were or contained child

12   pornography.

13          THE COURT:  All right.  Thank you, Mr. Schiller.

14          Mr. Berry, are you satisfied those are the correct

15   elements of count 3?

16          MR. BERRY:  Yes, Your Honor.

17   BY THE COURT:

18   Q   Now, Mr. Spearman, do you understand those elements or

19   things the government just described?  Those are the elements

20   the government would have to prove beyond a reasonable doubt if

21   this matter had proceeded to trial?

22   A   Yes, Your Honor.

23   Q   And do you further understand, sir, that when you plead

24   guilty, you give up your right to have the government prove

25   each of those essential elements of the crime beyond a

1    reasonable doubt?

2    A    Yes, I understand that.

3    Q    You also, when you plead guilty, give up all of your

4    defenses.  Do you understand that as well?

5    A    No.

6    Q    All right.  So when you plead guilty, you forego the right

7    to assert any defenses to your guilt with the exception of the

8    conditional plea agreement potentially as stipulated in the

9    plea agreement; but otherwise, when you plead guilty, sir, you

10   give up your right to assert any defenses you might have had to

11   count 3.  Do you understand that, sir?

12   A    Yes, I do.

13   Q    Now, I know you have indicated you were born in the United

14   States and that you are a U.S. citizen, but I will advise you

15   nevertheless that if you were not born in this country, your

16   guilty plea very likely would affect your ability to stay in

17   this country and might subject you to deportation and denial of

18   admission to the United States in the future.

19           Are you willing, sir, to plead guilty today

20   regardless of any immigration consequences that your guilty

21   plea might entail, even if the consequence of your guilty plea

22   is automatic removal from the United States?

23   A    Yes, Your Honor.

24   Q    Now, do you understand that the offense to which you are

25   pleading guilty, count 3, is a felony offense?

1   A    Yes, I do.

2   Q    Do you understand that if your plea is accepted, sir, you

3   will be adjudicated guilty of that offense and that

4   adjudication of guilt might deprive you of valuable civil

5   rights like the right to vote, the right to hold public office,

6   the right to serve on a jury, and the right to possess any kind

7   of firearm?

8   A    Yes.

9          THE COURT:  Now, turning to the statutory penalties

10  associated with count 3, I'm going to ask Mr. Schiller to set

11  forth what those are at this time.

12         MR. SCHILLER:  Thank you, Judge.

13         Count 3 of the indictment requires the defendant to

14  be sentenced to a minimum imprisonment time of 20 years, and

15  the Court may impose a statutory maximum term of life

16  imprisonment followed by a term of supervised release of a

17  minimum of five years up to life.  In addition to a term of

18  imprisonment and supervised release, the Court may impose a

19  fine of up to $250,000, may order forfeiture, may order

20  restitution and additional assessments and special assessments.

21         THE COURT:  All right.  I'm going to ask,

22  Mr. Schiller, you describe in more detail the special

23  assessments you refer to, generally.

24         MR. SCHILLER:  Yes, ma'am, of course.

25         Pursuant to 18, United States Code, Section 3013,

1   there is an assessment in this case of $100; that is included

2   in paragraph four of the plea agreement.  In paragraph seven of

3   the plea agreement, pursuant to Title 18 --

4           THE COURT:  Hold on a minute, I want to make sure I'm

5   keeping track of your paragraph designations.

6           MR. SCHILLER:  I'm sorry, Judge, paragraph six.  It

7   is paragraph six, my mistake.

8           THE COURT:  Keep going.

9           MR. SCHILLER:  I saw six and I read four, I

10  apologize.

11          In paragraph seven of the plea agreement, pursuant to

12  Title 18, United States Code, Section 3014, a special

13  assessment in the amount of $5,000 will be imposed if the

14  defendant is not indigent because the count he is pleading

15  guilty to is a violation of a Chapter 110 offense.

16          In Chapter 8 of the plea agreement, the defendant

17  understands that he may be subject to a special assessment not

18  to exceed $35,000 pursuant to Title 18, United States Code,

19  Section 2259A.

20          Those are all of the special assessments, Your Honor.

21          THE COURT:  Okay.

22  BY THE COURT:

23  Q   Mr. Spearman, did you hear all of the various statutory

24  penalties that Mr. Schiller just described?

25  A   Yes, Your Honor.

```
1    Q   Now, to drill down and reiterate, do you understand, sir,
2    that count 3 carries a minimum term of imprisonment of 20
3    years, sir?
4    A   Yes, I do.
5    Q   Do you also understand that the Court may impose a
6    statutory maximum term of life imprisonment?
7    A   Yes, I do, Your Honor.
8    Q   In addition to the term of imprisonment, do you also
9    understand, Mr. Spearman, that the term of imprisonment will be
10   followed by a term of supervised release that will be at least
11   five years long?
12   A   Yes, Your Honor.
13   Q   And that term of supervised release could go all the way up
14   to lifetime supervised release.  Do you understand, sir?
15   A   Yes, Your Honor.
16   Q   Now, as part of a term of supervised release, there would
17   be various conditions associated with that term of supervised
18   release.  Do you further understand, sir, that if you were to
19   violate any of the conditions of supervised release, those
20   violations could result in additional time in prison?
21   A   Yes, I do.
22   Q   Now turning to the fine, do you understand, sir, that the
23   Court can impose a fine of up to $250,000 in this case?
24   A   Yes, Your Honor.
25   Q   And then with respect to special assessments, as
```

1    Mr. Schiller described, there are three such assessments, one

2    of which is mandatory.  It is described in paragraph six and

3    it's a $100 special assessment that will be imposed upon you,

4    sir, in accordance with Title 18, United States Code, Section

5    3013.  Do you understand that, sir?

6    A    Yes, Your Honor.

7    Q    There is also a special assessment in the amount of $5,000

8    under Section 3014 which will be imposed upon you, sir, if you

9    are deemed not indigent.  Do you understand that, sir?

10   A    Yes, I do.

11   Q    And then there is finally the special assessment under

12   Section 2259A, which is not to exceed $35,000 and may be

13   imposed upon you as well.  Do you understand that, sir?

14   A    Yes, ma'am.

15   Q    Do you understand, sir, that all of those statutory

16   penalties I have just discussed, they are all possible

17   consequences of your guilty plea here today; and to emphasize,

18   there is that mandatory minimum term of imprisonment of 20

19   years along with the mandatory term of supervised release of

20   five years.  Do you understand that, sir?

21   A    Yes, I do, Your Honor.

22            THE COURT:  All right.  Now, Mr. Schiller, I know we

23   discussed forfeiture briefly, but are there any other aspects

24   of the plea agreement that govern the matter of forfeiture?

25            MR. SCHILLER:  Yes, ma'am.  Paragraphs 14, 15 of the

1    plea agreement cover forfeiture, and they contemplate the

2    defendant is agreeing to forfeit 14 electronic devices to the

3    United States; and I can go through those one at a time, if you

4    would like me to put them in the record.

5              THE COURT:  I don't think that's necessary, but I do

6    want to inquire.

7    BY THE COURT:

8    Q   Mr. Spearman, are you familiar with the numerous items

9    listed in paragraph 14 and do you understand, sir, that by

10   entering into this plea agreement, you are agreeing to forfeit

11   to the government voluntarily and immediately all of your

12   interest in those items of property?

13   A   Yes, I am, Your Honor.

14             THE COURT:  Mr. Berry, do you believe more specific

15   recitation of those items is necessary?

16             MR. BERRY:  No, Your Honor.

17   BY THE COURT:

18   Q   Now, I also want to ask, sir, on the subject of forfeiture,

19   by entering into this plea agreement pursuant to paragraph 15,

20   do you understand that you are knowingly and voluntarily

21   waiving various rights to the subject property, including any

22   constitutional, legal and equitable defenses you might have

23   had, any judicial or administrative notice of forfeiture and

24   related deadlines, any jeopardy defense or claim of double

25   jeopardy, any claim or defense under the Eighth Amendment to

1    the United States Constitution, and any right to appeal any

2    order of forfeiture entered by the Court?

3           Do you understand, sir, that you are giving up all of

4    those related arguments and defendants *[sic]* with -- excuse me,

5    defenses with respect to forfeiture?

6    A    Yes, I do, Your Honor.

7           THE COURT:  Okay.  Now, Mr. Schiller, let's turn to

8    the matter of restitution.

9           MR. SCHILLER:  Yes, ma'am.

10          The plea agreement in paragraphs 9, 10, and 11

11   discuss restitution, and the defendant understands that by

12   pleading guilty in this case, he will be ordered to pay

13   restitution pursuant to 18, United States Code, Section 2259

14   and 2259A, as the offenses he is pleading guilty to is again a

15   Chapter 110 offense.

16          He further understands that he will be responsible

17   for paying restitution not just to the victims that are

18   contemplated under count 3 but any victims that are deemed

19   relevant conduct, including any charged or uncharged child

20   pornography offenses for which he possessed on his device but

21   maybe didn't use to commit these offenses.

22          In addition, he understands that the Court will order

23   restitution in an amount that reflects the defendant's relative

24   role in the causal process that underlies the victims' losses

25   but which is no less than $3,000 per victim.

1          THE COURT:  All right.  Mr. Schiller has gone over

2   paragraphs 9, 10, and 11.  Mr. Berry, are you satisfied that we

3   have adequately covered the subject of restitution?

4          MR. BERRY:  Yes, Your Honor.

5   BY THE COURT:

6   Q   Mr. Spearman, did you understand what Mr. Schiller

7   described with respect to restitution?

8   A   Yes, I did, Your Honor.

9   Q   Do you have any questions about restitution?

10  A   No, ma'am.

11  Q   Okay.  All right, then we will move forward.

12          Let me ask again, Mr. Spearman, do you understand

13  that all of the penalties we just discussed, both in terms of

14  imprisonment, supervised release, fine, special assessments,

15  forfeiture, and restitution, they are all possible consequences

16  of your plea here today and some are mandatory by law?

17  A   Yes, I do, Your Honor.

18  Q   Okay.  Now, on the subject of the sentencing guidelines,

19  Mr. Spearman, the United States Sentencing Commission has

20  published guidelines to help judges determine sentences in

21  criminal cases.

22          Have you and your attorney, Mr. Berry, been able to

23  discuss how the sentencing guidelines might apply to your case?

24  A   Yes, we have, Your Honor.

25  Q   Do you understand, sir, that any estimate of the sentence

```
 1    given to you by Mr. Berry or by anybody else is only an

 2    estimate?

 3    A    Yes, I do.

 4    Q    In other words, sir, do you understand that the Court can

 5    depart or vary from the sentencing guidelines and impose a

 6    sentence that is higher or lower than the sentencing -- than

 7    the sentence recommend by the sentencing guidelines?

 8    A    Right, Your Honor.

 9    Q    Do you fully understand that, sir?

10    A    Yes, I do.

11    Q    And in the same vein, put another way, do you understand,

12    sir, that the sentencing guidelines are not binding or

13    mandatory on the Court?

14    A    Yes, I do understand.

15    Q    In other words, the Court can sentence you above the

16    sentencing guidelines up to the maximum permitted by law which,

17    in this case, in terms of imprisonment and supervised release

18    is life or below than what the sentencing guidelines recommend?

19    A    Yes, Your Honor.

20    Q    And, sir, do you understand that if the Court were to

21    impose a higher sentence than you were hoping for, do you

22    understand that you would not be allowed to withdraw your

23    guilty plea solely as a result of the sentence that you

24    receive?

25    A    I understand that, Your Honor.
```

Monday, June 12, 2023.

1   Q   Now, there are a number of constitutional rights, sir, that

2   you waive when you plead guilty, so I'll review those now.

3           First, do you understand, sir, that you have the

4   right to plead not guilty to any offense charged against you

5   and to persist in that plea?

6   A   Yes.

7   Q   Second, do you understand that you have the right to a

8   trial by jury?

9   A   Yes, ma'am.

10  Q   Third, do you understand that at a trial, you would be

11  presumed to be innocent and it would be the government's entire

12  burden to prove your guilt beyond a reasonable doubt?  Do you

13  understand that, sir?

14  A   Yes, Your Honor.

15  Q   Do you also understand that at a trial, you would have the

16  right to the assistance of appointed counsel for your defense,

17  like Mr. Berry, and, if necessary, during other stages of the

18  proceeding?

19  A   Yes, Your Honor.

20  Q   Moving on, do you understand, sir, that you would at a

21  trial have the right to confront and cross-examine adverse

22  witnesses in your defense?

23  A   Yes, Your Honor.

24  Q   Do you understand that you would also have the right to

25  compel the attendance of adverse witnesses at a trial?

1   A   Yes, Your Honor.

2   Q   And do you also understand that at a trial, you would have

3   the right, if you wanted to, to testify?  Do you understand

4   that, sir?

5   A   Yes, ma'am.

6   Q   But on the flip side, you would also have the right to

7   remain silent and decide not to testify or to put on any

8   evidence at all; and that if you decided not to testify or to

9   put on any evidence, those facts could not be used against you

10  at a trial; do you understand that, sir?

11  A   Yes, ma'am.

12  Q   All right.  So we have gone over portions of the plea

13  agreement already, but let's go over some additional

14  preliminaries.

15          This is a conditional plea agreement reserving the

16  right to appeal the Court's order denying defendant's motion to

17  suppress evidence.  By this agreement, sir, you are agreeing to

18  plead guilty to count 3 in exchange for the government's

19  dismissal of Counts 1 and 2 of the second superseding

20  indictment.

21          I have before me the executed plea agreement which is

22  eight pages in length and contains signatures on page eight.

23  Is that the document you signed, sir?

24  A   Yes, Your Honor.

25  Q   Is that your signature on page eight above the name

```
 1   "William Michael Spearman"?

 2   A   Yes, it is, Your Honor.

 3           THE COURT:  Mr. Berry, is that your signature?

 4           MR. BERRY:  Yes, ma'am.

 5           THE COURT:  Mr. Reynolds and Mr. Schiller?

 6           MR. REYNOLDS:  Yes, Your Honor.

 7           MR. SCHILLER:  Yes, Your Honor.

 8           THE COURT:  Okay.  And these are all dated with

 9   today's date.

10   BY THE COURT:

11   Q   Now, before you signed this written plea agreement, sir,

12   did you have a full opportunity to review its contents?

13   A   Yes, I did, Your Honor.

14   Q   Do you believe that you understand the written plea

15   agreement in its entirety?

16   A   Yes, Your Honor.

17   Q   Now, have any additional promises been made to you that are

18   not contained in this plea agreement?  And I know we discussed

19   the matter of forfeiture of your home, but other than that

20   discreet forfeiture agreement, have there been any additional

21   promises made to you that are not listed in this plea

22   agreement?

23   A   No, ma'am.

24   Q   Now, do you understand that the terms of the plea agreement

25   to the extent they are cast in the form of a recommendation,
```

```
 1   are merely recommendations to the Court which the Court can
 2   reject without allowing you to withdraw your guilty plea?
 3   A    Yes, I understand.
 4   Q    And again, do you understand, sir, that the Court can
 5   impose a sentence that is more severe than you might
 6   anticipate?
 7   A    Yes, Your Honor.
 8              THE COURT:  Mr. Schiller, if you could describe the
 9   sex offender provisions pertinent to the plea agreement,
10   please.
11              MR. SCHILLER:  Yes, Your Honor.  Thank you.
12              Paragraph 16 and 17 of the plea agreement have the
13   defendant understand that by pleading guilty, he will be
14   required to register as a sex offender and an overall
15   understanding of those requirements and how he must keep his
16   registration current.  In addition, that he will be subject to
17   possible federal and state penalties for his failure to comply
18   with any such sex offender registration.
19              Paragraph 17 also advises the defendant that he is to
20   register with the State of Florida upon his release from
21   imprisonment being placed on supervised release, and he shall
22   also register with the state sex offender registration agency
23   in any state where he resides, is employed, works, or is a
24   student, as directed by the probation officer.
25              THE COURT:  All right.  Thank you, Mr. Schiller.
```

1    BY THE COURT:

2    Q   Mr. Spearman, did you hear what Mr. Schiller just

3    described?

4    A   Yes, Your Honor.

5    Q   And do you feel as if you fully understand the sex offender

6    registration requirements that are detailed in the plea

7    agreement, specifically paragraphs 16 and 17?

8    A   Yes, I do, Your Honor.

9             THE COURT:  Okay, Mr. Berry, any additional

10   discussion in your view warranted on the subject of

11   registration requirements?

12            MR. BERRY:  No, ma'am.

13            THE COURT:  Okay.

14            All right.  Now, any other topics to discuss with

15   respect to the plea agreement, Mr. Schiller?

16            MR. SCHILLER:  Judge, I know the Court has already

17   covered the fact that this is a conditional plea, but I would

18   like to read into the record that paragraph, so it is clear for

19   the record exactly what that conditional plea contemplates.

20            THE COURT:  Okay.

21            MR. SCHILLER:  Thank you.

22            Pursuant to Federal Rule of Criminal Procedure

23   11(a)(2), the government agrees and consents to the defendant's

24   entry of a conditional plea of guilty and reservation of his

25   right to seek appellate review only of the District Court's

1    denial of its motion to suppress evidence at Docket Entry 146.

2            The defendant's motion alleged the warrantless

3    seizure of his internet protocol address, IP address, and

4    sought to suppress all physical evidence seized and statements

5    as fruit of the poisonous tree, as a result of the execution of

6    a search warrant at his residence and person that he filed at

7    docket entry 74.

8            The government and the defendant agree that an order

9    suppressing the subject evidence or an appeal granting such

10   relief is case dispositive.

11           THE COURT:  All right.  So this includes statements,

12   correct?

13           MR. SCHILLER:  Well, that was part of the defendant's

14   motion, that's correct, Judge, yes.

15           THE COURT:  Okay.  All right.  I think you have

16   accurately read the conditional plea provision in paragraph 2.

17           Mr. Berry, anything further on that subject?

18           MR. BERRY:  No, ma'am.

19           THE COURT:  Okay.

20           All right.  I think we have covered the plea

21   agreement, so let's turn now to the factual proffer.

22           I think for efficiency sake, I'm just going to go

23   ahead and read it.  Before I do so, let me confirm with

24   Mr. Spearman.

25

```
 1    BY THE COURT:
 2    Q    Sir, I have a factual proffer six pages long with
 3    signatures on page six.  Is that the document you signed, sir?
 4    A    Yes, Your Honor.
 5    Q    And I assume you have a copy of it in front of you; is that
 6    correct?
 7    A    Yes, Your Honor.
 8    Q    Okay.  Is that your signature at the bottom of page six?
 9    A    Yes, it is.
10              THE COURT:  Mr. Berry?
11              MR. BERRY:  Yes, ma'am.
12              THE COURT:  All right.  Mr. Reynolds and
13    Mr. Schiller?
14              MR. REYNOLDS:  Yes, ma'am.
15              MR. SCHILLER:  Yes, ma'am.
16              THE COURT:  All right.  So all parties have indicated
17    that is the proffer they signed with today's date.
18              All right.
19              The factual proffer states as follows:  The United
20    States would have proven the following facts beyond a
21    reasonable doubt had this case gone to trial:
22              One, at all relevant times, Website A was a website
23    dedicated to the advertisement and distribution of child
24    pornography as defined in Title 18, United States Code, Section
25    2256(8)(a), and the discussion of child sexual abuse.  Users of
```

1   Website A could engage in online communications with other

2   users.  Users trafficked in child pornography via Website A by

3   posting web links within messages.  These links redirected to

4   other websites such as file hosting websites where the link to

5   child pornography images and videos were available for download

6   and/or viewing.

7            Under the rules of Website A, the links were required

8   to contain descriptive text that provided information about the

9   sexual acts and age and gender of the child victim depicted in

10  the linked-to child pornography files.

11           During the timeframe relevant to this matter,

12  Website A users made tens or hundreds of thousands of child

13  pornography images and videos available in this manner.  At all

14  relevant times, Website A was managed by particular users

15  referred to as, quote, staff, and it had at least 100

16  registered members.

17           Paragraph 2:  Spearman was the lead administrator of

18  Website A and had been a member of the website between

19  approximately 2018 and the date of his arrest.  He told law

20  enforcement that he and three other individuals had equal power

21  in managing the website.  In this capacity, he supervised and

22  directed other members of Website A staff, gave staff members

23  instructions on how to interact with lower ranking users,

24  helped to clean up and organize links to child pornography

25  posted to a particular section of Website A, ensured that staff

1    members were present at all times in various sections of

2    Website A, presided over staff meetings, promoted and demoted

3    other users and staff, and otherwise supervised the day-to-day

4    organization and maintenance of Website A.

5           On or about February 6, 2022, in a room with

6    approximately ten other moderators, that is, high ranking

7    members of Website A staff, Spearman reproduced a post by

8    another user in order to instruct the other moderators on the

9    correct format to share certain types of child pornography

10   files.  The post consisted of a URL accompanied by text

11   indicative of the sexual abuse and exploitation of children.

12          An undercover FBI agent accessed the URL which

13   redirected to another website containing numerous collages of

14   images depicting the sexual abuse of a naked prepubescent boy

15   approximately six to nine years old.  The images depict the boy

16   fully naked and touching his own penis while an adult man

17   inserts an elongated object into the boy's anus.

18          Paragraph 4:  On numerous occasions, Spearman shared

19   thousands of URL links to child pornography to more than ten

20   other individuals who served as moderators of Website A.  These

21   incidents included the following:  On July 25th, 2022, Spearman

22   shared a list of URLs with other Website A uses.  The URLs were

23   accompanied by text indicative of the sexual abuse and

24   exploitation of children.  An FBI agent accessed some of the

25   URLs which redirected to other websites that displayed images

1    and videos depicting, among other things, an adult woman

2    licking an infant's vagina, as well as an adult woman using a

3    phallus strap-on device to penetrate the anus and vagina of a

4    prepubescent girl who appears to be between the ages of three

5    and six.

6            On July 27, 2022, Spearman again shared a list of

7    URLs with other Website A users.  The URLs were accompanied by

8    text indicative of the sexual abuse and exploitation of

9    children.  An FBI agent accessed some of the URLs which

10   redirected to other websites that displayed images and videos

11   depicting, among other things, an adult man's penis ejaculating

12   on a toddler's naked vagina, as well as a naked prepubescent

13   girl who has a prominent wound under her eye and who appears to

14   be approximately seven to ten years old spreading her legs to

15   expose her vagina to the camera.

16           C, on August 13th, 2022, Spearman, again, shared a

17   list of URLs with other Website A users.  The URLs were

18   accompanied by texts indicative of the sexual abuse and

19   exploitation of children.  An FBI agent accessed some of the

20   URLs which redirected to other websites that displayed images

21   and videos depicting, among other things, a collage of images

22   depicting adult men inserting their erect penises into the

23   mouths of prepubescent girls, as well as a close-up of a

24   toddler's naked vagina.

25           On August 15th, 2022, Spearman, again, shared a list

1   of URLs with other Website A users.   The URLs were accompanied

2   by text indicative of the sexual abuse and exploitation of

3   children.   An FBI agent accessed some of the URLs, which

4   redirected to other websites that displayed images and videos

5   depicting, among other things, a prepubescent girl,

6   approximately seven to nine years old and who was bound with

7   rope performing oral sex on an adult man's penis as well as

8   numerous images of a prepubescent girl approximately six to

9   nine years old displaying her naked vagina and anus to the

10  camera.

11          Spearman shared these URLs in part so other Website A

12  uses would take steps to further the maintenance, operations

13  and management of Website A until approximately July 2022;

14  And during the time when Spearman engaged in the conduct on

15  Website A described above, another high-ranking administrator

16  of Website A resided in Palm Beach County, Florida, within the

17  Southern District of Florida, where he advertised and

18  distributed child pornography and took acts to help manage

19  Website A from his home.

20          Further, beginning on an unknown date and continuing

21  until the date of his arrest, on or about November 2nd, 2022,

22  Spearman possessed multiple electronic devices in his residence

23  in the Northern District of Alabama that he used to engage in

24  the above and related conduct and that contained child

25  pornography.

1           For example, Spearman's devices contained a video of

2    a pubescent male engaged in violent anal sex with a toddler-

3    aged boy, a video of an adult man ejaculating into the mouth of

4    an infant, a video of a toddler-aged girl performing oral sex

5    on an adult man, a video of a masked man aggressively inserting

6    an object into the vagina of a prepubescent girl, a video

7    montage of numerous prepubescent boys performing oral sex on

8    adult men, and a video of an adult woman engaged in violent

9    sexual torture of a toddler, who was bond with rope and hung

10   upside down.  These devices include the following, and then

11   there is a list, A through N, of various electronic devices

12   including laptops, thumb drives, external hard drives, and

13   other items which I won't specify in greater detail but which

14   are all listed there.

15           Based on these facts and other information known to

16   the parties, Spearman agrees that had this case gone to trial,

17   the Court -- excuse me, the government would have proven beyond

18   a reasonable doubt as to count 3 of the second superseding

19   indictment that he engaged in a child exploitation enterprise

20   in violation of Title 18, United States Code, Section 2252A(g)

21   beginning in or around March 2018 and continuing through the

22   date of his arrest.

23           Now, I have already gone over the elements previously

24   to which there was no disagreement, so I won't recite that

25   further.

```
 1   BY THE COURT:

 2   Q    Did you hear everything I said, Mr. Spearman?

 3   A    Yes, Your Honor.

 4   Q    Do you agree that everything that is contained in this

 5   factual proffer which I read out loud is true and correct?

 6   A    Yes, I do, Your Honor.

 7   Q    Do you agree, sir, that it accurately reflects your

 8   conduct, in this case?

 9   A    Yes, ma'am.

10   Q    Do you also agree, sir, that the government could have

11   proven those facts beyond a reasonable doubt had this case gone

12   to trial?

13   A    Yes, sir [sic], I do.

14   Q    That's okay.

15         Now, did you talk to your attorney about the

16   government's evidence against you, and we talked about this

17   earlier, but I just want to ask again:  Did you talk to your

18   attorney about the government's evidence against you?

19   A    Yes, Your Honor.

20         THE COURT:  Mr. Berry, are you satisfied that your

21   client understands the charge against him in count 3 and the

22   consequences of his guilty plea to count 3?

23         MR. BERRY:  Yes, Your Honor.

24         THE COURT:  Mr. Berry, are you satisfied that there

25   has been a sufficient statement of factual basis with regard to
```

```
1    count 3?

2              MR. BERRY:  Yes, Your Honor.

3              THE COURT:  And finally, Mr. Berry, do you stipulate

4    that had the case gone to trial, the Court would have sent

5    count 3 to the jury?

6              MR. BERRY:  Yes, Your Honor.

7              THE COURT:  All right.  I, therefore, find that the

8    facts the government has set forth on the record in the

9    stipulated factual proffer are sufficient to establish the

10   offense of engaging in a child sexual exploitation enterprise,

11   as alleged in count 3 of the second superseding indictment.

12   BY THE COURT:

13   Q   Mr. Spearman, let me ask again:  Are you fully satisfied

14   with the representation you have received from your attorney?

15   A   Yes, Your Honor.

16             THE COURT:  Are there any other matters the Court

17   should address before soliciting the defendant's plea?

18             MR. SCHILLER:  Other than finding that it is

19   voluntary, Your Honor, no.

20             THE COURT:  All right.  Okay.

21             Mr. Berry?

22             MR. BERRY:  No, ma'am.

23   BY THE COURT:

24   Q   All right.  At this time, Mr. Spearman, I'm going to ask

25   how you plead to count 3.  Do you pled guilty or not guilty to
```

1   count 3?

2   A    Guilty, Your Honor.

3          THE COURT:  In the case of United States of America

4   versus William Michael Spearman, it is the finding of the Court

5   that the defendant is alert and intelligent, that he is fully

6   competent and capable of entering an informed plea in this

7   case, that he is aware of the nature of the charge and the

8   consequences of the plea, and that the plea of guilty is a

9   knowing and voluntary plea supported by an independent basis in

10  fact containing each of the essential elements of the offense,

11  and that the agreement presented to the Court was voluntarily

12  entered into and that both the plea and the agreement are not

13  the result of force or threats.

14          I also find that the defendant has entered the plea

15  and the plea agreement with the advice and assistance of

16  competent and effective counsel with whom he indicates he is

17  fully satisfied.

18          The plea of guilty to count 3 is therefore accepted,

19  sir, and you are now adjudicated guilty of count 3 of the

20  second superseding indictment.

21          The next step is for U.S. Probation to conduct a full

22  investigation, sir.  They will ask to speak to you in

23  preparation of that report, and you're entitled, of course, to

24  have your attorney present when you do so.  Once that report is

25  issued, then both sides will have the same amount of time

1    within which to file objections.  And then at sentencing, sir,

2    you would have the right to address the Court if you wish,

3    along with the right to have any witnesses or family members or

4    friends present to speak on your behalf.

5             When can we have sentencing, Ms. Casissi?

6             THE COURTROOM DEPUTY:  Yes, Your Honor; August 31st,

7    at 9:30.

8             THE COURT:  All right.

9             Mr. Berry, any conflicts with August 31st at 9:30?

10            MR. BERRY:  I don't think so; just one moment.

11            No, ma'am.

12            THE COURT:  All right.  Sentencing is set for

13   August 31st at 9:30 in the morning.

14            Mr. Spearman, do you have any questions at this time?

15            THE DEFENDANT:  No, Your Honor.

16            THE COURT:  Anything further from the defense?

17            MR. BERRY:  No, ma'am.

18            THE COURT:  Anything further from the government?

19            MR. REYNOLDS:  No, Your Honor.

20            THE COURT:  All right.  The defendant remains

21   detained pending sentencing.

22            Mr. Spearman, I will see you at the end of August.  I

23   do wish you well.

24            In terms of advising the jurors that their services

25   are no longer needed, Mr. Berry, do you think that needs to

```
 1    happen here in the courtroom or do you recommend any other

 2    procedure?

 3            MR. BERRY:  Your Honor, I think they can be let go

 4    without coming back into the courtroom.

 5            THE COURT:  Okay.  All right.

 6            Well, then, we will take a brief recess -- actually,

 7    we will not take a recess.  I thought the jurors were coming

 8    in, but we will take care to notify them separately.

 9            I will see you, sir, at the end of August, and I wish

10    you all the best.

11            All rise.

12        (PROCEEDINGS ADJOURNED AT 3:47 P.M.)

13                    C-E-R-T-I-F-I-C-A-T-E

14            I hereby certify that the foregoing is

15        an accurate transcription and proceedings in the

16        above-entitled matter.

17
         7/24/2023                    /s/DIANE MILLER
18        DATE                  DIANE MILLER, RMR, CRR, CRC
                                Official Court Reporter
19                              United States District Court
                                101 South U.S. Highway 1
20                              Fort Pierce, FL  34950
                                772-467-2337
21

22

23

24

25
```

Monday, June 12, 2023.



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Monday, June 12, 2023.

UNITED STATES vs. WILLIAM M. SPEARMAN

**BY MR. BERRY:**
**[5]**  48/6 57/2
58/10 63/16 64/1
**BY MR.**
**SCHILLER: [5]**
47/11 50/9 53/23
56/4 61/17
**BY THE COURT:**
**[50]**  71/4 72/20
73/15 74/3 75/6
75/17 77/7 78/5
79/22 81/16 82/2
83/10 84/10 85/9
86/22 88/3 89/14
91/13 92/17 94/8
96/2 98/3 99/18
101/5 104/9
106/11 107/3
108/17 109/6
110/2 110/20
112/16 114/8
115/2 127/19
131/25 132/24
133/13 134/24
136/17 139/22
142/7 142/17
144/5 148/10
150/1 151/25
158/1 159/12
159/23
**MR. BERRY: [59]**
3/21 4/10 4/15 5/5
6/18 7/5 8/9 8/24
9/12 9/18 10/19
11/8 17/5 23/25
34/24 43/20 44/11
44/18 45/7 46/7
48/4 49/1 49/3
51/15 56/25 60/7
63/13 65/17 66/17
67/11 70/4 70/6
116/19 116/23
118/15 118/18
124/13 125/3
126/11 126/22
130/25 131/4
131/23 133/3
134/22 136/16
142/16 144/4
148/4 150/12
151/18 152/11

**BY MR. BERRY:**
158/23 159/2
159/6 159/22
161/10 161/17
162/3
**MR. REYNOLDS:**
**[12]**  3/8 3/17 5/2
5/11 8/18 16/12
18/7 34/14 34/18
148/6 152/14
161/19
**MR. SCHILLER:**
**[62]**  5/23 7/21
9/11 23/23 43/21
45/5 46/5 47/7
48/1 50/7 53/19
56/3 56/23 60/4
61/15 63/9 65/15
66/15 67/9 68/10
69/8 116/8 117/25
118/12 119/1
119/5 119/8
119/11 119/15
119/19 119/22
119/25 120/3
120/6 120/8
120/11 120/14
120/18 120/23
121/6 121/10
121/13 121/19
122/1 124/11
125/13 126/25
131/11 135/4
138/12 138/24
139/6 139/9
141/25 143/9
148/7 149/11
150/16 150/21
151/13 152/15
159/18
**MS. McCRAE:**
**[18]**  5/14 68/3
119/3 119/7
119/10 119/13
119/17 119/21
119/24 120/2
120/5 120/7
120/10 120/13
120/16 120/20
120/25 121/7
**PROSPECTIVE**
**JUROR: [100]**
19/8 19/11 19/14
19/17 19/19 19/23

20/1 20/3 20/6
20/9 20/17 20/21
21/1 21/6 21/11
21/16 21/21 22/4
22/8 22/16 22/18
23/1 23/9 23/12
24/7 24/10 24/14
24/19 30/16 30/19
31/10 31/13 31/24
32/5 32/11 32/19
32/25 33/2 33/21
33/24 34/9 35/18
36/10 36/12 37/1
37/6 37/8 37/10
37/13 37/25 40/5
40/12 40/14 40/17
40/22 41/1 41/4
41/8 44/7 44/10
45/23 46/21 46/24
47/9 49/12 49/17
49/19 49/21 51/23
52/3 52/5 52/8
52/12 52/16 52/22
52/25 53/3 53/11
53/21 59/11 59/16
59/23 60/15 60/17
60/20 61/10 65/5
66/5 66/9 67/1
67/4 81/14 87/24
89/11 91/11 95/24
99/16 108/15
114/24 115/8
**THE COURT:**
**[289]**
**THE**
**COURTROOM**
**DEPUTY: [7]**  3/4
64/24 67/16 122/7
124/16 125/24
161/6
**THE**
**DEFENDANT: [2]**
127/13 161/15
**THE WITNESS:**
**[3]**  49/2 53/6 66/3

**$**
**$100 [2]**  139/1
141/3
**$250,000 [2]**
138/19 140/23
**$3,000 [1]**  143/25
**$35,000 [2]**

139/18 141/12
**$5,000 [2]**  139/13
141/7

**'**
**'09 [1]**  54/23
**'10 [1]**  54/23
**'90s [3]**  97/13
105/23 129/8

**/**
**/s/DIANE [1]**
162/17

**1**
**10 [4]**  5/11 82/3
143/10 144/2
**100 [1]**  153/15
**101 [2]**  1/16
162/19
**109 [1]**  1/20
**10:00 [2]**  6/13
6/15
**10:30 [1]**  42/4
**11 [10]**  44/7 45/14
46/12 83/11
119/16 121/4
122/24 143/10
144/2 150/23
**110 [3]**  134/15
139/15 143/15
**111 [1]**  128/10
**11:06 [1]**  67/23
**11:17 [1]**  67/21
**11:18 [1]**  67/24
**11:25 [1]**  70/17
**12 [11]**  1/4 2/4
46/15 46/20 49/4
49/8 84/8 96/25
119/20 121/4
122/25
**123 [1]**  2/6
**127 [1]**  2/7
**12:15 [1]**  115/20
**12:25 [1]**  115/16
**12:29 [1]**  115/21
**12:30 [1]**  117/7
**12:43 [1]**  123/19
**12:44 [1]**  124/17
**13 [3]**  37/11 85/7
86/19
**130 [1]**  69/10
**13th [1]**  155/16

**14 [9]**  49/10 49/17
51/20 119/23
121/4 122/25
141/25 142/2
142/9
**143 [1]**  8/19
**146 [1]**  151/1
**15 [10]**  5/11 5/16
10/10 43/4 87/24
89/9 125/8 129/11
141/25 142/19
**15th [1]**  155/25
**16 [5]**  79/24 89/12
101/14 149/12
150/7
**16-year-old [1]**
35/22
**16th [1]**  21/25
**17 [4]**  91/10
149/12 149/19
150/7
**18 [12]**  92/21
134/15 134/19
135/6 138/25
139/3 139/12
139/18 141/4
143/13 152/24
157/20
**185 [1]**  1/7
**18th [1]**  135/9
**19 [2]**  94/6 94/11
**1992 [1]**  83/23
**19th [1]**  114/12
**1:43 [3]**  123/20
124/6 124/15

**2**
**20 [9]**  93/12 93/21
94/15 95/25 96/4
125/8 138/14
140/2 141/18
**2007 [1]**  103/23
**2009 [1]**  54/25
**2010 [2]**  69/11
105/23
**2018 [4]**  134/9
135/10 153/19
157/21
**2022 [9]**  134/10
135/10 154/5
154/21 155/6
155/16 155/25
156/13 156/21

Page 165

UNITED STATES vs. WILLIAM M. SPEARMAN · Document 170 · Entered on FLSD Docket 08/01/2023 · Page 165 of
Case 9:22-cr-80173-AMC · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · 185

**2**

**2023 [2]** 1/4
162/17
**21 [2]** 98/4 98/5
**21-year-old [1]**
72/8
**22 [2]** 99/19 99/20
**22-80173-CR-CAN
NON [1]** 1/2
**22-80173-Crimina
l [1]** 11/25
**22-Criminal-8017
3 [1]** 3/5
**2252A [3]** 134/20
135/7 157/20
**2256 [1]** 152/25
**2259 [1]** 143/13
**2259A [3]** 139/19
141/12 143/14
**23 [6]** 51/21 52/2
59/6 82/10 101/8
108/25
**2337 [2]** 1/25
162/20
**24 [5]** 22/23 23/9
60/11 102/15
102/18
**25 [5]** 93/21 99/23
104/11 109/15
112/2
**25th [1]** 154/21
**26 [7]** 33/20 59/7
59/9 106/12 120/1
121/4 122/25
**27 [2]** 107/4 155/6
**28 [3]** 60/12 65/1
108/15
**29 [5]** 32/3 109/7
120/4 121/4
122/25
**2:25 [1]** 124/18
**2:27 [2]** 125/18
125/25
**2:56 [1]** 126/1
**2nd [3]** 1/20
135/10 156/21

**3**

**30 [4]** 20/5 120/6
121/4 122/25
**3013 [2]** 138/25
141/5
**3014 [2]** 139/12

**31 [1]** 110/18
**3100 [1]** 1/16
**31st [3]** 161/6
161/9 161/13
**32 [1]** 112/14
**33 [5]** 19/6 114/6
120/9 121/4
122/25
**34.all [1]** 114/23
**34950 [3]** 1/17
1/21 162/20
**35 [1]** 100/17
**38 [1]** 110/24
**3:05 [1]** 125/19
**3:47 [1]** 162/12

**4**

**40 [6]** 21/20 67/6
120/12 121/4
122/25 124/23
**42 [11]** 20/24
21/14 30/12 34/13
36/4 65/2 65/5
65/21 120/15
121/4 123/1
**43 [6]** 65/22 66/22
72/23 120/15
121/4 123/1
**45 [2]** 34/13 35/17
**467-2337 [1]** 1/25

**5**

**50 [10]** 6/7 40/20
41/1 66/23 67/15
68/22 117/13
120/19 121/5
123/1
**5:15 [1]** 8/13
**5:30 [2]** 9/7 18/23

**7**

**7/24/2023 [1]**
162/17
**71 [1]** 2/5
**721 [1]** 69/10
**74 [1]** 151/7
**772 [1]** 1/25
**772-467-2337 [1]**
162/20

**8**

**80173 [1]** 3/5
**8th [1]** 8/19

**9**

**9:00 [3]** 6/12 6/16
18/23
**9:16 [1]** 10/12
**9:30 [4]** 21/22
161/7 161/9
161/13
**9:36 [1]** 10/13
**9:38 [1]** 11/21

**A**

**A.M [8]** 6/12 6/13
6/15 10/12 11/21
67/23 67/24 70/17
**Abilify [1]** 129/23
**ability [40]** 29/13
31/21 59/13 68/16
72/15 73/8 75/1
76/13 81/1 81/10
83/1 86/16 87/14
88/20 89/5 90/22
91/6 92/11 93/16
94/3 95/12 97/3
97/8 97/24 99/10
100/25 102/7
102/11 103/20
104/4 105/7 106/2
106/6 108/10
109/20 112/9
113/20 114/3
130/2 137/16
**above [5]** 145/15
147/25 156/15
156/24 162/16
**above-entitled [1]**
162/16
**absence [1]**
117/3
**absolutely [2]**
118/23 133/25
**abuse [8]** 49/23
152/25 154/11
154/14 154/23
155/8 155/18
156/2
**accept [1]** 39/8
**acceptable [2]**
39/3 79/17
**accepted [2]**
138/2 160/18
**accepting [8]**
26/13 27/9 27/16
28/6 28/20 38/22

39/10 42/1
**accessed [5]**
154/12 154/24
155/9 155/19
156/3
**accident [2]**
97/14 97/14
**accommodate [4]**
6/13 11/3 11/5
45/6
**accommodating
[1]** 117/10
**accompanied [5]**
154/10 154/23
155/7 155/18
156/1
**accordance [1]**
141/4
**accounts [1]**
78/19
**accuracy [1]** 29/8
**accurately [2]**
151/16 158/7
**accusation [1]**
15/18
**accusatory [1]**
26/3
**accused [3]**
15/16 25/7 57/3
**accuser [1]** 26/17
**act [1]** 27/7
**acts [2]** 153/9
156/18
**addiction [2]**
130/8 130/11
**addition [4]**
138/17 140/8
143/22 149/16
**address [8]** 9/15
10/17 38/4 44/12
151/3 151/3
159/17 161/2
**adequate [1]** 6/8
**adequately [1]**
144/3
**ADJOURNED [1]**
162/12
**adjudicated [2]**
138/3 160/19
**adjudication [3]**
79/10 79/14 138/4
**adjusted [1]** 8/7
**adjustments [1]**

5/4
**administer [1]**
59/18
**Administration
[3]** 96/11 96/13
97/2
**administrative [1]**
142/23
**administrator [3]**
107/7 153/17
156/15
**admission [2]**
41/18 137/18
**admit [1]** 91/20
**admonitions [1]**
124/5
**adult [12]** 35/22
72/6 154/16 155/1
155/2 155/11
155/22 156/7
157/3 157/5 157/8
157/8
**advance [1]** 14/20
**advanced [3]**
40/8 41/6 41/9
**adverse [2]**
146/21 146/25
**advertise [2]** 16/2
33/12
**advertised [2]**
135/8 156/17
**advertisement [6]**
42/20 135/13
135/17 135/22
136/1 152/23
**advice [2]** 133/24
160/15
**advocate [1]**
49/22
**advocated [1]**
49/25
**advocating [1]**
49/23
**aerospace [1]**
84/15
**Aesthetician [1]**
101/25
**affairs [2]** 14/21
27/8
**AFPD [1]** 1/19
**afraid [1]** 59/25
**afternoon [8]**
20/3 21/18 49/18

# A

**afternoon... [5]**
110/3 110/3
110/21 112/17
116/4

**age [1]** 153/9
**aged [2]** 157/3
157/4
**agency [3]** 55/16
96/10 149/22
**agent [15]** 3/11
16/19 18/10 18/11
18/12 18/13 18/14
18/15 18/16 90/15
154/12 154/24
155/9 155/19
156/3
**agents [1]** 29/25
**ages [1]** 155/4
**aggressively [1]**
157/5
**agreement [55]**
119/2 119/5 119/8
119/12 119/15
119/19 119/22
119/25 120/3
120/8 120/11
120/14 120/18
125/4 125/6
125/11 126/6
126/7 126/14
126/21 131/3
131/4 131/6
131/18 131/22
134/4 137/8 137/9
139/2 139/3
139/11 139/16
141/24 142/1
142/10 142/19
143/10 147/13
147/15 147/17
147/21 148/11
148/15 148/18
148/20 148/22
148/24 149/9
149/12 150/7
150/15 151/21
160/11 160/12
160/15
**AILEEN [2]** 1/10
12/2
**air [1]** 117/16

**airborne [1]**
84/16
**airline [1]** 19/2
**airplane [1]** 19/11
**Airport [2]** 74/9
74/10
**airports [1]** 74/13
**Alabama [1]**
156/23
**alcohol [2]**
130/11 130/14
**alert [1]** 160/5
**aliases [1]** 128/7
**allegations [5]**
15/25 33/11 33/16
35/10 35/15
**alleged [4]** 33/15
42/20 151/2
159/11
**alleges [4]** 16/1
25/15 134/6 134/7
**allotted [1]** 6/3
**allow [1]** 38/9
**allowed [4]** 68/13
68/19 133/8
145/22
**allowing [1]**
149/2
**alluded [1]** 14/18
**almost [1]** 101/13
**alternate [1]** 6/5
**alternates [1]** 6/6
**alternative [1]**
117/22
**although [3]** 7/2
12/18 126/9
**Amendment [2]**
11/12 142/25
**AMERICA [4]** 1/3
11/24 16/17 160/3
**American [1]**
128/22
**amount [7]** 14/19
57/22 68/12
139/13 141/7
143/23 160/25
**Ana [1]** 78/7
**anal [1]** 157/2
**Analyst [2]** 3/12
16/21
**anew [4]** 118/3
118/5 121/14
123/17

**annotated [1]**
126/8
**answer [9]** 7/13
8/4 15/3 42/8
42/10 42/25
116/14 121/10
127/20
**answers [4]** 7/1
15/5 34/22 116/5
**anticipate [3]**
8/11 61/2 149/6
**anticipated [4]**
18/25 30/5 42/14
60/25
**anus [3]** 154/17
155/3 156/9
**anxiety [1]** 129/8
**anymore [1]** 33/4
**apologies [2]** 5/8
117/6
**apologize [2]**
65/7 139/10
**appeal [4]** 125/14
143/1 147/16
151/9
**appearance [1]**
3/6
**appearances [2]**
1/13 126/15
**appellate [2]**
125/15 150/25
**application [2]**
56/8 104/14
**apply [2]** 30/3
144/23
**applying [1]** 8/5
**appointed [1]**
146/16
**appointment [2]**
21/22 21/25
**appreciate [4]**
30/22 36/20 49/1
100/3
**apprehensive [1]**
12/24
**apprised [1]** 9/1
**approaches [1]**
44/11
**appropriately [1]**
61/4
**approximating [1]**
43/1
**Ardito [3]** 99/20

99/21 101/3
**area [1]** 45/15
**areas [1]** 104/17
**argument [1]**
57/13
**arguments [2]**
61/4 143/4
**army [2]** 37/11
96/25
**arrange [2]** 15/2
127/11
**arranged [1]** 23/3
**arrangements [2]**
9/24 21/4
**arrest [4]** 54/6
153/19 156/21
157/22
**arrested [1]** 41/18
**arrival [2]** 4/21
4/23
**arrived [1]** 70/23
**ascertain [1]** 8/21
**Asheville [1]**
113/17
**Ashlee [3]** 33/21
59/11 106/13
**aspects [1]**
141/23
**assembly [1]**
102/23
**assert [2]** 137/7
137/10
**assessment [6]**
139/1 139/13
139/17 141/3
141/7 141/11
**assessments [7]**
138/20 138/20
138/23 139/20
140/25 141/1
144/14
**assist [2]** 13/6
13/20
**assistance [3]**
21/8 146/16
160/15
**assistant [3]**
77/20 96/17
108/20
**assisting [1]**
16/22
**associate's [1]**
40/8

**associated [4]**
47/20 60/24
138/10 140/17
**association [1]**
102/6
**assume [5]** 5/23
12/22 56/5 111/3
152/5
**assuming [2]**
11/5 57/17
**assurances [2]**
131/2 131/20
**attend [1]** 55/9
**attendance [1]**
146/25
**attorney [17]** 1/15
52/18 85/13 86/2
86/12 114/18
127/10 132/13
132/16 132/19
133/21 133/23
144/22 158/15
158/18 159/14
160/24
**attorneys [11]**
3/16 12/10 16/10
23/19 35/7 35/12
47/5 50/4 65/13
66/8 67/20
**audibly [1]** 13/13
**audio [2]** 71/13
75/14
**August 13th [1]**
155/16
**August 15th [1]**
155/25
**August 31st [3]**
161/6 161/9
161/13
**AUSA [3]** 1/14
1/14 1/15
**authority [2]** 69/2
116/17
**authorization [1]**
125/15
**automatic [1]**
137/22
**automatically [6]**
47/15 50/15 50/20
56/14 56/14 63/5
**avoiding [1]**
45/11

**B**

baby [1]  20/21
background [17]
72/14 73/22 81/9
83/4 86/15 89/4
91/5 92/10 97/23
99/9 100/24 104/3
106/5 108/9 112/8
113/7 114/2
backgrounder [1]
94/2
Backlund [3]  3/12
16/20 18/16
backup [1]  22/2
bag [1]  88/6
bags [1]  100/6
bank [3]  102/20
103/13 110/8
banker [2]  110/8
110/11
banking [1]  110/9
Barbara [2]  19/6
114/10
basic [2]  40/22
40/23
basis [4]  55/21
127/8 158/25
160/9
bathroom [1]
82/10
beach [7]  31/14
73/1 74/9 74/22
80/20 134/10
156/16
bear [1]  14/14
bearing [1]  37/19
becomes [1]
121/21
beef [2]  91/15
91/20
behind [1]  56/18
belief [3]  7/18
59/15 61/7
believability [1]
29/19
belongings [1]
123/3
below [1]  145/18
bench [4]  34/17
35/8 43/13 44/14
benefit [2]  4/5
100/2

**BERRY [53]**  1/19
3/20 3/21 4/4 5/4
5/13 6/17 8/7 9/17
10/18 16/25 17/4
17/6 17/12 23/24
46/6 48/3 51/14
56/24 60/6 63/10
63/11 65/16 66/16
67/10 116/18
118/14 124/12
125/2 126/5
126/19 130/23
131/1 131/21
132/23 133/17
134/21 136/14
142/14 144/2
144/22 145/1
146/17 148/3
150/9 151/17
152/10 158/20
158/24 159/3
159/21 161/9
161/25
Berry's [1]  126/9
besides [1]  98/12
bet [1]  109/1
beyond [15]
15/20 25/13 25/17
26/19 26/25 27/5
28/3 28/14 37/21
136/20 136/25
146/12 152/20
157/17 158/11
Biandis [4]  46/20
84/11 84/12 84/13
biased [2]  47/19
47/21
Bill [9]  3/22 4/12
16/14 17/10 17/17
128/3 128/3 128/4
128/5
binding [2]  69/2
145/12
black [1]  7/4
Blake [1]  18/12
Blanford [1]
13/17
Bobby [1]  89/18
bodies [1]  62/1
bold [1]  7/4
bond [1]  157/9
Border [1]  96/6
born [3]  128/15

137/15 137/15
**Boston [1]**  87/6
bothers [1]  63/23
bottom [1]  152/8
bound [1]  156/6
box [6]  6/24
22/15 46/17 49/14
69/23 79/24
boy [4]  88/6
154/14 154/15
157/3
boy's [1]  154/17
boys [2]  36/18
157/7
Brenda [1]  75/19
brief [8]  15/24
17/25 34/14 60/3
61/13 115/15
126/12 162/6
broadly [1]  39/17
broker [1]  106/24
brother [9]  22/20
53/3 54/5 54/10
57/16 57/22 80/19
80/24 103/17
brother's [2]  53/7
53/24
buckle [1]  68/4
builder [2]  72/25
98/17
built [1]  4/19
burden [10]  15/20
25/22 26/16 26/18
26/24 27/13 28/2
28/4 37/20 146/12
business [22]
19/14 19/19 40/5
40/11 71/21 72/24
72/24 85/13 85/22
85/23 85/24 85/24
86/2 94/24 98/15
98/24 99/23 100/1
100/4 100/5 100/7
122/21
Byrd [2]  89/18
91/9

**C**

C-E-R-T-I-F-I-C-A-
T-E [1]  162/13
cabinetry [2]
98/10 98/23
calendar [2]  5/7

6/13
California [2]
20/10 93/12
camera [2]
155/15 156/10
candid [2]  15/4
65/9
candor [3]  36/2
62/22 66/12
CANNON [4]  1/2
1/10 12/2 57/25
capable [2]  8/5
160/6
capacity [4]  41/7
97/21 117/12
153/21
car [2]  73/20
97/14
career [2]  71/17
110/25
careful [1]  40/2
carefully [5]
17/22 26/23 27/4
122/23 127/5
caregiver [1]
20/20
Carol [1]  20/5
CAROLINE [3]
1/19 3/23 17/7
carpentry [1]
107/15
carries [1]  140/2
Carrillo [1]  92/21
carry [1]  25/11
Casissi [10]  13/5
46/13 49/9 64/22
69/3 115/17 121/8
122/6 123/8 161/5
cast [1]  148/25
catch [1]  91/17
causal [1]  143/24
caution [2]  8/3
41/19
cautionary [1]
10/6
CBP [3]  96/8 97/2
97/21
cells [4]  22/5 22/8
22/9 22/10
certify [1]  162/14
chairs [8]  40/21
68/19 70/6 70/9
70/10 70/11 70/12

117/17
challenges [1]
118/18
challenging [1]
51/11
chance [2]  63/11
69/16
Chancey [1]  3/12
Chancy [1]  16/21
Chapter [4]
134/14 139/15
139/16 143/15
charge [5]  8/11
13/18 134/25
158/21 160/7
charged [4]  26/8
32/15 143/19
146/4
charges [6]  26/4
26/19 33/11 42/19
132/13 135/5
chart [2]  6/20 7/2
cherished [1]
12/11
chief [1]  112/18
child [42]  16/2
16/3 16/4 21/1
33/13 33/14 42/16
42/20 49/23 53/6
55/20 57/3 60/22
61/1 62/19 66/9
134/8 134/13
135/6 135/8
135/13 135/14
136/5 136/5 136/8
136/9 136/11
143/19 152/23
152/25 153/2
153/5 153/9
153/10 153/12
153/24 154/9
154/19 156/18
156/24 157/19
159/10
childcare [1]
21/10
children [17]
20/16 20/20 33/25
35/20 36/12 36/17
49/25 50/13 51/3
51/10 72/4 72/6
154/11 154/24
155/9 155/19

# C

**children... [1]**
156/3
**children's [1]**
100/6
**chime [1]** 132/23
**chips [1]** 71/16
**choice [1]** 49/25
**chosen [23]** 13/2
25/3 26/21 34/3
36/23 61/8 73/24
75/2 76/14 77/2
81/2 81/11 83/1
86/17 89/6 92/12
97/4 102/11 104/4
106/2 108/10
112/10 124/4
**CHP [1]** 93/12
**Circuit [2]** 20/1
114/12
**circumstance [1]**
48/19
**circumstances [2]**
6/2 41/23
**citizen [3]** 12/14
129/1 137/14
**City [1]** 89/21
**civil [8]** 84/1
85/18 97/13
100/17 103/23
111/25 112/2
138/4
**civilian [1]** 68/8
**claim [2]** 142/24
142/25
**clarification [1]**
114/15
**clarify [2]** 31/18
48/9
**clarity [1]** 124/25
**CLAYMAN [4]**
1/15 3/9 16/14
16/15
**clean [2]** 22/11
153/24
**cleaning [1]**
94/24
**clear [6]** 52/12
56/10 118/9
118/22 126/17
150/18
**clerk [2]** 90/10

107/16
**Cleveland [3]**
22/19 109/11
109/14
**client [3]** 44/21
114/14 158/21
**client's [1]** 10/20
**Clinic [3]** 22/19
109/11 109/14
**close [26]** 47/3
54/5 68/24 71/24
72/11 73/4 74/20
76/9 79/3 80/17
85/3 87/5 88/16
88/18 90/13 93/10
95/2 99/1 100/13
102/3 103/2 105/1
108/2 110/14
113/13 155/23
**close-up [1]**
155/23
**closer [1]** 4/6
**closest [1]**
113/18
**clothes [1]** 68/8
**clothing [2]** 4/1
80/6
**cloud [3]** 38/9
62/11 62/14
**cloudy [1]** 112/21
**club [1]** 41/5
**CNA [1]** 107/22
**co [2]** 3/23 17/7
**co-try [1]** 17/7
**co-trying [1]** 3/23
**Coast [1]** 87/1
**COBOL [1]**
102/23
**code [15]** 39/25
41/2 41/8 102/23
102/23 134/15
134/19 135/7
138/25 139/12
139/18 141/4
143/13 152/24
157/20
**coding [2]** 40/22
40/23
**coerce [1]** 132/6
**coincide [1]** 4/21
**collage [1]**
155/21
**collages [1]**

154/13
**collating [1]** 6/9
**college [4]** 72/8
88/6 101/16
128/20
**Colloquay [1]** 2/7
**Colloquay/Chang
e [1]** 2/7
**comfortable [4]**
4/8 8/5 12/24
46/18
**comments [2]**
116/2 117/23
**commerce [5]**
135/23 135/24
136/2 136/3
136/10
**commercial [2]**
98/14 110/11
**Commission [1]**
144/19
**commit [1]**
143/21
**committed [3]**
16/1 134/17
135/11
**common [4]** 27/4
28/25 29/6 30/1
**communicate [3]**
29/2 29/3 56/7
**communications
[1]** 153/1
**community [2]**
12/16 75/22
**company [5]** 76/2
96/22 101/13
106/24 107/10
**compel [1]**
146/25
**competent [4]**
127/6 130/24
160/6 160/16
**complete [1]** 15/4
**comply [1]**
149/17
**comprehensive
[1]** 65/8
**computer [11]**
39/19 39/25 40/4
40/22 41/2 41/12
102/24 102/25
133/8 135/25
136/3

**computers [7]**
39/16 39/18 39/24
102/20 102/22
103/3 103/4
**concepts [3]**
15/23 25/19 38/4
**concern [7]** 10/20
19/10 23/8 23/17
43/16 44/21 48/25
**concerns [7]** 36/5
41/16 57/4 57/6
65/11 68/24 69/20
**concert [2]**
134/18 135/11
**conclude [1]**
120/21
**concluded [1]**
69/25
**conclusion [3]**
15/6 26/21 124/3
**concur [1]** 133/14
**condition [1]**
130/20
**conditional [7]**
125/14 137/8
147/15 150/17
150/19 150/24
151/16
**conditions [6]**
129/12 129/14
129/20 129/20
140/17 140/19
**conduct [11]**
42/16 42/17
105/18 123/25
135/20 135/21
143/19 156/14
156/24 158/8
160/21
**conducted [2]**
55/13 121/15
**conducting [1]**
39/25
**conference [4]**
8/11 34/17 43/13
44/14
**confess [1]** 7/18
**confesses [1]**
7/17
**confirm [2]** 21/15
151/23
**conflicts [1]**
161/9

**confront [1]**
146/21
**connect [1]** 39/19
**connected [1]**
57/23
**Conrad [1]**
102/18
**consents [1]**
150/23
**consequence [1]**
137/21
**consequences [7]**
38/19 127/7
137/20 141/17
144/15 158/22
160/8
**conservation [1]**
104/13
**considerable [1]**
14/19
**consideration [1]**
52/20
**consist [1]** 42/15
**consisted [1]**
154/10
**conspiracy [3]**
16/2 16/3 33/12
**constituting [1]**
134/16
**constitution [3]**
12/13 26/9 143/1
**constitutional [3]**
12/12 142/22
146/1
**constraints [1]**
69/6
**construction [12]**
74/13 82/7 82/8
82/11 89/22 94/18
98/14 98/16
101/11 101/15
101/18 104/19
**consume [1]**
122/21
**contain [1]** 153/8
**contained [6]**
131/22 136/11
148/18 156/24
157/1 158/4
**containing [2]**
154/13 160/10
**contains [4]** 8/2
8/16 8/20 147/22

**C**

contemplate [1]
142/1
contemplated [2]
131/12 143/18
contemplates [2]
134/5 150/19
contemporaneou
sly [1] 10/7
contents [1]
148/12
context [2] 30/8
48/20
continued [2]
70/20 122/9
continuing [3]
134/10 156/20
157/21
contraband [1]
132/21
contractor [6]
72/23 84/15 84/20
91/15 91/18
101/14
contradicts [1]
29/17
control [1] 104/17
convicted [1]
53/3
conviction [1]
53/8
convincing [1]
27/6
coordinating [1]
13/6
coordinator [1]
74/13
cop [4] 32/12
32/15 32/16 33/4
cops [2] 32/13
33/3
Corie [1] 46/20
corrections [1]
126/8
counsel's [1]
3/13
count [25] 132/3
132/4 134/5 134/6
135/3 135/5
136/15 137/11
137/25 138/10
138/13 139/14

140/2 143/18
147/18 157/18
158/21 158/22
159/1 159/5
159/11 159/25
160/1 160/18
160/19
country [3] 26/8
137/15 137/17
Counts [1]
147/19
County [11] 31/14
32/19 74/9 90/1
95/6 99/24 109/18
111/10 113/17
134/11 156/16
court [84] 1/1
1/24 2/4 2/5 4/4
5/24 7/16 10/5
12/9 12/17 12/25
13/7 13/9 13/16
13/20 14/25 21/17
34/2 34/20 34/24
35/5 35/11 39/7
43/23 43/24 44/3
44/4 44/15 44/20
44/20 45/8 55/3
55/9 60/19 66/8
67/3 67/20 68/12
68/15 69/1 69/4
69/9 69/10 69/10
69/12 69/14 69/14
69/17 72/9 87/9
100/3 114/21
116/10 116/11
116/13 118/1
118/2 122/19
130/21 132/21
132/25 133/3
138/15 138/18
140/5 140/23
143/2 143/22
145/4 145/13
145/15 145/20
149/1 149/1 149/4
150/16 157/17
159/4 159/16
160/4 160/11
161/2 162/18
162/19
Court's [16] 5/21
8/6 9/9 9/19 9/20
13/17 18/22 42/22

46/23 52/7 67/19
69/23 121/11
121/13 147/16
150/25
courthouse [3]
4/13 46/9 123/20
courtroom [61]
4/22 6/21 9/2
10/21 11/11 11/21
13/4 13/10 13/19
14/16 17/1 17/21
18/18 42/9 43/2
43/8 43/9 45/1
45/19 46/12 46/15
48/11 48/20 49/8
49/10 51/20 51/21
52/14 59/6 59/7
59/21 60/11 60/12
65/1 65/2 65/21
65/22 66/22 66/23
67/15 67/17 67/18
67/22 68/13 68/19
69/5 69/6 70/1
70/7 70/17 76/25
115/14 117/13
117/21 121/16
122/4 123/6 124/7
130/2 162/1 162/4
cover [3] 22/18
22/22 142/1
covered [3] 144/3
150/17 151/20
covering [2]
22/20 23/5
coworker [2]
22/22 23/9
coworkers [2]
22/20 22/25
CR [1] 1/2
Crawford [3]
104/11 104/12
106/8
CRC [1] 162/18
creating [1] 40/6
credibility [6]
29/1 29/8 29/12
29/21 30/2 30/7
credible [2] 31/6
32/8
crime [8] 7/17
7/18 26/8 36/16
45/23 53/4 53/5
136/25

crimes [2] 15/16
25/7
criminal [32] 3/5
11/25 16/17 25/21
26/2 61/23 72/10
73/18 79/8 81/6
84/1 84/2 85/1
85/19 86/12 88/24
91/3 92/5 95/16
97/17 99/6 100/19
105/11 106/1
108/4 111/18
111/25 112/4
113/22 117/14
144/21 150/22
critical [1] 124/2
cross [1] 146/21
cross-examine [1]
146/21
CRR [2] 1/24
162/18
cumbersome [1]
44/16
Curren [2] 91/11
92/14
curriculum [1]
41/7
customer [2]
78/19 103/12
Customs [1] 96/6
cut [2] 22/5 22/6
Cymbalta [1]
129/23

**D**

dad [1] 105/3
dairy [2] 91/15
91/20
Dalman [5] 60/15
61/14 64/20
108/15 108/18
Daniel [2] 18/15
85/13
data [2] 18/12
41/8
daughter [3] 67/4
90/15 90/19
David [5] 3/11
16/19 18/16 49/18
86/24
Davis [2] 3/12
16/21
dead [1] 62/1

deadlines [1]
142/24
dealt [2] 116/20
116/25
death [1] 23/13
Debinion [2] 96/4
96/5
decade [1] 129/9
decades [2]
83/18 103/1
decide [4] 12/16
14/15 41/20 147/7
decided [2] 3/15
147/8
decision [5] 14/8
38/9 47/18 127/5
127/6
decision-making
[2] 38/9 47/18
decisions [2]
41/22 50/1
dedicated [2] 9/3
152/23
deemed [2] 141/9
143/18
defendant [73]
1/7 1/19 8/2 15/15
15/18 15/21 16/1
17/16 25/6 25/7
25/10 25/13 26/5
26/6 27/14 27/23
27/25 28/5 28/10
28/17 33/11 41/16
41/17 41/20 42/2
50/15 56/14 61/6
62/5 63/6 67/25
72/11 73/19 79/9
81/7 86/12 88/25
91/3 92/7 95/17
97/18 99/7 100/22
105/12 105/17
108/5 111/19
113/23 124/20
126/4 126/17
127/14 127/16
132/22 134/7
134/12 134/14
135/8 135/10
135/21 136/7
136/8 138/13
139/14 139/16
142/2 143/11
149/13 149/19

Page 170

UNITED STATES vs. WILLIAM M. SPEARMAN
Case 9:22-cr-80173-AMC  Document 170  Entered on FLSD Docket 08/01/2023  Page 170 of

**D**

**defendant... [4]**
151/8 160/5
160/14 161/20
**defendant's [23]**
2/7 10/8 25/23
25/25 26/17 26/25
27/2 27/20 28/3
37/20 68/13 69/5
131/13 131/15
131/19 135/13
136/4 143/23
147/16 150/23
151/2 151/13
159/17
**defendants [1]**
143/4
**defender [2]**  1/20
114/11
**defender's [2]**
19/23 114/13
**defense [19]**  4/7
5/15 8/6 8/24 9/12
27/14 34/23 43/20
84/15 118/7
118/13 125/11
125/17 133/20
142/24 142/25
146/16 146/22
161/16
**defenses [5]**
137/4 137/7
137/10 142/22
143/5
**defined [2]**  16/5
152/24
**definite [1]**  47/23
**definition [1]**
26/22
**delay [3]**  4/9 4/18
68/7
**deliberate [1]**
58/2
**deliberation [1]**
26/11
**deliberations [3]**
28/1 38/8 100/18
**delivered [1]**
125/11
**democracy [1]**
12/12
**demoted [1]**

**denial [4]**  9/19
9/20 137/17 151/1
**Dennis [2]**  107/5
108/14
**dental [1]**  77/20
**denying [3]**  9/9
10/1 147/16
**depart [1]**  145/5
**department [12]**
16/21 18/10 74/9
74/10 74/12 87/7
90/1 90/8 90/9
95/7 95/9 103/18
**depending [2]**
53/12 118/6
**depends [1]**
50/17
**depict [1]**  154/15
**depicted [1]**
153/9
**depicting [7]**
42/17 154/14
155/1 155/11
155/21 155/22
156/5
**depiction [2]**
135/19 135/20
**deportation [1]**
137/17
**depression [1]**
129/11
**deprive [1]**  138/4
**deputy [7]**  4/22
13/4 13/19 52/14
52/17 67/17 88/18
**description [3]**
15/24 50/13 63/5
**descriptions [2]**
42/15 62/4
**descriptive [1]**
153/8
**deserved [1]**
53/14
**design [2]**  40/9
98/10
**designated [1]**
117/18
**designations [1]**
139/5
**designer [1]**
84/21
**despite [1]**  34/8

**detail [4]**  15/17
15/24 138/22
157/13
**detailed [1]**  150/6
**details [1]**  125/9
**detained [2]**
41/18 161/21
**determination [3]**
6/5 29/4 56/16
**determinations
[1]**  61/25
**determined [1]**
26/4
**Detroit [1]**  103/17
**developer [2]**
85/14 101/11
**development [4]**
86/3 98/15 103/4
103/6
**device [4]**  4/6
39/19 143/20
155/3
**devices [5]**  142/2
156/22 157/1
157/10 157/11
**diane [6]**  1/24
1/25 13/8 43/22
162/17 162/18
**difficult [16]**  19/1
21/3 21/13 23/3
32/22 37/16 38/6
42/18 48/18 53/8
59/16 59/17 66/13
68/21 73/23 83/5
**difficulties [1]**
77/10
**difficulty [8]**  24/2
24/22 26/13 27/9
27/16 38/22 39/9
60/24
**digest [1]**  69/16
**dire [6]**  2/3 5/19
5/21 8/8 12/7
13/25
**direct [1]**  11/16
**directed [2]**
149/24 153/22
**director [3]**  18/11
75/22 87/1
**disabilities [1]**
24/25
**disagree [1]**
38/25

**disagreed [1]**
39/12
**disagreement [2]**
118/23 157/24
**disclosures [1]**
34/19
**discovery [4]**
132/18 133/1
133/5 133/15
**discreet [1]**
148/20
**discussion [3]**
75/8 150/10
152/25
**dismiss [1]**
118/19
**dismissal [1]**
147/19
**Dismissed [1]**
123/6
**disorderly [2]**
105/18 105/24
**display [1]**  135/18
**displayed [4]**
154/25 155/10
155/20 156/4
**displaying [1]**
156/9
**dispositive [1]**
151/10
**disprove [1]**
27/15
**disregard [1]**
38/18
**distribute [4]**
9/15 16/3 33/12
135/18
**distributed [6]**
10/15 135/8 136/7
136/8 136/10
156/18
**distribution [6]**
42/20 76/1 96/22
107/9 136/4
152/23
**district [12]**  1/1
1/1 1/11 12/3 12/4
54/14 96/22
134/11 150/25
156/17 156/23
162/19
**dive [1]**  43/17
**dock [2]**  115/5

**115/5
**docket [3]**  8/19
151/1 151/7
**document [3]**
8/18 147/23 152/3
**documents [2]**
133/8 133/10
**DOJ [1]**  3/12
**domestic [1]**
49/23
**Donald [1]**  18/13
**Donna [1]**  92/21
**double [1]**  142/24
**doubt [24]**  15/21
25/13 25/18 26/19
26/23 27/1 27/2
27/3 27/3 27/6
28/3 28/14 28/15
37/21 39/6 58/17
58/20 58/22
136/20 137/1
146/12 152/21
157/13 158/11
**download [1]**
153/5
**Drew [1]**  18/10
**drill [1]**  140/1
**driver [4]**  83/16
83/17 115/5 115/5
**drug [2]**  105/17
105/23
**duties [3]**  12/14
13/1 42/24
**duty [4]**  25/2
36/23 48/23 96/7

**E**

**e-mail [2]**  9/9
56/8
**early [1]**  97/13
**easier [2]**  13/12
45/10
**education [1]**
87/25
**Edward [1]**  82/4
**effective [1]**
160/16
**efficiency [1]**
151/22
**efficient [1]**
125/20
**efforts [1]**  132/25
**eight [5]**  8/16

**E**

eight... [4] 60/15
147/22 147/22
147/25
Eighth [1] 142/25
ejaculating [2]
155/11 157/3
election [2] 99/24
99/25
electrical [4]
85/24 86/2 91/15
91/18
electronic [4]
39/19 142/2
156/22 157/11
elects [1] 27/25
elementary [1]
88/13
elements [9]
135/3 135/5 136/7
136/15 136/18
136/19 136/25
157/23 160/10
elicit [1] 34/19
eliminated [1]
68/14
elongated [1]
154/17
elsewhere [3]
85/20 124/1
134/11
emergency [1]
49/22
emotional [1]
34/1
emotions [2] 38/9
59/25
emphasize [1]
141/17
employment [10]
31/6 31/20 32/9
74/24 74/25 75/1
76/12 87/14 93/14
97/1
encourage [1]
125/19
enforce [1] 13/17
enforcement [78]
29/25 30/8 30/10
30/20 31/1 31/5
31/19 32/8 32/17
32/23 55/11 65/12

70/11 71/22 71/25
73/2 73/5 74/18
74/21 75/1 76/7
76/10 79/1 79/4
80/9 80/15 80/18
81/21 82/18 82/20
87/3 87/11 87/18
88/8 88/14 88/17
90/3 90/11 90/14
90/17 90/18 90/20
90/21 91/24 93/2
93/8 93/11 94/19
94/25 95/3 96/24
98/18 99/2 100/9
100/14 102/1
102/4 103/7
103/14 103/16
104/22 105/2
105/6 106/19
107/23 107/25
108/22 109/16
110/12 111/5
111/12 111/15
113/2 113/11
113/14 113/18
117/18 153/20
Enforcer [2]
128/12 128/13
engage [2] 153/1
156/23
engaged [10]
40/10 101/12
126/16 134/8
134/13 135/19
156/14 157/2
157/8 157/19
engaging [3] 16/4
33/13 159/10
engineer [1]
75/14
Engineering [1]
90/1
English [6] 24/3
24/11 24/23 77/14
77/15 128/23
ensure [1] 18/3
ensured [1]
153/25
entail [2] 15/25
137/21
entails [1] 13/24
enter [6] 10/16
26/12 126/19

130/24 131/9
131/16
enterprise [9]
16/5 33/14 134/8
134/14 135/6
135/14 136/6
157/19 159/10
enters [9] 11/21
46/15 49/10 51/21
59/7 60/12 65/2
65/22 66/23
entirely [1] 56/10
entirety [1]
148/15
entitled [2]
160/23 162/16
entry [4] 8/19
150/24 151/1
151/7
equal [1] 153/20
equip [2] 45/21
65/24
equipment [1]
94/13
equitable [1]
142/22
erect [1] 155/22
essential [5]
36/22 135/3 135/5
136/25 160/10
essentially [2]
14/1 68/23
establish [1]
159/9
estate [3] 85/14
86/3 101/11
estimate [3] 4/25
144/25 145/2
evaluate [4] 14/4
29/7 29/21 64/12
evaluating [2]
28/25 59/20
evening [1] 18/24
everybody [8]
9/10 13/15 35/9
43/3 45/10 105/14
121/9 122/6
evidence [55]
10/3 10/5 14/5
15/18 25/9 26/4
27/5 27/23 29/16
29/18 29/22 31/21
31/23 34/5 38/15

39/1 39/5 39/17
41/17 41/19 41/23
42/14 48/15 48/16
48/17 50/17 50/22
51/6 52/20 52/24
53/10 56/15 57/22
59/20 59/24 61/3
61/5 61/24 62/3
63/7 63/8 64/8
64/13 73/8 76/24
90/22 99/11 147/8
147/9 147/17
151/1 151/4 151/9
158/16 158/18
ex [2] 109/18
109/19
ex-husband [1]
109/18
ex-husband's [1]
109/19
Examination [44]
2/4 2/5 47/10 48/5
50/8 53/22 57/1
61/16 63/15 71/3
72/19 74/2 75/5
75/16 77/6 78/4
79/21 81/15 82/1
83/9 84/9 85/8
86/21 88/2 89/13
91/12 92/16 94/7
96/1 98/2 99/17
101/4 102/16
104/8 106/10
107/2 108/16
109/5 110/1
110/19 112/15
114/7 115/1
127/18
examinations [1]
39/25
examine [1]
146/21
exceed [2] 139/18
141/12
excellent [1]
106/14
exception [1]
137/7
exchange [2]
135/18 147/18
exclude [2] 8/22
27/1
exclusion [1]

28/14
excuse [10] 8/16
15/10 24/12 31/11
44/13 45/13 63/11
84/13 143/4
157/17
excused [6] 46/9
49/4 60/9 70/2
122/12 122/23
execute [1] 59/18
executed [4]
126/5 126/13
126/14 147/21
execution [1]
151/5
exists [2] 25/15
43/9
exit [2] 64/20
123/6
exited [2] 45/19
115/14
exits [5] 46/12
49/8 51/20 59/6
124/7
experience [11]
14/9 32/11 32/21
34/18 39/24 39/24
41/13 73/22 81/9
95/10 105/25
experienced [1]
64/6
experiences [16]
56/13 72/15 83/4
86/15 89/4 91/6
92/11 94/2 97/23
99/10 100/24
104/3 106/5 108/9
112/9 114/2
expert [1] 103/2
explicit [2] 42/15
135/20
exploitation [15]
16/5 33/14 50/24
134/8 134/14
135/6 135/14
136/5 154/11
154/24 155/8
155/19 156/2
157/19 159/10
expose [1]
155/15
exposed [1] 51/8
expound [2] 28/9

**E**

expound... [1] 131/10
express [4] 12/5 23/17 49/20 49/21
expressed [1] 34/8
extent [1] 148/25
external [1] 157/12
extra [1] 40/20
extremely [2] 30/19 48/18
eye [1] 155/13

**F**

facility [4] 133/7 135/23 136/1 136/9
fact [8] 25/14 26/10 62/14 117/15 127/7 132/3 150/17 160/10
factor [1] 38/8
factors [4] 14/6 29/12 29/19 31/7
facts [9] 14/14 14/17 37/18 38/9 147/9 152/20 157/15 158/11 159/8
factual [12] 125/5 125/5 126/6 126/14 126/21 127/8 151/13 152/2 152/19 158/5 158/25 159/9
fails [1] 28/4
failure [1] 149/17
falls [1] 7/22
false [2] 32/14 127/23
falsely [3] 7/17 7/18 127/21
family [20] 11/3 21/9 30/20 53/13 67/5 68/13 71/24 72/11 73/4 76/9 82/22 85/2 85/24 89/2 103/16 105/5 108/2 109/17

farmer [1] 91/20
fashion [2] 43/5 80/7
Fast [1] 32/13
Fast-forward [1] 32/13
FBI [18] 3/11 16/20 18/9 18/11 18/12 18/12 18/13 18/14 18/15 55/17 55/18 55/19 90/15 154/12 154/24 155/9 155/19 156/3
February 6 [1] 154/5
federal [10] 6/3 15/16 16/1 16/15 53/25 54/16 56/1 83/24 149/17 150/22
feelings [3] 30/10 30/25 38/11
fellow [3] 28/16 49/6 115/13
felony [2] 134/16 137/25
field [7] 78/18 82/12 88/5 101/15 103/3 104/13 104/18
fields [1] 86/1
Fifty [2] 67/1 128/18
Fifty-seven [1] 128/18
figure [1] 37/6
file [2] 153/4 161/1
files [2] 153/10 154/10
fill [2] 22/25 23/1
filled [1] 70/23
final [3] 10/16 121/2 125/16
finally [4] 15/6 91/5 141/11 159/3
findings [1] 10/7
firearm [1] 138/7
Fisher [1] 18/13
fit [1] 4/16
FL [1] 162/20

flip [2] 139/22 147/6
floor [5] 22/20 45/22 117/23 122/14 123/4
FLORIDA [10] 1/1 1/6 1/17 1/21 85/20 85/21 134/11 149/20 156/16 156/17
flsd.uscourts.gov [1] 1/25
fly [1] 22/21
focus [1] 59/23
focusing [1] 40/3
folks [4] 9/2 43/7 95/11 118/22
follow-up [3] 23/20 47/7 61/15
font [1] 7/4
force [2] 132/6 160/13
forced [1] 64/4
forego [3] 131/15 131/19 137/6
foregoing [1] 162/14
foreign [5] 135/23 135/24 136/2 136/3 136/10
forensic [1] 39/25
foreperson [7] 84/3 93/22 97/14 103/24 112/1 112/3 112/4
forfeit [3] 131/14 142/2 142/10
forfeiting [1] 131/15
forfeiture [15] 131/5 131/7 131/13 131/19 138/19 141/23 141/24 142/1 142/18 142/23 143/2 143/5 144/15 148/19 148/20
forgot [1] 96/14
form [3] 5/9 21/9 148/25
formal [1] 7/2
formally [1] 9/19

format [1] 154/9
former [2] 87/13 109/19
FORT [6] 1/6 1/17 1/21 96/23 107/13 162/20
Forty [1] 66/5
Forty-three [1] 66/5
four-day [1] 4/25
Fox [1] 112/18
framework [1] 12/15
frankly [1] 68/17
free [3] 46/10 69/24 132/2
freed [1] 118/10
Friday [1] 21/22
friend [6] 52/9 52/13 72/11 85/3 88/18 113/18
friends [36] 21/9 54/7 71/24 73/4 73/6 74/20 74/23 76/9 79/3 80/17 80/20 82/22 82/23 87/5 87/17 88/16 90/13 90/16 90/18 90/20 93/10 95/2 95/9 99/1 100/13 102/3 103/16 105/1 108/2 109/16 110/14 111/14 113/13 113/13 113/15 161/4
friends' [1] 74/25
friendship [2] 52/17 88/19
friendships [6] 73/7 80/22 82/24 95/10 102/6 113/19
Frito [2] 71/9 71/10
Frito-Lay [2] 71/9 71/10
front [5] 13/8 24/4 31/9 117/17 152/5
fruit [1] 151/5
fulfilling [1] 38/10
full-time [1] 23/2
fund [1] 98/24

**G**

galleries [1] 117/15
gallery [6] 6/25 7/1 68/23 69/22 70/11 117/13
Galloway [5] 19/7 19/9 20/4 114/10 115/7
gather [2] 115/17 123/3
gathering [1] 45/11
gears [2] 39/15 41/15
gender [1] 153/9
general [6] 2/4 6/24 33/10 33/14 101/14 132/15
generalized [1] 7/23
gentleman [1] 57/23
gentlemen [4] 12/1 16/12 70/20 122/8
Georgia [1] 69/10
gets [1] 21/24
girl [6] 155/4 155/13 156/5 156/8 157/4 157/6
girls [2] 36/18 155/23
gives [1] 76/22
glance [1] 64/5
goal [2] 14/7 76/16
Goetz [6] 21/15 30/14 36/7 65/5 65/14 65/18
golf [1] 80/8
golfer [1] 91/20
Gonzalez [1] 85/13
Gonzalez-Quevedo [1] 85/13
goodies [1] 100/6
govern [1] 141/24
governing [1] 8/2
government [45] 3/7 3/16 7/20 9/11 10/4 16/11 17/2

**G**

**government...**
**[38]** 17/19 18/5
23/22 25/12 25/17
26/18 27/12 28/2
28/4 28/13 28/16
29/25 30/6 37/20
41/17 43/21 45/4
61/6 61/13 65/15
121/1 126/25
131/5 131/13
131/14 131/19
135/15 136/6
136/19 136/20
136/24 142/11
150/23 151/8
157/17 158/10
159/8 161/18
**government's [9]**
8/15 15/20 25/22
26/24 27/1 146/11
147/18 158/16
158/18
**grand [1]** 134/13
**grandchild [1]**
36/14
**grandchildren [2]**
20/12 110/5
**grandfather [1]**
105/3
**granny [1]** 20/13
**grant [1]** 98/24
**granting [1]**
151/9
**graphic [4]** 42/15
51/2 61/2 84/21
**grateful [1]**
122/10
**gratitude [1]** 12/5
**great [5]** 8/3
25/11 41/19 80/4
84/19
**greater [1]** 157/13
**GREG [1]** 1/14
**Gregory [3]** 3/9
16/15 110/23
**grew [1]** 33/2
**groundskeeper**
**[1]** 76/6
**group [3]** 44/2
55/25 59/4
**guaranteed [1]**

26/9
**guidelines [12]**
28/25 29/6 29/6
30/1 144/18
144/20 144/23
145/5 145/7
145/12 145/16
145/18
**Guidry [2]** 21/20
22/13
**guilt [8]** 26/17
26/25 27/2 28/3
37/21 137/7 138/4
146/12
**guilty [62]** 15/19
15/21 25/11 25/13
25/14 26/7 26/12
28/5 28/17 47/16
47/16 50/16 50/16
51/1 51/4 56/14
56/15 58/4 62/5
62/5 63/6 63/6
126/20 127/5
127/7 127/8
130/24 131/2
131/21 132/2
132/3 132/4 132/7
134/5 136/24
137/3 137/6 137/9
137/16 137/19
137/20 137/21
137/25 138/3
139/15 141/17
143/12 143/14
145/23 146/2
146/4 147/18
149/2 149/13
150/24 158/22
159/25 159/25
160/2 160/8
160/18 160/19
**gun [3]** 62/1 62/2
62/2
**gunpoint [1]**
45/24

**H**

**H-A-R-R-I-S [1]**
84/18
**Hall [4]** 49/18
50/10 51/16 86/24
**handle [1]** 62/18
**handled [1]** 6/14

**handy [1]** 109/1
**handyman [1]**
101/19
**happy [2]** 69/7
116/3
**Harris [2]** 36/10
84/15
**heads-up [1]** 10/5
**health [1]** 129/20
**hearing [14]** 7/6
7/10 9/21 25/1
29/22 29/24 29/24
34/1 43/22 50/14
57/13 60/21 63/4
67/17
**hearings [2]** 55/9
96/14
**heart [2]** 25/20
58/6
**heavy [2]** 26/24
94/13
**hello [4]** 59/9
65/23 66/24 99/19
**herbicide [1]**
104/13
**hereby [1]** 162/14
**hesitate [2]** 15/1
125/20
**hesitation [6]**
27/7 28/6 37/23
42/1 76/19 76/22
**Hi [4]** 61/19 61/20
94/10 99/20
**high-ranking [1]**
156/15
**higher [5]** 31/15
31/16 69/21 145/6
145/21
**highly [1]** 34/19
**highway [3]** 1/16
93/15 162/19
**history [1]** 57/21
**hold [11]** 14/9
28/10 28/19 30/12
31/16 60/9 66/19
67/12 68/1 138/5
139/4
**Holden [3]** 87/24
88/1 89/8
**home [14]** 20/15
21/2 21/3 39/20
82/17 98/16 109/1
131/5 131/7

131/13 131/15
131/20 148/19
156/19
**Homeland [2]**
18/14 55/17
**Honor [124]** 3/8
3/11 3/17 3/21
3/25 5/2 5/11 5/15
6/18 7/6 7/21 8/18
9/11 10/19 18/7
23/23 34/14 34/18
44/11 46/5 46/7
60/4 60/7 64/24
65/15 66/15 67/9
67/16 68/3 69/17
86/4 86/10 86/18
88/21 92/13
109/21 119/5
119/8 119/12
119/15 119/19
119/22 119/25
120/3 121/6 121/7
122/7 124/11
125/3 126/22
127/1 127/13
127/24 128/8
128/24 129/2
129/15 129/21
129/25 130/4
130/10 130/12
130/15 130/25
131/4 132/5 132/8
132/12 132/20
133/3 133/16
133/22 135/1
135/4 136/16
136/22 137/23
139/20 139/25
140/7 140/12
140/15 140/24
141/6 141/21
142/13 142/16
143/6 144/4 144/8
144/17 144/24
145/8 145/19
145/25 146/14
146/19 146/23
147/1 147/24
148/2 148/6 148/7
148/13 148/16
149/7 149/11
150/4 150/8 152/4
152/7 158/3 158/6

158/19 158/23
159/2 159/6
159/15 159/19
160/2 161/6
161/15 161/19
162/3
**HONORABLE [1]**
1/10
**hope [3]** 61/11
62/7 63/2
**hopefully [3]** 4/21
7/1 9/6
**hoping [1]** 145/21
**Hospice [1]** 87/1
**Hospital [2]** 22/19
109/11
**hospitalists [1]**
22/19
**hosting [1]** 153/4
**hot [1]** 112/21
**hour [5]** 21/12
117/9 122/17
123/20 125/9
**hours [2]** 22/23
23/10
**huh [2]** 24/19
41/4
**hundred [1]** 65/6
**hundreds [1]**
153/12
**hung [1]** 157/9
**Hurst [4]** 31/13
31/18 32/1 74/5
**husband's [2]**
97/6 109/19

**I**

**I-N-D-E-X [1]** 2/1
**Illinois [1]** 128/16
**illness [2]** 129/3
130/20
**illustrate [1]**
28/11
**imagery [3]** 47/1
47/20 48/21
**images [26]**
42/16 42/17 47/4
48/10 48/10 50/12
50/13 50/20 60/21
61/21 62/4 62/4
62/6 62/9 63/4
64/2 153/5 153/13
154/14 154/15

## I

images... [6]
154/25 155/10
155/20 155/21
156/4 156/8
immediately [1]
142/11
immigration [1]
137/20
impact [24] 52/20
53/8 73/7 76/13
83/5 86/16 88/20
89/5 90/21 95/11
97/3 97/7 99/10
102/7 102/11
103/19 105/6
106/1 106/6
108/10 109/20
112/9 113/20
114/3
impair [2] 72/15
73/23
impairments [1]
25/1
impartial [51]
14/3 14/23 33/17
33/25 36/24 37/24
42/21 46/1 52/24
53/9 56/21 59/13
59/20 61/8 67/7
72/16 73/24 75/2
76/14 76/18 76/19
81/2 81/10 83/1
83/6 86/16 87/15
88/20 89/6 91/7
92/12 93/16 94/3
95/12 97/4 97/8
97/24 99/11
100/25 102/8
102/11 103/20
104/4 105/7 106/2
106/6 108/10
109/20 112/10
113/20 114/3
impartially [2]
27/4 42/24
impede [3] 72/15
73/23 100/25
imperative [2]
42/21 123/25
import [1] 96/6
impose [7]

138/15 138/18
140/5 140/23
145/5 145/21
149/5
imposed [4]
139/13 141/3
141/8 141/13
imposition [1]
38/20
impossible [1]
121/21
imprisonment
[11] 138/14
138/16 138/18
140/2 140/6 140/8
140/9 141/18
144/14 145/17
149/21
inadequate [1]
12/24
inappropriate [1]
7/24
incapable [1]
25/2
incarceration [1]
4/17
incidents [2]
134/17 154/21
incorporated [1]
5/18
incorrect [1]
32/13
Indeed [1] 26/2
independent [1]
160/9
indicative [5]
154/11 154/23
155/8 155/18
156/2
indictment [20]
15/14 15/17 15/19
15/25 25/6 25/8
25/8 25/9 25/10
25/15 26/2 131/12
132/9 132/10
134/7 138/13
147/20 157/19
159/11 160/20
indigent [2]
139/14 141/9
indirectly [1]
32/21
indispensable [1]

12/17
Individual [1] 2/5
individuals [13]
8/16 17/1 17/13
18/19 80/23 82/25
102/7 113/19
118/23 122/14
124/2 153/20
154/20
infant [1] 157/4
infant's [1] 155/2
influence [1]
130/13
influenced [2]
14/6 14/8
information [6]
13/18 13/24 47/13
125/21 153/8
157/15
informed [1]
160/6
infuriates [1]
36/16
initiate [1] 123/17
inmates [1] 32/15
innocence [3]
25/22 25/25 27/23
innocent [4] 26/7
26/9 58/8 146/11
inpatient [1]
75/10
inquire [1] 142/6
inserting [2]
155/22 157/5
inserts [1] 154/17
inspector [1]
89/22
instead [3] 6/12
6/16 14/22
instruct [2] 34/2
154/8
instructed [4]
34/6 38/18 39/8
90/23
instruction [5]
8/2 10/6 26/20
41/25 42/1
instructions [6]
13/1 36/23 42/22
122/15 123/5
153/23
instructs [1] 39/7
integrity [1] 15/8

intelligent [1]
160/5
intend [1] 132/4
intended [2]
14/21 14/22
intending [1] 11/6
intention [1]
126/19
interact [1]
153/23
interacting [1]
106/1
interest [2] 29/15
142/12
interfere [2]
31/21 130/1
internet [10] 16/3
16/4 39/16 39/18
39/20 56/5 100/5
124/1 128/7 151/3
interrupt [1]
30/17
interstate [5]
135/23 135/24
136/2 136/2
136/10
interviewed [1]
55/11
intoxicants [1]
130/14
introduce [1]
16/11
introduced [3]
17/2 17/14 53/10
introducing [1]
10/5
introductions [1]
13/3
invasive [1]
104/17
investigated [2]
55/16 55/20
investigation [2]
55/21 160/22
Investigations [1]
18/15
Investigative [3]
3/12 16/21 18/11
investigator [6]
3/24 4/11 4/22
9/22 17/8 133/6
invite [1] 8/4
invoke [2] 8/22

8/24
invoked [1] 8/25
IP [1] 151/3
Ipex [1] 96/22
issue [21] 3/25
4/8 6/11 7/5 9/1
9/21 11/7 17/24
20/8 20/11 20/11
44/19 57/10 69/13
116/1 116/9
116/25 117/10
issued [1] 160/25
issues [5] 14/4
21/1 21/10 23/21
115/24
item [3] 52/25
136/7 136/9
items [10] 131/12
135/15 136/8
136/9 136/11
136/11 142/8
142/12 142/15
157/13

## J

James [3] 18/11
52/5 101/8
Jason [1] 87/24
jeopardy [2]
142/24 142/25
Jersey [1] 54/20
job [7] 13/11
13/17 23/2 31/25
75/25 89/25 94/16
jobs [12] 71/17
78/18 80/7 82/11
86/1 88/4 98/12
101/19 104/18
107/14 111/1
112/25
John [1] 18/13
join [1] 69/24
joining [1] 96/10
Josephs [2] 32/5
109/8
jot [1] 95/22
judge [50] 1/11
4/10 5/23 7/5 8/9
9/13 9/18 10/20
11/8 12/3 14/15
17/5 23/25 28/23
38/21 45/7 48/1

# J

judge... [33] 48/4
49/3 50/7 51/15
53/19 56/16 56/23
56/25 57/25 58/24
61/15 65/17 66/17
67/11 68/10 69/8
70/4 116/8 116/23
117/25 118/12
118/15 118/15
119/1 121/10
122/1 125/13
126/11 131/11
138/12 139/6
150/16 151/14
judge's [1] 96/17
judged [2] 37/17
76/24
judges [5] 14/14
14/17 38/8 96/17
144/20
judging [1] 30/2
judgment [3]
38/12 62/11 62/14
judicial [2]
114/12 142/23
July 2022 [1]
156/13
July 25th [1]
154/21
July 27 [1] 155/6
Jupiter [1] 21/12
juries [2] 111/23
112/5
jurisdiction [1]
19/25
juror [167]
jurors [66] 6/5 6/7
6/20 7/10 8/1
10/16 10/24 11/16
11/20 14/17 16/6
22/14 23/16 23/20
24/22 28/16 28/23
33/7 33/19 34/12
34/19 34/21 34/25
35/15 38/3 38/25
42/21 43/6 44/21
45/1 45/15 49/6
51/18 58/1 58/6
66/20 67/18 68/11
68/14 68/22 68/25
69/21 70/3 70/15

70/16 115/11
115/13 115/14
115/18 117/14
117/19 117/20
118/3 118/8
120/15 120/17
120/22 121/20
122/12 122/22
123/9 124/24
125/1 125/20
161/24 162/7
jury [85] 1/10
3/15 3/18 9/3
10/17 10/23 11/2
11/4 11/11 11/18
12/7 12/11 13/2
13/18 13/25 14/3
14/12 14/23 15/6
15/7 19/1 19/20
22/15 25/12 26/11
26/22 28/12 30/11
31/2 34/2 38/21
39/4 44/23 46/17
48/11 48/16 49/13
57/9 61/23 63/17
64/8 68/16 69/25
72/2 73/16 73/24
76/14 76/17 79/6
79/24 81/2 81/4
81/11 83/2 83/20
84/3 84/24 86/9
88/22 90/25 92/3
93/18 93/24 95/14
97/10 97/15 99/4
100/16 103/22
104/1 105/9 108/7
111/21 111/25
113/25 118/2
121/14 122/18
123/15 123/17
126/16 134/13
138/6 146/8 159/5
justice [5] 16/21
18/10 25/21 53/15
106/1

# K

Kaiser [1] 92/25
Kelly [1] 65/5
Ken [1] 36/10
kidnapped [1]
45/24
kids [2] 36/15

40/23
kinds [1] 61/20
King [1] 128/10
kitchen [4] 82/9
98/10 98/12 98/23
Klember [1] 71/7
knowing [4] 33/2
56/17 77/1 160/9
knowingly [4]
134/13 135/16
136/7 142/20
knows [1] 13/15
Korie [1] 84/12
KYLE [3] 1/14 3/8
16/13

# L

L3 [1] 84/15
ladies [4] 12/1
16/12 70/20 122/8
Lamour [2] 32/5
109/8
language [9] 8/3
24/3 24/8 24/23
77/10 77/14
102/23 125/16
128/23
laptops [1]
157/12
large [3] 70/8
103/13 110/8
larger [3] 4/12
9/23 68/3
Lastly [1] 56/12
latest [1] 8/19
Latin [1] 14/2
law [122] 8/5 14/4
16/5 26/7 26/14
27/10 27/17 27/22
28/7 28/21 29/25
30/8 30/10 30/20
30/25 31/5 31/19
31/22 32/8 32/17
32/23 34/5 34/5
36/23 38/23 39/6
39/7 39/8 39/10
39/12 42/2 42/22
55/11 58/3 58/13
58/14 58/18 58/23
58/25 59/21 59/24
65/12 70/11 71/22
71/25 73/2 73/5
74/18 74/21 75/1

76/7 76/10 76/11
76/21 78/25 79/3
80/9 80/15 80/17
80/19 80/25 81/1
81/21 82/18 82/20
85/15 85/17 87/3
87/10 87/17 88/8
88/14 88/17 90/3
90/11 90/14 90/15
90/16 90/18 90/20
90/21 90/23 91/24
93/2 93/8 93/11
93/12 94/19 94/25
95/2 95/6 96/24
98/18 99/1 100/9
100/13 102/1
102/3 103/7
103/14 103/16
103/17 104/22
105/1 105/5
106/19 107/23
107/25 108/22
109/16 110/12
111/5 111/12
111/15 113/2
113/11 113/14
113/18 117/18
144/16 145/16
153/19
law's [3] 76/12
90/19 93/14
Lawrence [2]
94/9 94/10
laws [1] 12/20
Lay [2] 71/9 71/10
layer [1] 22/10
lead [3] 3/15 3/18
153/17
leads [2] 50/19
117/9
leg [1] 45/24
legal [2] 116/10
142/22
legs [1] 155/14
lender [1] 110/11
length [2] 43/4
147/22
lengthy [2] 122/9
122/18
Leonor [2] 82/4
83/8
Libertyville [1]
128/16

licking [1] 155/2
lieutenant [1]
74/22
life [8] 37/19
54/11 57/9 58/15
138/15 138/17
140/6 145/18
lifetime [1]
140/14
light [2] 29/18
53/7
limine [1] 10/2
limited [4] 12/10
23/20 42/16 61/1
Linda [2] 37/8
81/14
lines [3] 7/22
27/12 56/1
link [1] 153/4
linked [1] 153/10
linked-to [1]
153/10
linking [1] 51/6
links [5] 153/3
153/3 153/7
153/24 154/19
lis [1] 131/16
list [9] 8/15
118/22 120/21
122/14 154/22
155/6 155/17
155/25 157/11
listen [7] 17/22
26/23 62/3 63/6
63/8 69/7 122/23
litigants [1] 12/15
local [1] 112/18
locally [1] 113/16
logistical [2]
45/11 118/1
logistics [1]
121/11
Logsdon [2]
114/24 115/3
losses [1] 143/24
loud [6] 17/19
18/5 122/12
122/22 134/6
158/5
love [1] 62/8
lower [2] 145/6
153/23
Lucie [2] 89/21

# L

**Lucie... [1]**
111/10
**lunch [8]** 117/8
118/2 122/17
123/18 123/19
123/22 124/10
124/14

# M

**mail [2]** 9/9 56/8
**mailed [2]** 135/25
136/4
**mainframe [3]**
102/20 102/22
103/4
**maintain [1]**
124/3
**maintenance [3]**
76/6 154/4 156/12
**majored [1]**
102/25
**male [1]** 157/2
**man [4]** 154/16
157/3 157/5 157/5
**man's [2]** 155/11
156/7
**manage [1]**
156/18
**managed [1]**
153/14
**management [1]**
156/13
**manager [10]**
72/25 76/1 90/2
96/22 98/15 98/15
101/11 101/14
108/20 110/24
**managing [1]**
153/21
**mandatory [5]**
141/2 141/18
141/19 144/16
145/13
**manner [2]** 29/15
153/13
**marble [1]** 72/23
**March 18th [1]**
135/9
**March 2018 [2]**
135/10 157/21
**March of [1]**
134/9

**Marciano [4]** 37/8
40/1 81/14 81/17
**Maribel [1]** 96/4
**married [24]**
74/14 75/11 76/3
77/17 78/21 80/11
82/14 84/22 86/5
87/20 88/10 90/5
92/1 93/4 94/21
96/19 98/20
101/22 103/9
104/24 106/21
107/19 111/7
113/4
**Marsh [1]** 18/13
**marshal [4]** 52/18
76/11 76/13 90/16
**marshals [1]**
52/14
**Marta [1]** 22/16
**Martin [6]** 32/19
90/1 95/6 99/24
109/18 113/17
**Marvin [2]** 31/13
74/5
**Maryland [3]**
53/25 54/14 54/19
**masked [1]** 157/5
**material [1]** 42/18
**materials [1]**
133/17
**matter [12]** 12/6
52/19 69/22 72/10
73/18 84/1 136/21
141/24 143/8
148/19 153/11
162/16
**matters [13]** 9/14
10/16 13/21 49/6
51/18 59/5 60/10
64/21 65/19 66/13
66/20 67/14
159/16
**Matthews [1]**
52/8
**maximum [3]**
138/15 140/6
145/16
**McCRAE [5]** 1/19
3/23 5/13 17/7
120/24
**McKoy [2]** 32/5
109/8

**McKoy-Josephs
[2]** 32/5 109/8
**medical [3]** 78/18
92/25 129/13
**medication [1]**
129/19
**medications [2]**
129/24 130/1
**medicines [2]**
129/22 130/16
**meetings [1]**
154/2
**member [3]** 72/10
85/2 153/18
**members [23]**
11/1 11/3 11/5
12/15 30/24 43/9
71/24 73/4 76/9
82/22 89/2 105/5
108/2 109/17
110/14 121/24
123/6 153/16
153/22 153/22
154/1 154/7 161/3
**memory [1]** 29/14
**men [2]** 155/22
157/8
**men's [1]** 80/6
**mental [3]** 129/3
129/20 130/20
**merely [2]** 26/2
149/1
**messages [1]**
153/3
**meteorologist [2]**
112/18 112/23
**Miami [2]** 85/25
96/7
**mic [2]** 40/24
114/6
**MICHAEL [10]** 1/6
3/5 11/25 15/15
127/16 128/1
134/7 134/12
148/1 160/4
**microphone [6]**
30/13 31/12 45/21
65/24 73/13
118/16
**microscope [1]**
22/6
**mid [2]** 105/23
129/8

**middle [2]** 40/23
41/3
**military [2]** 97/7
128/22
**miller [5]** 1/24
1/25 13/8 162/17
162/18
**mindful [1]** 124/4
**mine [1]** 36/13
**minimum [4]**
138/14 138/17
140/2 141/18
**minor [3]** 42/16
72/4 135/19
**misplace [2]**
45/17 51/17
**missed [1]** 91/18
**missing [2]** 21/6
104/21
**mistake [1]** 139/7
**Mitchell [2]** 35/19
35/24
**mixed [1]** 79/23
**Model [1]** 86/8
**moderators [3]**
154/6 154/8
154/20
**Mohs [2]** 21/21
22/3
**molestation [1]**
66/10
**molested [2]**
37/11 67/4
**moment [13]** 10/9
30/14 40/24 44/13
48/4 56/25 58/3
64/19 85/15 86/25
109/22 123/3
161/10
**momentarily [2]**
65/20 67/13
**moments [2]**
15/17 66/21
**monitor [1]** 9/1
**montage [1]**
157/7
**Moraldo [1]** 43/25
**morally [4]** 47/1
47/3 47/12 48/10
**Moroldo [4]** 22/16
43/15 43/19 75/7
**mortgage [1]**
106/24

**mother [8]** 10/20
11/6 11/9 33/25
47/2 69/5 69/24
117/11
**motion [10]** 9/8
9/10 9/19 10/1
10/2 10/8 147/16
151/1 151/2
151/14
**Motor [2]** 90/8
90/9
**mouth [1]** 157/3
**mouths [1]**
155/23
**Mr [6]** 21/20 51/16
83/8 115/3 125/23
144/1
**Mr. [167]**
**Mr. Berry [50]**
3/20 4/4 5/4 5/13
6/17 8/7 9/17
10/18 16/25 17/4
17/12 23/24 46/6
48/3 51/14 56/24
60/6 63/10 63/11
65/16 66/16 67/10
116/18 118/14
124/12 125/2
126/5 126/19
130/23 131/1
131/21 132/23
133/17 134/21
136/14 142/14
144/2 144/22
145/1 146/17
148/3 150/9
151/17 152/10
158/20 158/24
159/3 159/21
161/9 161/25
**Mr. Berry's [1]**
126/9
**Mr. Byrd [1]** 91/9
**Mr. Clayman [1]**
16/15
**Mr. Crawford [2]**
104/12 106/8
**Mr. Curren [1]**
92/14
**Mr. Dennis [1]**
108/14
**Mr. Guidry [1]**
22/13

## M

**Mr. Hall [1]** 50/10
**Mr. Holden [2]**
88/1 89/8
**Mr. Hurst [2]**
31/18 32/1
**Mr. Lawrence [1]**
94/9
**Mr. Matthews [1]**
52/8
**Mr. Reynolds [11]**
5/1 5/22 8/15
16/24 18/4 18/19
46/4 126/24 135/2
148/5 152/12
**Mr. Rogolino [1]**
112/12
**Mr. Schiller [39]**
3/17 5/22 8/14
16/15 16/19 46/4
47/6 50/6 53/18
56/2 57/14 60/3
61/14 66/14 67/8
69/1 116/7 116/19
116/24 117/24
118/25 124/10
126/23 131/10
135/2 136/13
138/10 138/22
139/24 141/1
141/22 143/7
144/6 148/5 149/8
149/25 150/2
150/15 152/13
**Mr. Shoudt [5]**
44/9 45/21 46/8
83/11 84/6
**Mr. Sopher [2]**
53/20 59/2
**Mr. Spearman
[31]** 9/23 9/25
45/2 57/3 57/18
125/5 127/3
127/17 130/24
131/2 131/8
131/21 132/2
132/6 133/2
133/14 134/25
136/18 139/23
140/9 142/8 144/6
144/12 144/19
150/2 151/24

158/2 159/13
159/24 161/14
161/22
**Mr. Spearman's
[8]** 11/6 11/9
11/12 57/9 69/24
117/10 126/10
126/19
**Mr. Tatum [1]**
95/22
**Mr. William [2]**
15/15 17/16
**Mr. Winter [2]**
98/4 99/15
**MRI [1]** 113/8
**Ms [20]** 5/13 13/5
19/6 19/9 20/4
30/14 40/1 41/10
43/15 49/9 61/14
64/20 69/3 96/5
99/21 101/3
108/18 110/3
115/7 120/24
**Ms. [30]** 11/17
11/18 13/8 20/5
21/15 33/22 35/24
36/7 40/25 43/19
43/25 46/13 46/20
60/8 64/22 65/14
65/18 66/18 66/24
67/12 75/7 81/17
84/11 106/12
115/17 121/8
122/6 123/8 133/6
161/5
**Ms. Biandis [1]**
84/11
**Ms. Carol [1]** 20/5
**Ms. Casissi [7]**
46/13 64/22
115/17 121/8
122/6 123/8 161/5
**Ms. Corie [1]**
46/20
**Ms. Diane [1]**
13/8
**Ms. Goetz [4]**
21/15 36/7 65/14
65/18
**Ms. Marciano [1]**
81/17
**Ms. Mitchell [1]**
35/24

**Ms. Moraldo [1]**
43/25
**Ms. Moroldo [2]**
43/19 75/7
**Ms. Register [3]**
33/22 60/8 106/12
**Ms. Shannon [1]**
133/6
**Ms. Sleeper [3]**
40/25 66/24 67/12
**Ms. Spearman [2]**
11/17 11/18
**Ms. Thompson
[1]** 66/18
**Mueller [1]** 18/14
**multiple [1]**
156/22
**municipality [2]**
107/10 107/11
**murder [4]** 61/25
62/7 62/18 93/21

## N

**naked [6]** 154/14
154/16 155/12
155/12 155/24
156/9
**nanny [1]** 20/13
**narcotic [1]** 130/8
**natural [1]** 104/17
**nature [17]** 5/25
10/25 33/15 33/16
34/1 34/20 35/10
35/14 42/11 51/2
56/9 59/14 59/24
61/3 79/14 105/16
160/7
**NBC [1]** 112/18
**necessary [7]**
81/24 84/6 85/6
109/4 142/5
142/15 146/17
**negative [2]** 30/9
30/25
**negotiations [1]**
124/22
**neighbor [1]** 52/9
**neither [2]** 11/10
38/7
**nephews [1]** 47/3
**networking [2]**
40/7 40/9
**nice [1]** 124/14

**Nickeisha [1]**
35/19
**nickname [1]**
128/3
**nicknames [1]**
128/5
**nieces [1]** 47/2
**nine [10]** 8/16
8/20 54/24 55/5
55/6 96/9 121/4
154/15 156/6
156/9
**Nineteenth [1]**
20/1
**nobody [2]** 61/20
123/23
**Nolin [1]** 75/19
**None [2]** 65/15
108/3
**nonprofits [1]**
98/25
**nonrefundable [2]**
19/2 20/10
**nonstop [1]** 23/10
**Nope [1]** 106/4
**north [2]** 1/20
49/22
**Northern [1]**
156/23
**notice [4]** 135/17
135/22 135/25
142/23
**notify [1]** 162/8
**novelties [1]**
100/6
**November 2 [1]**
134/10
**November 2nd [2]**
135/10 156/21
**Nows [1]** 28/23
**number [70]** 3/5
6/2 7/9 11/25 12/8
13/14 19/4 19/6
20/5 21/19 22/14
23/5 24/5 27/21
30/12 31/9 35/16
35/17 36/8 37/5
40/1 40/20 41/20
41/21 42/17 43/11
43/14 44/6 45/14
46/19 49/15 52/1
59/9 60/14 61/1
65/4 66/4 66/25

69/21 70/25 71/5
71/7 72/21 73/14
74/6 75/7 75/18
75/19 77/9 78/6
79/23 79/25 80/2
80/3 81/14 81/25
83/11 84/8 84/18
87/24 92/20 92/21
94/11 96/4 99/20
101/6 104/11
109/7 114/6 146/1
**Number 1 [2]**
70/25 71/7
**Number 11 [2]**
45/14 83/11
**Number 15 [1]**
87/24
**Number 19 [1]**
94/11
**Number 2 [3]**
36/8 72/21 73/14
**Number 26 [1]**
59/9
**Number 29 [1]**
109/7
**Number 3 [2]**
31/9 74/6
**Number 30 [1]**
20/5
**Number 33 [2]**
19/6 114/6
**Number 42 [1]**
30/12
**Number 45 [1]**
35/17
**Number 7 [1]**
78/6
**Number 8 [1]**
79/25
**Number 9 [3]**
37/5 40/1 81/25
**numbered [1]**
6/22
**numbers [5]** 7/3
18/3 121/3 121/20
121/22
**numerical [1]**
44/4
**numerous [6]**
82/25 142/8
154/13 154/18
156/8 157/7
**Nun [1]** 128/10

**N**

nurse [6]  78/10
78/11 78/12 78/13
106/16 106/17

**O**

o'clock [1]  6/16
oath [4]  77/1
116/6 123/15
127/20
oaths [1]  59/19
object [4]  9/19
11/10 154/17
157/6
objection [19]
10/1 11/14 45/4
45/5 70/14 119/3
119/7 119/10
119/13 119/17
119/21 119/24
120/2 120/5 120/7
120/10 120/13
120/16 120/20
objections [1]
161/1
objectively [5]
38/16 52/24 73/8
90/22 99/11
obligations [1]
38/10
observations [1]
12/8
obtaining [1]
14/22
occasion [1]
22/25
occasions [2]
135/9 154/18
occupied [1]
117/16
offended [1]  15/8
offender [6]
76/21 149/9
149/14 149/18
149/22 150/5
offense [8]
137/24 137/25
138/3 139/15
143/15 146/4
159/10 160/10
offenses [9]  16/1
33/15 57/4 134/18
135/11 135/12

143/14 143/20
143/21
offer [3]  42/8
77/14 105/14
offering [1]
135/18
offers [1]  41/17
office [13]  1/15
1/20 19/24 74/17
78/19 80/20 80/20
95/6 96/14 114/13
114/16 125/15
138/5
officer [11]  13/16
13/17 13/20 21/7
32/8 32/17 40/2
97/21 105/3 105/4
149/24
officers [3]  29/25
31/5 55/11
Official [2]  1/24
162/18
Oh [6]  37/5 52/11
78/13 105/21
115/9 126/11
Okeechobee [1]
91/16
one-off [1]  44/16
online [11]  153/1
open [11]  35/5
44/3 45/8 68/15
68/18 70/6 70/7
70/9 117/23 118/6
124/3
opening [5]  5/8
5/9 5/12 5/17 9/4
operation [1]
40/16
operations [3]
13/6 87/2 156/12
operator [2]
91/15 94/13
opinion [2]
116/10 130/23
opinions [1]  14/8
opportunity [5]
29/13 34/21 42/5
59/12 148/12
oral [3]  156/7
157/4 157/7
orally [1]  10/3
order [14]  9/9
9/12 10/1 44/5

68/2 135/17/14
133/4 138/19
138/19 143/2
143/22 147/16
151/8 154/8
orders [1]  13/17
organization [1]
154/4
organize [1]
153/24
orthopedic [1]
74/17
outcome [3]
12/16 14/15 29/16
outfit [1]  9/25
outset [1]  117/5
overall [1]  149/14
overlooked [1]
115/25
override [1]  58/24
overruled [2]
11/15 68/20
overseeing [1]
12/3
overtake [1]
59/25
Owen [1]  107/5
owned [2]  71/20
100/5
owner [5]  85/13
85/22 99/23 100/1
106/24
owns [2]  53/15
94/24

**P**

P-R-O-C-E-E-D-I-
N-G-S [2]  2/15
P.M [8]  10/13
115/20 115/21
124/17 124/18
125/25 126/1
162/12
paddle [12]  7/3
16/8 19/5 21/18
36/4 51/17 59/3
60/9 64/21 65/19
66/19 67/13
paddles [10]  6/22
13/14 18/2 19/4
35/16 37/3 45/18
115/11 123/3
123/21

page [5]  2/2
147/22 147/25
152/3 152/8
pages [3]  1/7
147/22 152/2
paint [2]  108/21
108/25
painting [1]
101/19
Paints [1]  108/20
pair [3]  4/12 9/23
68/4
Palm [5]  31/14
74/9 74/22 134/10
156/16
panel [12]  2/6
11/21 43/9 45/19
58/1 70/17 116/1
116/5 122/4 123/9
123/12 124/7
pants [8]  4/2 4/2
4/8 4/12 9/23 9/25
68/4 68/4
paper [3]  26/3
86/6 86/7
paragraph [15]
139/2 139/2 139/5
139/6 139/7
139/11 141/2
142/9 142/19
149/12 149/19
150/18 151/16
153/17 154/18
paragraphs [4]
141/25 143/10
144/2 150/7
paralegal [1]
80/14
Parano [1]  78/7
parent [5]  20/13
20/15 20/15 20/17
35/19
parents [1]  21/11
part [12]  14/13
39/2 39/3 42/15
107/15 131/8
134/15 135/14
136/5 140/16
151/13 156/11
part-time [1]
107/15
participate [2]
54/1 65/9

participating [1]
52/19
parties [23]  3/6
4/25 5/9 5/19 9/1
12/4 12/25 15/1
16/10 43/18 45/10
46/3 66/8 67/21
100/6 116/2 117/4
118/8 120/22
124/25 125/19
152/16 157/16
partly [1]  112/21
partner [1]  98/23
party [2]  4/20
8/22
passed [1]  22/20
patience [4]
14/20 35/6 70/21
122/9
patient [2]  78/17
109/11
patients [1]  22/2
Patrell [1]  18/11
patrol [1]  93/15
Paul [1]  114/24
pause [2]  17/25
126/12
pay [1]  143/12
payable [1]  78/20
PCT [1]  78/17
PE [1]  88/4
pediatrician [2]
22/18 75/9
pediatrics [1]
75/10
Pedo [1]  128/10
penalties [5]
138/9 139/24
141/16 144/13
149/17
pendens [1]
131/16
pending [2]
105/20 161/21
penetrate [1]
155/3
penis [3]  154/16
155/11 156/7
penises [1]
155/22
people [4]  23/5
29/2 38/6 42/18
peremptories [2]

# P

**peremptories...**
 **[2]** 6/3 6/4
**perfect [1]** 21/23
**perfectly [2]** 39/3
79/17
**perhaps [4]** 12/18
34/21 48/22 69/18
**period [2]** 21/23
54/11
**perjury [1]** 127/22
**Permanente [1]**
92/25
**permit [2]** 5/19
69/4
**permits [2]** 12/15
123/17
**permitted [2]**
11/11 145/16
**persist [1]** 146/5
**person [6]** 26/8
29/4 47/16 47/20
88/19 151/6
**personal [6]**
13/19 14/9 14/21
34/20 37/19 53/13
**persons [5]** 15/11
17/20 134/12
134/18 135/12
**perspective [1]**
65/12
**pertains [1]** 26/22
**pertinent [2]**
37/18 149/9
**phallus [1]** 155/3
**phrase [1]** 14/2
**pick [2]** 14/13
36/15
**pictures [7]** 51/1
51/2 51/6 55/25
56/1 62/1 62/2
**piece [1]** 64/12
**PIERCE [6]** 1/6
1/17 1/21 96/23
107/13 162/20
**pilot [1]** 91/20
**piping [1]** 96/23
**place [2]** 8/12
111/25
**placement [1]**
117/19
**Plaintiff [2]** 1/4

**plan [3]** 5/19 6/15
117/9
**plans [1]** 45/13
**plants [1]** 104/17
**plea [69]** 1/10 2/7
2/7 26/6 124/22
125/4 125/6
125/10 125/14
126/6 126/7
126/13 126/20
126/20 127/8
130/24 131/3
131/5 131/9
131/22 134/4
134/5 137/8 137/9
137/16 137/21
137/21 138/2
139/2 139/3
139/11 139/16
141/17 141/24
142/1 142/10
142/19 143/10
144/16 145/23
146/5 147/12
147/15 147/21
148/11 148/14
148/18 148/21
148/24 149/2
149/9 149/12
150/6 150/15
150/17 150/19
150/24 151/16
151/20 158/22
159/17 160/6
160/8 160/8 160/9
160/12 160/14
160/15 160/18
**plead [13]** 127/5
131/2 131/21
132/4 136/23
137/3 137/6 137/9
137/19 146/2
146/4 147/18
159/25
**pleading [8]**
127/7 132/2 132/7
137/25 139/14
143/12 143/14
149/13
**pled [1]** 159/25
**plenty [2]** 90/16
90/18

**plumber [1]** 93/7
**point [19]** 4/7
7/24 10/4 16/7
24/13 28/15 33/3
43/5 65/13 68/14
69/1 69/9 69/23
70/2 117/21 118/4
123/19 125/10
127/9
**poisonous [1]**
151/5
**police [5]** 21/7
87/6 103/17 105/3
105/4
**pool [3]** 10/17
30/24 71/21
**poor [2]** 49/25
51/10
**porn [1]** 62/19
**pornography [27]**
16/2 16/3 33/13
42/20 53/6 55/21
57/4 60/22 61/1
66/10 135/8
135/14 136/5
136/8 136/9
136/12 143/20
152/24 153/2
153/5 153/10
153/13 153/24
154/9 154/19
156/18 156/25
**pornography-rela
ted [1]** 57/4
**Port [1]** 89/21
**positive [3]** 30/10
30/19 30/25
**possess [1]**
138/6
**possessed [2]**
143/20 156/22
**possession [1]**
105/18
**possibilities [1]**
69/14
**possibility [2]**
64/7 116/4
**post [2]** 154/7
154/10
**posted [1]** 153/25
**posting [1]** 153/3
**postponed [1]**
19/21

**posture [2]**
116/19 116/24
**potential [3]**
17/20 18/5 59/24
**potentially [2]**
132/22 137/8
**power [1]** 153/20
**PPG [1]** 108/20
**practical [1]**
104/15
**practice [1]** 85/20
**practicing [1]**
85/15
**precancerous [1]**
22/5
**predict [1]** 112/20
**prefer [6]** 49/14
51/25 65/25 79/12
79/16 95/19
**preference [1]**
4/10
**prejudice [4]** 34/4
38/5 38/7 38/7
**preliminaries [1]**
147/14
**premise [1]** 58/7
**premises [1]**
55/13
**preparation [1]**
160/23
**prepared [1]**
116/10
**prepubescent [8]**
154/14 155/4
155/12 155/23
156/5 156/8 157/6
157/7
**present [13]** 3/9
10/22 22/9 22/10
68/13 121/25
124/20 126/4
126/18 129/8
154/1 160/24
161/4
**presentation [2]**
9/5 16/22
**presently [1]**
105/6
**preserved [1]**
12/12
**presided [1]**
154/2
**Presley [1]** 69/10

**presumed [3]**
26/7 26/8 146/11
**presumption [2]**
25/22 25/25
**prevent [3]** 33/17
62/24 130/20
**primarily [1]**
104/13
**principle [1]** 28/9
**principles [2]**
25/20 28/7
**printed [2]** 135/16
135/17
**prison [6]** 32/16
32/18 54/25 55/1
55/4 140/20
**private [11]** 15/1
35/11 44/12 46/25
79/12 79/16 81/23
95/19 105/15
107/10 110/11
**privately [1]**
35/25 43/8 79/18
**privilege [2]**
16/16 17/9
**probation [2]**
149/24 160/21
**problem [3]** 18/25
76/19 115/7
**procedure [4]**
21/22 22/3 150/22
162/2
**proceed [3]** 12/9
15/24 43/5
**proceeded [1]**
136/21
**proceeding [4]**
32/24 53/10 81/6
146/18
**proceedings [18]**
1/10 10/12 17/25
34/17 35/5 43/13
44/3 44/14 45/8
67/23 85/2 115/20
124/17 125/25
126/12 131/16
162/12 162/15
**process [19]** 5/21
6/8 10/23 11/12
12/7 12/23 13/24
14/3 14/12 15/7
42/11 47/18 65/8
69/25 70/21 76/17

**P**

process... [3]
116/2 122/9
143/24

producer [1]
91/20

profession [3]
29/10 30/3 85/12

professional [2]
80/8 129/13

professionally [1]
94/16

proffer [11]  125/5
125/6 126/6
126/14 126/21
151/21 152/2
152/17 152/19
158/5 159/9

project [5]  72/25
90/2 98/15 101/14
107/7

projects [2]  107/8
109/1

prominent [1]
155/13

promises [4]
131/1 131/20
148/17 148/21

promoted [1]
154/2

promptly [3]
67/22 123/20
124/15

proof [7]  23/13
25/22 26/24 27/1
27/5 27/6 27/13

propane [2]  76/2
76/2

property [2]
142/12 142/21

proposal [1]
121/13

proposed [5]  7/9
7/20 8/7 125/4
134/4

proposition [2]
26/14 39/10

prosecuted [1]
54/14

prosecution [1]
127/22

prosecutors [1]

16/16

prospective [22]
24/22 30/24 46/12
46/15 49/8 49/10
51/18 51/20 51/20
59/6 59/6 60/11
60/11 65/1 65/1
65/21 65/21 66/22
66/22 67/15
115/14 123/10

protected [1]
12/13

Protection [1]
96/7

protective [1]
133/4

protocol [1]
151/3

prove [12]  15/20
25/13 25/17 26/18
26/25 27/14 27/23
28/2 37/20 136/20
136/24 146/12

proven [7]  28/13
28/17 135/15
136/6 152/20
157/17 158/11

province [1]
38/21

proving [1]  26/16

provision [1]
151/16

provisions [1]
149/9

pry [1]  14/21

PTSD [1]  129/8

pubescent [1]
157/2

public [12]  1/20
11/2 11/5 11/13
19/23 70/8 70/12
114/11 114/13
117/20 121/24
138/5

published [3]
135/16 135/17
144/20

Publix [3]  71/20
110/23 111/3

pulled [1]  32/12

purifier [1]
117/16

purposes [4]

67/20 70/12 118/9
123/15

pursuant [8]
126/20 138/25
139/3 139/11
139/18 142/19
143/13 150/22

PVC [1]  96/23

**Q**

question [33]  7/1
7/9 7/12 7/15 7/16
7/20 7/22 7/23 8/7
13/21 18/1 31/4
32/7 32/9 34/19
41/13 42/8 42/9
42/13 42/25 42/25
46/23 46/25 52/7
52/10 59/19 63/1
63/20 64/23 67/19
79/13 118/1
121/11

questioned [1]
15/9

questioning [17]
12/9 12/10 14/18
14/21 14/24 35/25
36/7 42/12 43/18
44/19 50/19 60/3
61/13 65/14 81/24
116/5 123/17

questionnaires
[7]  4/20 6/9 9/15
10/10 10/15 70/23
70/24

questions [26]
5/18 5/21 7/7 7/9
8/4 8/8 43/20
43/21 46/3 46/5
47/5 50/4 51/14
57/15 66/15 66/17
122/20 122/20
125/7 125/9 127/3
127/4 127/10
127/21 144/9
161/14

Quevedo [1]
85/13

quick [1]  47/7

quickly [3]  70/5
70/24 115/18

quote [1]  153/15

**R**

radiology [1]
113/8

raise [5]  6/23
13/13 16/8 123/10
124/9

raised [1]  35/16

raiser [1]  98/25

raising [2]  36/13
36/14

ranch [1]  91/15

Randy [1]  24/7

ranking [3]
153/23 154/6
156/15

reach [1]  39/5

reached [5]  93/24
97/15 104/1
111/24 112/6

react [1]  63/22

ready [4]  3/10
10/16 45/20 121/1

realize [1]  46/25

realm [1]  39/24

reasonableness
[1]  29/17

receipt [1]  12/19

recently [1]  55/6

recess [8]  10/12
67/23 115/15
115/20 124/17
125/25 162/6
162/7

recitation [1]
142/15

recite [1]  157/24

recognize [2]
17/23 18/18

recognized [1]
12/12

recommend [3]
145/7 145/18
162/1

recommendation
[2]  45/10 148/25

recommendation
s [2]  117/3 149/1

record [12]  10/3
10/7 52/18 70/4
115/22 124/20
125/19 126/17
142/4 150/18

150/19 159/8

recorded [1]  7/10

rectify [1]  4/9

redirected [6]
153/3 154/13
154/25 155/10
155/20 156/4

references [2]
61/2 129/6

reflects [2]
143/23 158/7

register [9]  33/21
33/22 59/11 60/8
106/12 106/13
149/14 149/20
149/22

registered [6]
78/10 78/12 78/13
106/16 106/17
153/16

registration [5]
149/16 149/18
149/22 150/6
150/11

rehabilitation [1]
104/19

reiterate [4]  10/2
26/16 32/7 140/1

reject [1]  149/2

relatedly [2]
38/14 39/11

relationship [3]
31/19 54/5 80/23

relationships [2]
95/5 95/11

relative [1]
143/23

relatives [15]
74/20 79/3 80/17
87/17 88/16 90/13
93/10 95/2 99/1
100/13 102/3
105/1 111/15
113/13 113/14

release [14]
131/16 138/16
138/18 140/10
140/13 140/14
140/16 140/18
140/19 141/19
144/14 145/17
149/20 149/21

released [2]

**R**

**released... [2]**
54/25 55/6
**relief [1]** 151/10
**rely [1]** 27/7
**remain [10]** 3/13
10/22 25/23 27/20
42/21 43/1 43/7
46/10 69/24 147/7
**remaining [3]**
45/14 45/19
118/20
**remains [1]**
161/20
**remarks [1]** 36/6
**remind [6]** 34/24
35/2 35/9 66/24
86/23 114/9
**reminder [1]** 89/9
**remodels [1]**
82/10
**removal [1]**
137/22
**render [2]** 25/2
63/7
**rendered [1]**
38/19
**reopened [1]**
121/16
**report [3]** 32/13
160/23 160/24
**reporter [7]** 1/24
13/9 43/23 67/20
87/9 100/3 162/18
**reporter's [1]** 4/4
**representation [3]**
133/1 133/24
159/14
**representative [2]**
71/11 71/14
**reproduce [1]**
135/18
**reproduced [1]**
154/7
**request [4]** 9/20
45/6 68/20 69/21
**requested [2]** 5/8
133/15
**required [7]**
25/12 28/23 29/7
34/4 118/10
149/14 153/7

**requirements [4]**
69/12 149/15
150/6 150/11
**rescheduled [1]**
19/16
**research [5]**
78/11 116/11
116/15 117/1
123/25
**reservation [1]**
150/24
**reserving [2]**
125/14 147/15
**resided [1]**
156/16
**residence [2]**
151/6 156/22
**residential [1]**
98/16
**resides [1]**
149/23
**resolved [2]**
105/20 105/21
**respective [1]**
124/25
**response [3]**
25/10 67/19
117/25
**responses [1]**
44/22
**rest [3]** 16/18
57/9 91/18
**restaurants [2]**
101/20 104/20
**restitution [10]**
138/20 143/8
143/11 143/13
143/17 143/23
144/3 144/7 144/9
144/15
**restroom [7]** 42/5
43/3 46/10 49/5
59/3 115/8 115/11
**rests [1]** 26/17
**result [5]** 32/20
140/20 145/23
151/5 160/13
**resume [1]** 10/10
**resumed [5]**
10/13 67/24
115/21 124/18
126/1
**retail [4]** 80/7

98/16 98/12
104/19
**retain [1]** 121/20
**retire [1]** 39/4
**retired [25]** 40/13
75/21 87/6 87/12
90/1 92/23 92/24
93/7 98/8 98/23
99/23 100/1 100/8
100/8 102/18
103/12 103/17
105/4 105/4
109/18 110/6
110/23 111/10
113/7 113/17
**retirement [3]**
98/9 102/19 110/7
**return [9]** 20/2
36/7 67/22 118/10
122/14 122/17
123/4 123/20
124/24
**review [8]** 4/20
6/10 122/19 133/1
133/9 146/2
148/12 150/25
**REYNOLDS [14]**
1/14 3/9 5/1 5/22
8/15 16/14 16/24
18/4 18/19 46/4
126/24 135/2
148/5 152/12
**ribs [1]** 45/24
**rights [3]** 138/5
142/21 146/1
**ripped [1]** 67/5
**rise [9]** 11/20
43/6 70/16 115/13
122/3 124/5
124/16 125/24
162/11
**RMR [2]** 1/24
162/18
**RN [2]** 78/14
78/24
**robbed [1]** 45/24
**Robert [1]** 18/13
**Robotics [1]** 41/5
**Rogolino [2]**
110/23 112/12
**role [5]** 12/17
13/1 14/15 105/16
143/24

**room [19]** 11/1
11/5 25/24 26/11
27/19 28/13 29/20
38/2 39/4 39/6
49/22 56/19 57/24
68/12 68/23 70/1
118/10 121/24
154/5
**rope [2]** 156/7
157/9
**route [2]** 71/11
71/14
**row [2]** 23/5
79/25
**rule [4]** 8/22 8/24
8/25 150/22
**rules [3]** 6/3
14/16 153/7
**ruling [3]** 8/6
69/23 70/13
**runs [1]** 18/23

**S**

**safe [1]** 33/3
**sake [1]** 151/22
**sales [4]** 71/11
71/14 98/10
104/19
**Sam [1]** 104/11
**sample [1]** 22/11
**Sara [2]** 3/24 17/8
**satisfaction [1]**
134/2
**satisfied [7]**
133/23 136/14
144/2 158/20
158/24 159/13
160/17
**Saturday [1]**
22/21
**save [1]** 6/4
**Scanning [1]** 38/2
**scattered [1]**
27/21
**scenarios [1]**
22/25
**schedule [4]**
18/22 18/25 23/3
23/4
**scheduled [3]**
8/12 8/23 19/3
**scheduling [11]**
6/11 18/25 19/10

20/8 23/8 23/17
23/21 36/5 43/16
65/11 118/9
**SCHILLER [44]**
1/14 3/9 3/17 5/22
8/14 16/15 16/15
16/19 46/4 47/6
50/6 53/18 56/2
57/14 60/3 61/14
66/14 67/8 69/1
116/7 116/19
116/24 117/24
118/25 124/10
125/23 126/23
131/10 135/2
136/13 138/10
138/22 139/24
141/1 141/22
143/7 144/1 144/6
148/5 149/8
149/25 150/2
150/15 152/13
**Schoenhart [1]**
18/12
**school [6]** 20/12
40/23 87/25 88/6
102/24 128/19
**school/college [1]**
88/6
**schoolers [1]**
41/3
**Schools [1]**
111/10
**Schroeder [2]**
20/5 110/3
**science [1]**
102/25
**Scientist [1]**
18/13
**SCOTT [4]** 1/19
3/21 17/6 18/12
**sealed [2]** 9/9
79/11
**Sean [1]** 18/14
**search [2]** 55/13
151/6
**seating [5]** 6/20
7/2 10/24 79/23
117/22
**seats [1]** 115/23
**second [10]**
115/6 122/14
123/4 132/10

**S**

**second...** [6]
134/6 146/7
147/19 157/18
159/11 160/20
**secretary** [3]
92/25 93/1 93/1
**section** [13]
125/15 134/19
135/7 138/25
139/12 139/19
141/4 141/8
141/14 143/13
152/24 153/25
157/20
**sections** [1]
154/1
**security** [7] 13/16
13/20 18/14 55/17
96/11 96/12 97/2
**seek** [3] 131/5
131/7 150/25
**seeking** [2]
131/19 135/17
**seized** [1] 151/4
**seizure** [1] 151/3
**select** [2] 12/15
76/17
**selected** [5] 15/7
30/11 31/2 42/13
123/16
**selecting** [1] 14/3
**selection** [20]
3/15 3/18 9/3
10/23 11/2 11/4
11/11 11/19 12/7
14/1 14/12 15/6
19/20 68/16 69/25
118/3 121/14
122/18 123/15
126/16
**semiretired** [1]
107/7
**sense** [4] 27/4
28/25 29/6 30/1
**sensitive** [3]
35/10 42/11 124/9
**sentence** [8]
38/20 144/25
145/6 145/7
145/15 145/21
145/23 149/5

**sentences** [1]
144/20
**sergeant** [1]
80/19
**series** [2] 129/12
134/15
**serve** [26] 13/2
14/17 15/7 19/1
26/22 30/11 31/2
61/8 73/24 76/14
77/2 81/2 81/11
83/2 86/17 89/6
92/12 97/4 102/12
104/5 106/2
108/11 112/10
123/16 124/4
138/6
**served** [26] 53/4
53/14 55/4 72/2
73/16 79/6 81/4
83/20 84/24 86/9
88/22 90/25 92/3
93/18 95/14 97/10
99/4 100/16
103/22 105/9
108/7 111/21
112/2 112/3
113/25 154/20
**service** [11] 12/6
12/20 12/21 14/7
16/13 16/23 76/13
78/19 103/12
111/25 117/4
**services** [2]
114/14 161/24
**serving** [1] 33/17
**session** [2] 116/4
126/3
**setting** [1] 40/7
**settled** [1] 100/18
**seven** [8] 21/2
36/12 67/5 128/18
139/2 139/11
155/14 156/6
**seven-year-old** [1]
21/2
**severe** [2] 129/11
149/5
**sex** [10] 76/21
149/9 149/14
149/18 149/22
150/5 156/7 157/2
157/4 157/7

**sexual** [12] 50/14
61/2 152/25 153/9
154/11 154/14
154/23 155/8
155/18 156/2
157/9 159/10
**sexually** [3] 42/15
67/4 135/20
**shall** [1] 149/21
**Shannon** [3] 3/24
17/8 133/6
**share** [10] 33/23
37/16 46/22 46/24
52/6 56/10 60/18
66/7 67/2 154/9
**shared** [7] 55/25
154/18 154/22
155/6 155/16
155/25 156/11
**sharing** [1] 55/25
**Sharon** [2] 99/20
99/21
**sheriff** [3] 31/14
109/18 113/17
**sheriff's** [5] 80/19
80/20 88/18 95/6
95/9
**sheriffs** [1] 74/23
**Sherry** [1] 66/3
**shift** [3] 6/25
39/15 41/15
**short** [1] 23/5
**Shoudt** [5] 44/9
45/21 46/8 83/11
84/6
**shown** [1] 39/1
**sic** [2] 143/4
158/13
**side** [10] 5/16
5/20 6/3 6/5 9/16
15/9 34/4 39/22
101/19 147/6
**sidebar** [10]
34/15 34/22 34/25
35/7 43/12 44/22
44/25 45/12 45/12
81/23
**sidebars** [1]
44/16
**sides** [5] 38/15
57/13 61/3 99/12
160/25
**sight** [1] 25/1

**signature** [3]
147/25 148/3
152/8
**signatures** [3]
126/10 147/22
152/3
**signed** [5] 126/9
147/23 148/11
152/3 152/17
**silent** [3] 25/23
27/20 147/7
**Simpson** [1] 80/3
**sincere** [1] 29/5
**sincerity** [1] 29/8
**sister** [2] 10/21
11/10
**situated** [1] 6/21
**situation** [3] 24/9
48/24 54/3
**situations** [1]
38/6
**Sixth** [1] 11/12
**size** [1] 117/21
**skip** [1] 79/24
**skipping** [1]
121/23
**Sleeper** [4] 40/25
41/10 66/24 67/12
**slightly** [2] 4/11
9/23
**slowly** [1] 100/2
**small** [3] 6/11
40/6 117/13
**Social** [3] 96/11
96/12 97/2
**soldier** [1] 37/11
**sole** [2] 20/20
38/20
**solely** [4] 14/5
31/22 76/24
145/23
**soliciting** [1]
159/17
**solution** [1]
116/14
**son** [14] 21/3
32/11 32/15 32/21
32/22 72/8 76/11
76/12 76/21 90/15
90/19 93/12 93/14
95/6
**soon** [1] 62/9
**Sopher** [4] 52/5

53/20 59/2 101/8
**sorts** [1] 101/19
**sought** [1] 151/4
**sounds** [2] 91/22
116/13
**South** [1] 1/16
162/19
**SOUTHERN** [3]
1/1 134/11 156/17
**space** [2] 69/6
121/17
**spacing** [4] 68/21
69/13 69/20
121/16
**Spanish** [1] 24/10
**SPEARMAN** [56]
1/6 3/5 3/22 9/23
9/25 11/17 11/18
11/25 15/15 17/10
17/17 45/2 57/3
57/18 125/5 127/3
127/17 128/1
130/24 131/2
131/8 131/21
132/2 132/6 133/2
133/14 134/8
134/12 134/25
136/18 139/23
140/9 142/8 144/6
144/12 144/19
148/1 150/2
151/24 153/17
154/7 154/18
154/21 155/6
155/16 155/25
156/11 156/14
156/22 157/16
158/2 159/13
159/24 160/4
161/14 161/22
**Spearman's** [9]
11/6 11/9 11/12
57/9 69/24 117/10
126/10 126/19
157/1
**SPEARMEN** [1]
127/16
**special** [20] 3/11
14/10 16/19 18/9
18/11 18/12 18/13
18/14 18/15 18/15
138/20 138/22
139/12 139/17

Page 183

UNITED STATES vs. WILLIAM M. SPEARMAN
Case 9:22-cr-80173-AMC Document 170 Entered on FLSD Docket 08/01/2023 Page 183 of

**S**

**special... [6]**
139/20 140/25
141/3 141/7
141/11 144/14
**specialist [1]**
96/6
**specialized [3]**
39/23 41/12
102/24
**specific [2]** 40/4
142/14
**specify [2]** 97/20
157/13
**spell [1]** 84/17
**spent [1]** 72/23
**spoke [2]** 72/21
81/18
**spots [1]** 117/17
**spouse [20]**
74/16 75/13 76/5
77/19 78/23 80/13
82/16 86/7 88/12
90/7 93/6 94/23
96/21 98/22
101/24 103/11
106/23 107/21
111/9 113/6
**spreading [1]**
155/14
**squad [1]** 76/21
**St [2]** 89/21
111/10
**staff [7]** 153/15
153/22 153/22
153/25 154/2
154/3 154/7
**stages [1]** 146/17
**stand [10]** 10/9
20/24 43/3 45/15
49/13 51/24 68/1
71/1 123/2 123/10
**standard [6]** 6/2
6/16 8/1 9/7 31/15
31/16
**standing [3]** 13/5
35/19 46/17
**stands [1]** 105/14
**starting [6]** 3/7
6/13 16/11 33/20
70/25 117/9
**state [15]** 3/6

18/4 56/1 83/24
83/25 85/20 85/21
97/13 100/17
103/23 105/16
149/17 149/20
149/22 149/23
**statement [9]**
5/10 5/12 32/14
41/17 41/21 41/22
41/23 127/23
158/25
**statements [13]**
5/8 5/17 7/10 7/11
8/2 9/4 12/8 41/16
42/2 127/21
133/10 151/4
151/11
**states [34]** 1/1
1/3 1/11 3/4 3/10
11/24 12/2 16/17
18/8 26/3 26/18
69/9 129/1 134/9
134/15 134/19
135/7 137/14
137/18 137/22
138/25 139/12
139/18 141/4
142/3 143/1
143/13 144/19
152/19 152/20
152/24 157/20
160/3 162/19
**station [2]** 96/7
112/19
**status [2]** 7/6
97/6
**statutory [5]**
138/9 138/15
139/23 140/6
141/15
**stay [3]** 42/9
82/17 137/16
**stayed [1]** 54/18
**Stegner [1]**
102/18
**Steinmetz [1]**
18/10
**step [3]** 9/15 45/1
160/21
**stepchildren [1]**
36/13
**steps [2]** 77/13
156/12

**stepson [4]** 31/10
31/14 31/19 74/22
**stepson's [2]**
31/20 74/24
**Steve [1]** 112/19
**stipulate [1]**
159/3
**stipulated [2]**
137/8 159/9
**stitch [1]** 22/9
**stocking [1]**
107/15
**stolen [1]** 73/21
**stomach [1]** 54/2
**store [3]** 80/6
108/21 110/24
**stores [1]** 71/16
**storm [1]** 21/24
**straightened [1]**
18/2
**strap [1]** 155/3
**strap-on [1]**
155/3
**strategies [2]**
133/20 133/21
**Street [1]** 1/20
**stress [2]** 12/19
37/17
**stricken [3]**
118/24 120/22
121/23
**Stuart [1]** 108/20
**student [1]**
149/24
**students [1]** 41/7
**study [2]** 64/15
77/13
**submitted [2]**
5/18 10/3
**substantive [2]**
13/21 52/19
**substitute [1]**
111/11
**Suburban [1]**
76/2
**sufficient [4]** 5/12
5/14 158/25 159/9
**suggest [1]** 34/20
**suggestion [2]**
7/11 44/25
**Suite [1]** 1/16
**suited [1]** 15/11
**summer [1]** 21/2

**summoned [1]**
6/7
**summons [1]**
12/19
**supermarket [2]**
107/17 110/24
**Supermarkets [1]**
71/20
**superseding [6]**
132/10 134/6
147/19 157/18
159/11 160/20
**supervised [14]**
138/16 138/18
140/10 140/13
140/14 140/16
140/17 140/19
141/19 144/14
145/17 149/21
153/21 154/3
**support [2]** 54/11
127/8
**supported [1]**
160/9
**suppress [6]** 9/8
9/20 10/1 147/17
151/1 151/4
**suppressing [1]**
151/9
**Supreme [2]** 69/9
69/10
**surgery [1]** 19/3
**surveyor [1]**
101/19
**sway [1]** 50/1
**swear [1]** 123/9
**swearing [1]**
115/25
**sworn [5]** 2/6
121/15 123/12
127/15 127/16
**sympathy [3]**
34/3 38/5 38/7
**system [7]** 6/24
12/17 12/20 25/21
53/15 55/3 106/1

**T**

**table [6]** 3/13
16/18 16/20 17/7
17/9 56/18
**task [1]** 60/24
**Tatum [3]** 94/9

94/10 95/22
**teach [2]** 40/22
41/2
**teacher [4]** 21/2
87/25 88/13
111/11
**teaching [1]** 88/4
**team [1]** 16/18
**technician [3]**
78/17 96/14
109/12
**Technology [1]**
18/10
**ten-minute [2]**
67/21 115/10
**tends [1]** 34/19
**tens [1]** 153/12
**term [14]** 16/5
138/15 138/16
138/17 140/2
140/6 140/8 140/9
140/10 140/13
140/16 140/17
141/18 141/19
**termed [1]** 33/13
**terms [12]** 3/14
10/24 30/2 33/10
45/11 68/21
104/15 110/9
144/13 145/17
148/24 161/24
**Terri [2]** 60/15
108/15
**testimony [5]**
17/21 28/24 29/17
29/18 31/8
**Texas [1]** 19/15
**text [5]** 153/8
154/10 154/23
155/8 156/2
**texts [1]** 155/18
**thank [154]** 3/2
7/21 10/14 11/14
11/19 11/22 12/4
12/21 14/19 16/13
16/23 16/24 17/5
17/11 17/12 18/17
19/6 20/4 20/7
20/22 21/14 22/12
23/14 23/23 23/25
24/20 30/22 32/1
33/5 33/22 34/10
35/2 35/6 36/2

**T**

**thank... [120]**
36/20 37/2 38/1
40/18 41/10 43/25
45/7 46/5 46/7
46/8 46/16 48/1
48/2 49/1 49/4
49/7 50/7 51/13
51/15 51/16 53/17
53/19 54/13 56/3
56/23 59/1 59/2
59/12 60/4 60/7
60/8 61/12 62/22
64/18 65/17 65/18
66/6 66/12 66/18
67/9 67/11 67/12
68/24 69/8 70/3
70/14 70/18 70/20
72/18 73/12 74/1
75/15 77/4 78/2
79/20 80/4 81/13
81/25 82/5 83/8
83/14 84/6 84/19
85/5 86/19 87/22
88/1 89/8 89/19
91/9 91/14 91/23
92/14 94/5 95/22
95/24 98/1 98/6
99/14 99/21 101/2
101/9 102/14
104/7 106/8 107/1
108/13 109/3
109/9 109/23
110/17 112/12
112/17 112/22
114/5 114/15
114/22 115/3
115/19 116/8
119/1 121/19
122/1 122/8 123/5
123/7 123/13
124/19 125/22
125/23 126/2
126/11 127/17
128/25 135/4
136/13 138/12
149/11 149/25
150/21
**Theodore [1]**
71/7
**therapy [1]** 67/6
**Thirty [1]** 112/24

**Thompson [2]**
66/3 66/18
**thorough [1]** 65/8
**thought [1]** 162/7
**thoughts [4]** 7/19
32/10 34/23 35/21
**thousands [2]**
153/12 154/19
**threats [1]** 160/13
**thrilled [1]** 12/19
**thumb [1]** 157/12
**thus [1]** 24/18
**ticket [1]** 20/11
**tickets [1]** 19/2
**tight [1]** 68/5
**tile [1]** 72/23
**time [52]** 4/19 5/8
6/9 7/12 7/14 8/12
9/5 14/19 23/2
29/3 32/16 32/18
36/18 37/4 42/4
44/17 45/13 49/24
53/4 53/14 54/3
54/11 54/20 55/4
62/10 67/22 69/5
78/16 78/19
107/15 116/25
118/19 121/3
122/10 122/13
122/23 123/8
124/9 124/24
125/20 129/5
129/16 129/24
132/15 138/11
138/14 140/20
142/3 156/14
159/24 160/25
161/14
**timeframe [1]**
153/11
**timeline [1]** 5/4
**times [3]** 152/22
153/14 154/1
**timing [1]** 124/25
**Tina [1]** 13/5
**title [11]** 14/14
96/15 134/15
134/19 135/6
139/3 139/12
139/18 141/4
152/24 157/20
**today's [2]** 148/9
152/17

**toddler [3]** 157/2
157/4 157/9
**toddler's [2]**
155/12 155/24
**toddler-aged [1]**
157/4
**topic [3]** 39/16
41/15 43/17
**topics [1]** 150/14
**torture [1]** 157/9
**totally [1]** 12/23
**touched [1]** 35/22
**touching [1]**
154/16
**tough [2]** 53/12
61/11
**toward [2]** 30/10
30/25
**town [2]** 20/18
40/6
**track [2]** 121/22
139/5
**Tradition [2]**
22/19 75/10
**traffic [1]** 73/20
**trafficked [1]**
153/2
**trail [1]** 116/21
**trailing [1]** 71/12
**transcribing [1]**
13/9
**TRANSCRIPT [1]**
1/10
**transcription [1]**
162/15
**transfer [1]** 75/21
**transpired [1]**
125/1
**transpiring [1]**
130/6
**transported [2]**
135/22 136/1
**Treasure [1]** 87/1
**treasurer [2]**
75/21 75/24
**treated [3]** 129/3
130/8 130/11
**treatment [3]**
129/7 129/13
129/17
**tree [2]** 104/20
151/5
**trial [39]** 1/10

4/24 4/25 6/12
6/14 10/23 11/13
12/11 13/4 14/13
16/18 16/22 18/8
23/6 25/12 26/4
26/21 35/20 35/23
48/15 50/12 61/24
61/25 62/1 62/7
62/25 69/14
136/21 146/8
146/10 146/15
146/21 146/25
147/2 147/10
152/21 157/16
158/12 159/4
**TRIAL/CHANGE
[1]** 1/10
**tricky [1]** 87/8
**trimming [1]**
104/20
**trip [3]** 19/13
19/16 19/19
**trouble [3]** 28/20
77/21 118/16
**trust [2]** 5/19
45/25
**truth [1]** 14/2 15/3
**turning [2]** 138/9
140/22
**Twenty [1]** 60/15
**Twenty-eight [1]**
60/15
**twice [1]** 111/22
**two-week [1]**
21/23
**Tyler [1]** 80/3
**typically [1]** 125/8
**typographical [1]**
126/8

**U**

**U.S [8]** 1/15 1/20
76/11 90/16 96/6
137/14 160/21
162/19
**Uh [2]** 24/19 41/4
**Uh-huh [2]** 24/19
41/4
**ultimate [1]** 62/25
**ultimately [3]**
15/3 44/22 48/22
**unable [3]** 29/21
34/3 42/23

**unanimous [1]**
39/5
**unavoidable [1]**
69/6
**uncharged [1]**
143/19
**uncle [4]** 87/6
87/7 87/10 105/4
**uncle's [1]** 87/13
**uncomfortable [1]**
14/25
**undercover [1]**
154/12
**underlies [1]**
143/24
**understandable
[1]** 60/23
**understanding [5]**
23/6 77/21
126/23 130/21
149/15
**underway [1]**
124/23
**unfamiliar [1]**
12/23
**unfortunately [3]**
11/2 38/6 117/5
**uniformed [1]**
97/22
**unique [3]** 18/24
19/10 23/16
**uniquely [1]** 19/1
**unit [2]** 18/11
93/1
**UNITED [31]** 1/1
1/3 1/11 3/4 3/10
11/24 12/2 16/17
18/8 26/18 69/9
129/1 134/15
134/19 135/6
137/13 137/18
137/22 138/25
139/12 139/18
141/4 142/3 143/1
143/13 144/19
152/19 152/24
157/20 160/3
162/19
**University [1]**
128/22
**unknown [2]**
134/13 156/20
**unused [1]** 6/4

**U**

unusual [1] 35/7
update [1] 4/22
uphold [1] 77/1
upside [1] 157/10
URL [3] 154/10
154/12 154/19
URLs [13] 154/22
154/22 154/25
155/7 155/7 155/9
155/17 155/17
155/20 156/1
156/1 156/3
156/11
us [19] 1/16 5/24
13/6 16/22 19/9
24/6 33/23 43/22
46/23 47/12 52/6
55/24 57/5 57/11
59/9 69/24 116/12
118/25 123/17
useful [1] 6/24
user [1] 154/8
users [10] 152/25
153/2 153/2
153/12 153/14
153/23 154/3
155/7 155/17
156/1
Utilities [1]
107/13

**V**

vacation [1]
21/24
vagina [7] 155/2
155/3 155/12
155/15 155/24
156/9 157/6
valuable [1]
138/4
vary [1] 145/5
Vehicles [2] 90/8
90/9
vein [1] 145/11
venire [9] 2/6
11/21 43/9 45/19
70/17 122/4 123/6
123/12 124/7
Venmier [1] 18/15
verdict [9] 26/11
38/19 39/5 58/3
63/7 93/24 97/15

103/25 104/1
verdicts [2]
111/24 112/6
Vermont [1] 76/1
Vero [2] 72/25
80/20
versions [1]
126/6
versus [3] 11/24
69/10 160/4
veteran [2] 96/25
97/6
via [2] 9/9 153/2
victim [22] 45/23
66/9 72/12 73/19
79/9 81/7 86/12
88/25 91/2 92/7
95/16 97/18 99/7
100/20 105/11
108/4 111/19
113/23 134/17
135/12 143/25
153/9
victims [2] 143/17
143/18
victims' [1]
143/24
video [6] 157/1
157/3 157/4 157/5
157/6 157/8
videos [7] 133/10
153/5 153/13
155/1 155/10
155/21 156/4
viewable [1]
132/22
Vincent [1] 98/5
violate [1] 140/19
violated [1]
134/14
violation [5]
11/12 134/19
135/6 139/15
157/20
violations [3]
73/20 134/16
140/20
violence [1]
49/23
violent [3] 45/23
157/2 157/8
Virginia [1]
103/24

visit [3] 55/8
visual [3] 75/14
135/19 135/20
voir [6] 2/3 5/19
5/21 8/8 12/7
13/25
voluntarily [3]
142/11 142/20
160/11
voluntary [2]
159/19 160/9
vote [1] 138/5
vs [1] 1/5

**W**

waive [1] 146/2
waiving [1]
142/21
walk [1] 46/16
wanted to [1]
10/25
warning [1] 5/17
warrant [1] 151/6
warranted [3] 4/9
10/6 150/10
warrantless [1]
151/2
watching [1] 62/8
Weagle [1]
112/19
wearing [1] 68/8
weather [1]
112/20
web [4] 40/8
103/4 103/5 153/3
website [28] 16/3
16/4 152/22
152/22 153/1
153/2 153/7
153/12 153/14
153/18 153/18
153/21 153/22
153/25 154/2
154/4 154/7
154/13 154/20
154/22 155/7
155/17 156/1
156/11 156/13
156/15 156/16
156/19
websites [7] 40/7
153/4 153/4
154/25 155/10

155/20 156/4
Wednesday [5]
6/12 6/15 8/12
19/12 20/3
weigh [3] 31/21
73/8 90/22
weighing [4] 30/7
52/24 53/9 99/11
weight [3] 4/17
25/11 41/21
welcome [4] 11/4
11/18 35/12 99/16
welder [1] 77/12
welfare [1] 13/19
whenever [1]
99/24
wholesale [3]
85/24 98/11 98/13
whoo [1] 36/19
wildlife [1] 104/19
WILLIAM [14] 1/6
1/15 3/4 3/9 11/24
15/15 17/16 91/11
127/16 128/1
134/7 134/12
148/1 160/4
willing [5] 7/8
27/7 39/8 64/2
137/19
Winter [3] 98/4
98/5 99/15
wisely [1] 5/20
wish [10] 14/25
43/7 51/24 77/14
105/14 121/24
127/10 161/2
161/23 162/9
wishes [3] 8/22
35/11 42/8
withdraw [2]
145/22 149/2
withheld [2]
79/10 79/14
witness's [9]
29/10 29/11 29/13
29/14 29/15 29/17
29/18 30/2 31/8
witnesses [13]
8/20 8/22 17/20
18/5 18/9 28/24
29/8 29/21 30/5
30/8 146/22
146/25 161/3

woman [3] 155/1
155/2 157/8
worker [3] 99/24
115/5 115/5
worry [1] 42/5
worst [1] 62/20
wound [1] 155/13
wrist [1] 45/25
writer [1] 98/24

**Y**

young [1] 33/25
yours [2] 45/22
74/20

**Z**

Zambrano [1]
24/7