UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-80173-CR-CANNON-2

UNITED STATES OF AMERICA

vs.

WILLIAM MICHAEL SPEARMAN,

      **Defendant.**

                                  /

## GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT

COMES NOW the United States of America, by and through the undersigned counsel, and hereby files the following response to the Defendant Spearman's Objections to the Pretrial Sentence Report ("PSR"). [ECF No. 176].

### A. Forfeiture

The government joins in the defendant's statement that the government agreed to forego forfeiture of the defendant's house in exchange for his guilty plea.

### B. Removal of the word "generally"

The government takes no issue with the defendant's objection.

### C. 2G2.6(b)(3) 2-level Enhancement

United States Sentencing Guideline (U.S.S.G.) § 2G2.6(b)(3) creates a Special Offense Characteristic (SOC) that increases the guidelines by two levels "if the offense involved conduct described in 18 U.S.C. § 2241(a) or (b)". The defendant's motion suggests his activity does not qualify for this enhancement. [ECF No. 176 at 2]. As he correctly describes in his objection, Application Note 3 and 18 U.S.C. § 2241 include the following circumstances involving minors:

1

1. by using force against that other person (2241(a)(1)); or
2. by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping (2241(a)(2));
3. renders another person unconscious and thereby engages in a sexual act with that other person (2241(b)(1)); and
4. administers to another person by force or threat of force, or without the knowledge or permission of that person, a drug, intoxicant, or other similar substance and thereby substantially impairs the ability of that other person to appraise or control conduct (2241(b)(2)(A))

The unobjected to facts of the PSR evidence multiple acts that meet option 1 above. For example, one of the links the defendant posted in Website A on February 6, 2022, to other high-ranking members included an image of an adult man inserting an elongated object into the anus of an approximately six- to nine-year-old fully naked boy. PSR ¶ 54. On July 25, 2022, the defendant posted a link that included a video of "adult woman using a phallic strap-on device to penetrate the anus and vagina of a prepubescent girl who appears to be between the ages of three and six." PSR ¶ 55(a).

The defendant's devices included videos of child pornography that included "violent anal sex with a toddler-aged boy" … "a masked man aggressively inserting an object into the vagina of a prepubescent girl" … "an adult woman engaged in violent sexual torture of a toddler who is bound with rope and hung upside-down." PSR ¶ 69. Worse yet, the defendant possessed a video that "was part of a series of child abuse material…which depicts a toddler-aged child being bound with rope, hung upside down, and sexually abused and tortured," while another "was part of a series of child abuse material…which depicts a high-school-aged male engaged in violent anal sex with his toddler-aged brother." PSR ¶ 70.

Each of these images and videos constitute, at the very least, force against a child or placing a child in fear of serious bodily injury. Although not mentioned by the defendant, he does not need to commit these acts himself. By its own terms, the language of the Guideline applies when

2

"the offense *involved conduct*" described in 18 U.S.C. § 2241(a) and (b), not simply when the defendant himself engaged in that conduct. U.S.S.G. § 2G2.6(b)(3); *see also id.* § 1B1.1, cmt. 1(I) (defining "offense" as the "offense of conviction and all relevant conduct…"). The defendant's possession and trafficking of the material including these acts activate the SOC. This is true because the section of the U.S.S.G. in question was created for child exploitation enterprise and does not necessitate any physical sexual activity.

In addition, Website A expressly allowed and facilitated the trafficking of images and videos that depict conduct described in 18 U.S.C. § 2241(a) and (b). As set forth in the PSR, Website A provided a list of terms that members could use to advertise and categorize the child pornography they shared through the website. These terms included "rape," "torture," "crying," and "strangle." PSR ¶ 14. Other terms included "bondage," "bdsm," "screaming," "spanking," and "whipping."

Website A also featured a specific room that was dedicated to "extreme" content that included children being tortured, humiliated, or subject to pain and distress. *Id.* ¶ 17(d). Users made posts in this room that included the following descriptions:

- "EXTREME CONTENT [hurtcore] [preteen] [girl] [anal] Dad wants to get deep into her ass, she does not agree, he does not care"
- "EXTREME CONTENT [pedomom] [tween] [girl] [BDSM] A good Mom teaching her daughter the Art of BDSM. Happy Mothers Day!"
- "EXTREME CONTENT [blackmail] [teen] [girl] [webcam] Blackmailer forces German teen to do his biding, she cries but obliges"
- "EXTREME CONTENT [rape] [preteen] [girl] [fucking] girl gets drugged and then fucked while sleeping"
- "EXTREME CONTENT [crying] [toddler] [girl] [anal] agony for this little girl getting raped in the ass"

3

As the lead administrator of Website A, the defendant helped to provide a forum that encouraged and aided the sharing of material depicting children being sexually abused by means of force, fear, and intoxicants. This is precisely the conduct that is prohibited by 18 U.S.C. § 2241(a) and (b) and incorporated into U.S.S.G. § 2G2.6(b)(3).

### D. 3B1.1(a) 4-level Enhancement

The defendant disputes that he should receive an enhancement under U.S.S.G. § 3B1.1(a). He does not appear to dispute that the criminal activity involved five or more participants or was otherwise extensive. Nor does he appear to contest the facts set forth in the PSR that set out his authority and duties on Website A. Instead, he primarily argues that he should only receive the three-level enhancement under U.S.S.G. § 3B1.1(b) [ECF No. 176 at 2].

This objection is belied by the evidence, misapprehends this provision of the Guidelines, and should therefore be overruled. Defendant now tries to characterize his role on the website as the same as or less than co-defendants Selwyn Rosenstein and Gregory Good. *Id* at 3. The Defendant's own username made clear that he was the leader of Website A. PSR ¶ 49. Co-defendant Gregory Good described this Defendant as "the leader of Website A" whom he referred to as "boss" and who suspended Good from Website A. PSR ¶ 46(f).

Moreover, Spearman's assertion cannot be squared with the evidence recovered from Website A. As demonstrated by his postings on the site, Defendant earned the highest supervisory position on the site by sharing child sexual abuse material and otherwise actively participating on the site. Then as the lead administrator,

> **Spearman** supervised and directed other members of Website A staff, gave staff members instructions on how to interact with lower-ranking users, helped to clean up and organize links to child pornography posted to a particular section of Website A, ensured that staff members were present at all times in various sections of Website A, presided over staff meetings, promoted and demoted other users and staff, praised and scolded users and staff, counseled other

      users on the roles and expectations on Website A, and otherwise supervised the day-to-day organization and maintenance of Website A.

PSR ¶ 50.

    Even within the command and control room on Website A, for the select few highest-ranking members, Spearman "gave orders and directions to the three other administrators, and he frequently chastised them for failing to perform their duties to Website A to his satisfaction." PSR ¶ 51. In the time leading up to his arrest, Spearman made numerous statements in this room making clear that he was superior even to the other highest-ranking members of the website. For example, he upbraided his fellow administrators for not logging into Website A frequently enough, and he asked them "Somebody tell me what's going on. Is there a passive-aggressive mutiny going on or what?" He told a co-administrator that "I need to have you get your head back in the game, my friend. I can't have you resign right now anyway. It'd be a very sad situation for me in here chatting to myself about how I couldn't even keep a handle on running this site without [Rosenstein] around for more than three months." He further told this other individual that "…I'm at a point how where I've got to have a partner in this shit! One I can count on, one I can trust and who is there to bounce ideas off of on a regular/routine basis. I'll be honest with you that I was really pissed off that you took that little vacation last month. I felt it was irresponsible personally, financially, and to [Website A]. I can't really remember the last time I've had any vacation at all, plus I've even stopped going out on Friday nights because of my responsibility here. I'm not trying to guilt-trip you either. Like I said, I need to know I've got a partner here."

    Additionally, after co-defendant Rosenstein's arrest, Spearman "assumed Rosenstein's previous responsibility of circulating a 'log' or 'note' to other Website A staff members. This note generally consisted of tens of thousands of posts made by other Website A users that included

links to child pornography files, and its purpose was to allow staff members to learn how much individual users were contributing to the website and to make decisions as to whom to promote." PSR ¶ 55.

In his statement to the FBI after his arrest, Spearman admitted he was "one of the four (4) main administrators of Website A" along with Rosenstein and two others. PSR ¶ 63(b). Spearman offered that he "administered Website A because he enjoyed the management aspect of it." *Id*. Spearman denied founding Website A but began accessing it in early 2018. PSR ¶ 63(d). However, after Rosenstein "disappeared" in the summer of 2022, Spearman told the FBI he took over Rosenstein's roles and continued his own. PSR ¶ 63(e).

This level of responsibility is more than sufficient to establish that Defendant was an organizer or leader of Website A for the purposes of Section 3B1.1(a). In making this determination, the Sentencing Guidelines counsel courts to consider a nonexclusive list of factors related to a defendant's conduct, including "the exercise of decision making authority," "the nature of participation in the commission of the offense," "the recruitment of accomplices," "the degree of participation in planning or organizing the offense," "the nature and scope of the illegal activity," and "the degree of control and authority exercised over others." U.S.S.G. § 3B1.1, cmt. 4; *see also United States v. Ramirez*, 426 F.3d 1344, 1356 (11th Cir. 2005) ("There is no requirement that all the considerations have to be present in any one case.").

These factors strongly support a finding that Defendant was an organizer or leader of the criminal conspiracy underlying Website A for purposes of U.S.S.G. § 3B1.1(a). His elevated responsibilities—and that he was the #1 leader of Website A, correcting the formatting of user postings, muting users, directing users and running the command and control group of Website A—reveal that he was an organizer or leader of Website A.

Defendant also exercised a degree of control and authority over others by broadly providing directions to Website A users about how to post and share child pornography. Directing the activities of others is a key consideration in determining whether the aggravating-role enhancement should apply. *See, e.g.*, *United States v. Mesa*, 247 F.3d 1165, 1169-70 (11th Cir. 2001) ("[E]vidence in this case was presented that defendant directed the activities of several people… The cumulative effect of directing these activities in furtherance of the offense is sufficient for a sentencing court to find that the Defendant acted as an organizer/leader for the purposes of U.S.S.G. § 3B1.1(a)"). Giving others specific instructions on how to commit a crime cuts in favor of a finding that the aggravating-role enhancement under § 3B1.1 applies. *See United States v. Caraballo*, 595 F.3d 1214, 1232 (11th Cir. 2010) (affirming imposition of § 3B1.1(a) enhancement because, among other things, "Caraballo gave Lopez and Miranda specific instructions on how to commit the crime"); *United States v. Suarez*, 313 F.3d 1287, 1294 (11th Cir. 2002) (affirming imposition of § 3B1.1(a) enhancement because, among other things, the defendant "gave the undercover agents detailed instructions for transporting the drugs"). This can be true regardless of whether other, higher-ranking individuals were involved in the conspiracy. *See United States v. Ndiaye*, 434 F.3d 1270, 1304 (11th Cir. 2006) (affirming imposition of § 3B1.1(a) enhancement because, among other things, the defendant "exercised authority over the organization by recruiting and instructing co-conspirators," despite the fact that "others may have had a larger role in the conspiracy…"); U.S.S.G. § 3B1.1, cmt. 4 ("There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy.").

The defendant's argument to the contrary—that he was a manager or supervisor, and not an organizer or leader—is without merit. During the sentencing hearing of Rosenstein, the Court noted that the PSR's "enhancement for manager or supervisor will remain in place and increase

7

the offense level by three levels." *United States v. Rosenstein*, 22CR80107-CANNON (Sentencing Transcript, [ECF No. 58:47-48]. The transcript indicates that the PSR had reflected a 4-level increase for Rosenstein (as currently contemplated for Mr. Spearman as well). The Court stated, "I don't agree that his management of other users takes him outside of the realm of the four-level enhancement, but I think I'm going to stick with the three levels *given Mr. Spearman's role* in this conspiracy as the purported number one." *Id*. at 49 (emphasis added). Thus, it becomes clear that the Court was leaving the 4-level enhancement for the person who lead Website A at its highest level – Mr. Spearman. He should not be permitted now to disavow the aggravated role he played in this criminal conspiracy because it no longer benefits him. His objection should therefore be overruled.

### E. 3E1.1(a) 2-level reduction

The defendant disputes that he should receive a reduction by two levels under U.S.S.G. § 3E1.1(a) for his acceptance of responsibility because he, "admitted guilt before a single juror was ever sworn, jeopardy attached, an opening statement was made, a witness testified, or evidence was presented." [ECF No. 176:6]. As set forth below, this utterly fails to account for the tremendous expense and effort the government—to say nothing of the Court and its staff—undertook in preparing for trial before the defendant pleaded guilty halfway through jury selection.

In many cases, a defendant who pleads guilty and truthfully admits the conduct comprising the conviction has demonstrated acceptance of responsibility; however, "this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility," and "a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct." U.S.S.G. § 3E1.1, app. n.3. Indeed, "a defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right." Id;

8

*see also United States v. Wade*, 458 F.3d 1273, 1279 (11th Cir.2006).  The Eleventh Circuit has affirmed a district court's denial of acceptance of responsibility on far less. In *United States v. Sawyer*, 180 F.3d 1319, 1323 (11th Cir. 1999), the district court explained at sentencing that it did not believe that, just because a defendant pleaded guilty to committing a crime and stated that they were sorry for doing so, the defendant was automatically entitled to acceptance of responsibility, holding "[a] defendant bears the burden of clearly demonstrating acceptance of responsibility and must present more than just a guilty plea" *citing to United States v. Cruz*, 946 F.2d 122, 126 (11th Cir. 1991).  The defendant in that case did plead guilty and did apologize for his acts, but the district court still denied him acceptance. *Id*. This Court affirmed that denial, holding that "the record is devoid of facts sufficient to clearly establish that [the defendant] accepted personal responsibility for his actions." *Id*. at 1323. Here, the record is not silent—instead, it affirmatively shows Spearman's noncompliance, and thus his failure to accept responsibility.

Moreover, the timeliness of a defendant's acceptance of responsibility is a consideration in determining if he is entitled to the two-level reduction, and is context specific. USSG § 3E1.1, comment (n.6); *see also* USSG § 3E1.1, comment (n.1)(h) ("In determining whether a defendant qualifies under subsection (a), appropriate considerations include, but are not limited to, the following: ... the timeliness of the defendant's conduct in manifesting the acceptance of responsibility."). The 11th Circuit consistently has affirmed the denial of an acceptance of responsibility reduction where a plea is offered on the day of trial.  In *United States v. Delarosa*, 572 F. App'x 737, 738-39 (11th Cir. 2014), the Court held, "[w]e have generally held that pleas on the "eve of trial" are not timely for purposes of § 3E1.1" *citing United States v. Gilbert*, 138 F.3d 1371, 1373 (11th Cir.1998), abrogated on other grounds as recognized by *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir.2008); and "have determined that one of § 3E1.1(a)'s chief

9

purposes is to save the government the time and expense of going to trial", *citing United States v. Smith*, 106 F.3d 350, 351 (11th Cir.1996), abrogated on other grounds, 127 F.3d 987 (11th Cir.1997) (en banc).

In Spearman's case, he filed a dispositive motion to suppress. At calendar call on May 16, 2023 (when trial was specially set for May 31, 2023), the Court orally denied the motion to suppress. At that same hearing, the defendant offered that he would not plead guilty if a guilty plea included Count 3 and would proceed to trial. He advised that he would not even plea conditionally reserving his right to appeal the motion to suppress (hereinafter conditional plea) if the government required a plea to Count 3 of the Indictment. The defendant did not request a conditional plea on the motion to suppress because the government would require him to plead guilty to Count 3 of the Indictment. That same day, the Court announced the trial date would be pushed back to either June 12 or June 19. The parties conferred and agreed on the June 12 date.

The Court brought the parties back to Court on May 31, 2023, for a pretrial conference and arguments on the government's motion in limine. Once again, the defendant announced ready for trial and that there would be no plea agreement (conditional or otherwise). Then on Wednesday, June 7, 2023 (3 business days before trial), the defendant, through counsel phoned the government and requested a conditional guilty plea to Count 3. The government offered that without the order on the motion to suppress it could not obtain permission to allow the conditional plea. The Court's staff advised that the Court would enter the order denying the motion to suppress on the morning of June 12, 2023, the first day of trial. Without the potential of a conditional plea, the government countered with an unconditional plea to Count 3, that would include an agreement to forgo the forfeiture of the defendant's home and dismissal of counts 1 and 2; said offer expiring the morning of June 9, 2023. Throughout this entire time, the government was preparing for trial, working 10-

12 hours per day with 3 trial attorneys and 8 witnesses: creating hundreds of exhibits and utilizing a several support staff into the late evening hours. They had to view the child pornography on multiple occasions to decide which parts of particular child pornography videos would be presented in court as the defendant would not stipulate to the material as child pornography. Spearman declined the unconditional offer at 10:49 am on Friday, June 9, 2023. On Friday, June 9, the government's entire trial team (2 prosecutors, and 5 of 8 witnesses), except for the undersigned Assistant United States Attorney, flew into South Florida for the weekend for final preparations and to begin trial on Monday. The government expensed flights, hotels, per diem, and rental cars for more than 8 persons (attorneys and witnesses).

On Monday, June 12, 2023, at 8:14am the Court entered the order denying the motion to suppress. Jury selection began on Monday June 12, 2023, at 9am and went on for more than 2 hours of questioning jurors, including about viewing child pornography and eliciting prior incidents of sexual abuse they endured. Several jurors became upset by the questioning. Then, after procedural issues that occurred during jury selection, the defendant plead guilty conditionally to count 3, reserving his right to appeal the motion to suppress. For all of these reasons his "eve of trial" (or in this case, mid-jury selection) plea should not merit a reduction in guidelines for acceptance of responsibility.

The defendant secondarily argues that the commentary to the guidelines "cannot expand the interpretation of an otherwise unambiguous sentencing guideline" *citing United States v. Dupree*, 57 F.4th 1269, 1278 (11th Cir. 2023). *Depree* did not deal with U.S.S.G. § 3E1.1 and thus is inapplicable here. However, even if it did apply, what "clearly demonstrates acceptance" *is* certainly an ambiguous term. As noted above, Court's have had to wrestle with, short of a timely plea before a jury trial what "acceptance of responsibility means." The *Delarosa* Court noted that

"concerns about the government's time, expenses, and efforts are relevant to evaluating the timeliness of Sanchez's plea under § 3E1.1(a)." *Delarosa*, 572 F. App'x at 739. In *United States v. Montero*, 336 F. App'x 941, 942 (11th Cir. 2009), the Court denied the 2-level reduction for acceptance of responsibility finding his guilty plea "not timely because Montero did not offer his plea until the morning his trial was to begin, thus necessitating significant trial preparation by the government and the transportation of witnesses from across the state, and inconveniencing the jury pool which was already assigned to the trial, Montero himself conceded his plea was not timely."

In fact, the term is so ambiguous that the application notes offer eight (8) considerations, not limited, on the subject. U.S.S.G. § 3E1.1, App.N. 1. A related application note reminds the courts that "the sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review." *Id.* App. N. 5. Therefore, in properly applying the application notes, and specifically, Note 1(H), it is clear that the defendant did not timely manifest his acceptance of reasonability.

F. **Adjusted and Total Offense Levels**

Based upon the government's response to items C, D, and E, *supra*, the adjusted offense and total offense levels are accurate.

G. **Paragraph 115**

The government takes no issue with the defendant's objection.

H. **No contact with minor son**

Finally, Spearman argues that the district court should not impose a condition that he "shall have no personal, mail, telephone, or computer contact with children/minors under the age 18 or with the victims," because it prevents contact with his own biological son. PSR ¶ 178. The

condition offered by the probation department creates a complete ban without review on all contact with minors. Spearman does not seem to object to the prohibition so long as an exception is carved out for contact with this own son, now eight years' old. The government offers that the ban is appropriate as many of the images and video possessed and shared by the defendant include boys the same age as his own son.

In *United States v. Mickelson*, 433 F.3d 1050 (8th Cir. 2006), the defendant challenged a no-contact condition based upon his lack of prior sexually based offenses with minors. The Court, however, found that some of the defendant's child-pornography images "depicted children under the age of 12 and sadistic or masochistic violence." *Id*. at 1051. The lack of physical abuse was not decisive, "for requiring prior approval before a convicted sex offender has contact with minors is a reasonable means of ensuring that such contact remains appropriate." *Id*. at 1057. The Court explained that refusal to incorporate a blanket exception for the defendant's grandchildren or other family members was not unreasonable given that most sexual abuse of children takes place at the hands of family members or friends. *Id*. (citing Michele L. Earl--Hubbard, The Child Sex Offender Registration Laws, 90 Nw. U.L.Rev. 788, 851--52 (1996) (noting that as many as 92 percent of reported incidents of child molestation are committed by family members or friends of the victim)).

The PSR provides ample evidence to suggest a possibility that the defendant could commit sexual offenses against minors. *See* PSR ¶¶ 49-71. This Court's decision to impose this protective condition on a defendant who spent years, and nearly the entirety of his young son's life, involved in managing a community dedicated to images and videos depicting the sexual abuse of children does not seriously affect the fairness, integrity, or public reputation of the judicial proceedings.

For these reasons, the government respectfully requests this Court to impose a condition of supervision that prohibits contact with all minors including his own son.

## **Conclusion**

For the above reasons, the Government requests this Honorable Court to overrule the defendant's objections to the PSR as noted above in sections C, D, E, F, H.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By: s/ *GREGORY SCHILLER*
Gregory Schiller
Assistant United States Attorney
Fla. Bar. 048477
500 S. Australian Ave., Suite 400
West Palm Beach, FL 33401
Email: gregory.schiller@usdoj.gov

By: *s/Kyle Reynolds*
Kyle Reynolds (Court ID # A5502872)
Trial Attorney

William G. Clayman (Court ID # A5502958)
Trial Attorney

U.S. Dept. of Justice, Criminal Division
Child Exploitation and Obscenity Section
1301 New York Avenue, NW
Washington, DC 20005
Email: kyle.reynolds@usdoj.gov
Email: william.clayman@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 16, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified.

    *s/Gregory Schiller*
Gregory Schiller
Assistant United States Attorney